Davor Rukavina, Esq.
Texas Bar No. 24030781
Julian P. Vasek, Esq.
Texas Bar No. 24070790
MUNSCH HARDT KOPF & HARR, P.C.
500 N. Akard Street, Suite 3800
Dallas, Texas 75201-6659
Telephone: (214) 855-7500
Facsimile: (214) 855-7584

ATTORNEYS FOR SCOTT M. SEIDEL, TRUSTEE

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

| | | |
|---|---|---|
| In re: | § | |
| | § | Chapter 7 |
| WALNUT HILL PHYSICIANS | § | |
| HOSPITAL, LLC, | § | Case No. 17-32255-bjh-7 |
| | § | |
| Debtor. | § | |
| | § | |
| SCOTT M. SEIDEL, TRUSTEE, | § | |
| Plaintiff, | § | |
| | § | ADV. PRO. NO. 18-03033-bjh |
| v. | § | |
| | § | |
| ST. JUDE MEDICAL S.C., INC., | § | |
| Defendant. | § | |

**TRUSTEE'S APPENDIX IN SUPPORT OF (A) MOTION FOR
CONTEMPT, FOR SANCTIONS, AND TO COMPEL PRODUCTION
OF DOCUMENTS AND ANSWERS TO INTERROGATORIES,
AND (B) RESPONSE TO MOTION FOR PROTECTIVE ORDER**

TO THE HONORABLE UNITED STATES BANKRUPTCY JUDGE:

COMES NOW Scott M. Seidel (the "Trustee"), the duly appointed chapter 7 trustee of

the bankruptcy estate (the "Estate") of Walnut Hill Physicians' Hospital, LLC (the "Debtor"), the

debtor in the above styled and numbered bankruptcy case (the "Bankruptcy Case"), and the

plaintiff in this Adversary Proceeding (the "Adversary Proceeding"), and files this his *Appendix*

*in Support of (A) Motion for Contempt, for Sanctions, and to Compel Production of Documents*

*and Answers to Interrogatories, and (B) Response to St. Jude's Motion for Protective Order* (the

"Appendix"), including therein the following exhibits:

| Exhibit | Description |
|---------|-------------|
| A | Declaration of Davor Rukavina |
| B | First Requests for Production |
| C | Second Requests for Production |
| D | St. Jude Responses to Discovery |
| E | May 10, 2018 e-mail to St. Jude |
| F | May 16, 2018 letter to St. Jude |
| G | May 23, 2018 letter from St. Jude |
| H | May 23, 2018 letter to St. Jude |
| I | Apparent Contract Produced by St. Jude |
| J | Sample Invoice |
| K | May 24, 2018 letter from St. Jude |
| L | Order Granting Motion to Compel |
| M | July 10, 2018 letter to St. Jude |
| N | July 10, 2018 letter from St. Jude |
| O | July 25, 2018 letter to St. Jude |
| P | Third Requests for Production and Second Interrogatories |
| Q | August 3, 2018 letter from St. Jude |
| R | St. Jude Responses to Discovery |
| S | Declaration of Rick Leonard |
| T | Declaration of Julian P. Vasek |

RESPECTFULLY SUBMITTED this 14th day of September, 2018.

**MUNSCH HARDT KOPF & HARR, P.C.**

By:  /s/ *Julian P. Vasek*
Davor Rukavina, Esq.
Texas Bar No. 24030781
Julian P. Vasek, Esq.
Texas Bar No. 24070790
3800 Ross Tower
500 N. Akard Street
Dallas, Texas 75201
Telephone: (214) 855-7500
Facsimile: (214) 855-7584

**ATTORNEYS FOR SCOTT M. SEIDEL,
TRUSTEE**

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that, on this the 14th day of September, 2018, true and correct copies of this document were electronically served by the Court's ECF system on counsel for St. Jude, including John E. Johnson, Esq.

By:  /s/ *Julian P. Vasek*
Julian P. Vasek, Esq.

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| In re: | § | |
| | § | Chapter 7 |
| WALNUT HILL PHYSICIANS | § | |
| HOSPITAL, LLC, | § | Case No. 17-32255-bjh-7 |
| | § | |
| Debtor. | § | |
| | § | |
| SCOTT M. SEIDEL, TRUSTEE, | § | |
| Plaintiff, | § | ADV. PRO. NO. 18-03033-bjh |
| | § | |
| v. | § | |
| | § | |
| ST. JUDE MEDICAL S.C., INC., | § | |
| Defendant. | § | |

## DECLARATION OF DAVOR RUKAVINA

I, Davor Rukavina, hereby declare the following and hereby certify, under penalty of perjury pursuant to the laws of the United States and the State of Texas, that it is true and correct to the best of my knowledge and belief:

### I.     BACKGROUND

1.     My name is Davor Rukavina, I am over the age of 18 years, and am competent and otherwise qualified to make this Declaration. I have personal knowledge of the matters stated herein and they are all true and correct to the best of my knowledge.

2.     I am lead counsel for Scott M. Seidel, Trustee (the "Trustee"), the Chapter 7 trustee in the above styled and numbered bankruptcy case (the "Bankruptcy Case") of Walnut Hill Physicians Hospital, LLC (the "Debtor"), and the plaintiff this the above styled and numbered adversary proceeding (the "Adversary Proceeding") filed against St. Jude Medical S.C. Inc. ("St. Jude").

DECLARATION OF DAVOR RUKAVINA – Page 1

3.      I am submitting this Declaration as part of the *Trustee's Appendix In Support of Motion to Compel Discovery Responses and Production* (the "Appendix").

## II.    SUMMARY OF ADVERSARY PROCEEDING

4.      Prior to bankruptcy, the Debtor owned and operated a hospital in Dallas, Texas. St. Jude was a supplier and vendor of certain medical goods to the Debtor.

5.      This Adversary Proceeding involves two general things. First, St. Jude filed in the Bankruptcy Case an application for the allowance and payment of an administrative claim under section 503(b)(9) of the Bankruptcy Code in the amount of $131,790.36 (the "503(b)(9) Claim"). Pursuant to an order entered in the Bankruptcy Case, the 503(b)(9) Claim has been consolidated into this Adversary Proceeding. Second, the Trustee has asserted preference claims against St. Jude in the face amount of $460,292.16 (the "Preferences"). St. Jude has asserted, among other defenses and affirmative defenses, both the ordinary course and the new value affirmative defenses to the Preferences.

6.      Of additional relevance to the underlying dispute, the Trustee's investigation, including interviews with former Debtor employees, reveals that St. Jude mistakenly shipped the same goods twice during the section 503(b)(9) period, which the Debtor attempted to return but which return St. Jude apparently refused to process (and the Trustee believes that the goods remain on site at the Debtor's hospital). The amount of these goods is unknown but I believe that they correspond to between $40,000 and $50,000 of St. Jude's invoices.

## III.    THE DISCOVERY

7.      Included in the Appendix as Exhibit "B" is a true and correct copy of the *Trustee's First Set of Interrogatories and First Set of Requests for Production to St. Jude Medical S.C., Inc.*, which includes the Trustee's first set of requests for production (the "First

---

RFPs"). As certified by my associate, the Trustee served the First RFPs on St. Jude on February 2, 2018.

8.      The original deadline to respond to the First RFPs was March 3, 2018. On March 2, 2018, St. Jude requested an extension to March 16, 2018, to which I agreed.

9.      On March 15, 2018, St. Jude requested a further extension to April 16, 2018, to which I agreed.

10.      Included in the Appendix as Exhibit "C" is a true and correct copy of the *Trustee's Second Set of Requests for Production to St. Jude Medical S.C., Inc.* (the "Second RFPs").

11.      I served the Second RFPs on St. Jude on April 3, 2018.

12.      On April 16, 2018, St. Jude requested a further extension to May 3, 2018 to respond to both the First RFPs and the Second RFPs, to which I again agreed. This time, I told St. Jude that I would not agree to further extensions.

13.      Nevertheless, on May 2, 2018, St. Jude requested a further extension, which I agreed to, until May 7, 2018, to respond to both the First RFPs and the Second RFPs.

14.      St. Jude did not respond to any of the discovery, or produce any documents, on May 7, 2018. Accordingly, on May 8, 2018, I informed St. Jude that I would be forced to file a motion to compel, but that I would wait until May 10, 2018 to file it in hopes that St. Jude would cure its defaults by then. St. Jude then informed me that it would respond to the discovery, and produce documents, on May 9, 2018, at the latest.

15.      In fact, it was only on May 10, 2018, that St. Jude served its responses to the First RFPs and the Second RFPs, and included its production.

DECLARATION OF DAVOR RUKAVINA – Page 3

16.     Included in the Appendix as Exhibit "D" is a true and correct copy of the *St. Jude Medical S.C. Inc.'s Combined Preliminary Responses to Trustee's First Set of Interrogatories and First Set of Requests for Production and Trustee's Second Set of Requests for Production to St. Jude Medical S.C. Inc.* (the "Responses").

17.     I immediately noticed that, in its Responses, St. Jude asserted numerous "general" objections (as well as various other objections) and that it conditioned each production as "subject to" the general objections.

18.     Accordingly, on May 10, 2018, I e-mailed the e-mail included in the Appendix as Exhibit "E" to counsel for St. Jude, requesting a discovery conference and including a citation to the *Heller* case, which is a case I have relied on multiple times before for "general" objections.

19.     Counsel for St. Jude responded positively to the invitation for a conference call, and we had a call on May 15, 2018 lasting approximately 15 to 20 minutes. During this call, we discussed a number of things, including the "general" objections to discovery, and I reiterated that those "general" objections are improper and that they need to be removed. No agreement on anything was reached during that call.

20.     Because I formed the belief during this call that St. Jude was playing discovery games and was more interested in discussing the substance of the Trustee's case, instead of discovery—which in my opinion is placing the cart before the horse, since the Trustee cannot make important decisions regarding the substance of his case without basic discovery—I informed counsel for St. Jude that further discovery communications would be formal and in writing.

21.     However, I did inform counsel for St. Jude that, with respect to specific objections to discovery, such as pricing information and going back a certain timeframe, the Trustee would

DECLARATION OF DAVOR RUKAVINA – Page 4

reasonably consider alternatives, but only once the "general" objections were removed since, in my opinion, using those "general" objections to potentially hide what has been produced and what has been withheld is a threshold issue.

22.     Accordingly, on May 16, 2018, my associate e-mailed a formal discovery letter to St. Jude, a true and correct copy of which is included in the Appendix as Exhibit "F".

23.     Counsel for St. Jude responded by letter e-mailed on May 23, 2018, a true and correct copy of which is included in the Appendix as Exhibit "G".

24.     To the extent the Court finds it of any relevance, I categorically deny the allegations in that letter that I informed St. Jude that I would be sending a "set up" letter to "set up a motion to compel." I never said anything like that. Nor is there any setup—St. Jude has had months to provide appropriate discovery responses. Like the May 15, 2018 call, the May 23, 2018 letter is, in my opinion, nothing more than an attempt by St. Jude to avoid its discovery obligations, to blame someone else, and to divert attention away from what matters.

25.     On May 23, 2018, my associate e-mailed a response letter to counsel for St. Jude, a true and correct copy of which is included in the Appendix as Exhibit "H". Once again the Trustee gave St. Jude additional time to remove its "general" objections, again indicating that specific objections could then be meaningfully discussed.

26.     On May 24, 2018, St. Jude e-mailed a letter, a true and correct copy of which is included in the Appendix as Exhibit "K."

## IV.     THE NEED FOR DISCOVERY

27.     To the extent that the Trustee needs to justify his discovery to St. Jude to the Court, I offer the following brief justification, which I struggle to provide the Court without invading my work product privileges.

DECLARATION OF DAVOR RUKAVINA – Page 5

28.     First, and foremost, the Trustee does not know what the actual, underlying agreements or arrangements of the parties regarding the provision of goods was, and I do not believe I need to rely on opposing counsel's say-so. My investigation in the form of witness interviews suggests that it was a consignment arrangement, whereby St. Jude supplied heart valves and other implantables, which would be on-site for emergency use. Indeed, St. Jude was produced one document confirming that the arrangement was a consignment arrangement, a true and correct copy of which is include in the Appendix as Exhibit "I."

29.     Second, this is important because, under the UCC in my opinion, the consignment would transfer title to the Debtor upon delivery, with St. Jude retaining a security interest, even if the language of the consignment retains title in St. Jude. This is very important for both the 503(b)(9) claim and the new value affirmative defense, since, if the Debtor always owned the goods, then St. Jude did not provide new value after the Preferences or during the 503(b)(9) period.

30.     Third, many of St. Jude's invoices, which it did produce, do not make sense and require a discussion with the people on the ground to understand. Those invoices are "duplicates," which itself raises potential questions, but some of those invoices ship goods to the Debtor *after* the Debtor already implanted them into a human patient. For example, included in the Appendix as Exhibit J" is an invoice produced by St. Jude in support of its 503(b)(9) Application. According to this invoice, the "ship date" was May 31, 2017, yet the date that the goods were implanted into the patient was May 24, 2017. Obviously, this makes no sense.

31.     Fourth, according to the St. Jude invoices, most importantly those submitted in connection with its 503(b)(9) Application, St. Jude provided a substantial quantity of goods to the Debtor in the two weeks before bankruptcy. However, I know, or reasonably believe, from

multiple sources that the Debtor stopped scheduling surgeries during this period and that no surgeries were performed during some of this period, the Debtor instead having started the process of shutting down its operations and moving patients elsewhere as required by Texas law. This, too, then raises many questions, or makes no sense.

32. Fifth, as indicated above, I have been informed by the Debtor's prior head of purchasing that St. Jude mistakenly delivered a double shipment to the Debtor right before bankruptcy, and then refused the Debtor's forms to process a refund. This is highly relevant to the 503(b)(9) Application.

33. Sixth, many of the St. Jude invoices, including the sample as Exhibit "J" in the Appendix, note "hand carry" as the shipping terms. Indeed, it has been suggested to me that a sales representative of St. Jude would either bring implantable goods to a surgery and then release them to the Debtor, or would take a good on-site at the Debtor and release it. This is important since dates of deliveries (as well as title issues) are important for both new value and the 503(b)(9) Claim.

34. And all of this of course ignores St. Jude's ordinary course affirmative defenses. Among other things, I have reason to believe that St. Jude demanded preferential payments from the Debtor in exchange for continuing to supply goods.

35. The Trustee has imaged the Debtor's e-mail servers. However, it would be a great expense for the Trustee to de-archive e-mails to review them, and the estate is at present administratively insolvent. Moreover, while the Trustee knows who the Debtor's CFO and head of purchasing were, and who at least some of the St. Jude sales representatives were, the Trustee would not necessarily know which of the hundreds of Debtor employee files to search for relevant communications, or what other potential St. Jude employee names there may have been

DECLARATION OF DAVOR RUKAVINA – Page 7

to search for. I have not done a formal count, but just a sampling of a few employee e-mail files resulted in more than 130,000 e-mails, and the total number imaged is probably in the millions, if not in the tens of millions.

36. Therefore, there is a legitimate and appropriate need for discovery in this case. It is not as simple as reviewing invoices, reviewing underlying contracts, reviewing FedEx packing slips, and then performing a calculation. Nor should the Trustee be required to rely on opposing counsel's say-so or its calculations, especially when the invoices on their face in some instances show that an implantable good was delivered to the Debtor *after* that good had been implanted into a patient!

37. It is for these reasons that I carefully and narrowly crafted the First RFPs and the Second RFPs to obtain necessary discovery. For example, I have requested the communications between the St. Jude sales representatives and the Debtor. St. Jude has refused to provide those. I also intend to depose these individuals, but I need to be able to have their communications for purposes of those depositions. This is highly relevant because this discovery is most likely to reveal what the true understanding and practice of the parties was, especially if that practice varied the underlying legal contracts.

38. As I have informed St. Jude, and as I confirm to the Court, the Trustee will reasonably alter some of his requests if in fact they impose an undue burden on St. Jude, but other than its *ipse dixit*, St. Jude has not told the Trustee why any of the requests impose undue burden. If there are confidential issues, those can be addressed as well. But, unless and until St. Jude removes its "general" objections, I do not believe I can have a reasonable and meaningful dialogue with it regarding what may otherwise be discrete and meritorious objections.

EXHIBIT A
Page 8 of 9

DECLARED under penalty of perjury this 24th day of May, 2018.

Davor Rukavina

4851-9734-2566_1 013229.00005

EXHIBIT A
Page 9 of 9

Davor Rukavina, Esq.
Texas Bar No. 24030781
Fareed Kaisani, Esq.
Texas Bar No. 24104017
MUNSCH HARDT KOPF & HARR, P.C.
500 N. Akard Street, Suite 3800
Dallas, Texas 75201-6659
Telephone: (214) 855-7500
Facsimile: (214) 855-7584

ATTORNEYS FOR SCOTT M.
SEIDEL, TRUSTEE

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| In re: | § | Chapter 7 |
| | § | |
| WALNUT HILL PHYSICIANS' | § | Case No. 17-32255-bjh-7 |
| HOSPITAL, LLC, | § | |
| | § | |
| Debtor. | § | |

**TRUSTEE'S FIRST SET OF INTERROGATORIES AND FIRST SET OF REQUESTS
FOR PRODUCTION TO ST. JUDE MEDICAL S.C., INC.**

**TO:** **St. Jude Medical S.C., Inc., by and through its counsel of record, Samuel C. Wisotzkey, Esq., Kohner, Mann, & Kailas, S.C., 4650 N. Port Washington Rd., Milwaukee, WI 53212-1059, and John E. Johnson, Esq., Padfield & Stout, L.L.P., 705 Ross Avenue, Dallas, Texas 75202.**

Scott M. Seidel (the "Trustee"), the duly appointed chapter 7 trustee of the bankruptcy estate (the "Estate") of Walnut Hill Physicians' Hospital, LLC (the "Debtor"), the debtor in the above styled and numbered bankruptcy case (the "Bankruptcy Case"), hereby serves, pursuant to Rule 34 of the Federal Rules of Civil Procedure and Rule 7034 of the Federal Rules of Bankruptcy Procedure, and pursuant to Rule 33 of the Federal Rules of Civil Procedure and Rule 7033 of the Federal Rules of Bankruptcy Procedure, as made applicable by Federal Rule of Bankruptcy Procedure 9014, this its *First Set of Interrogatories* (the "Interrogatories") *and First*

*Set of Requests for Production* (the "Requests") *to St. Jude Medical S.C., Inc.* ("St. Jude"), in relation to the *Motion for Allowance and Payment of Administrative Expense Priority Claim.*

## I.      **INSTRUCTIONS**

St. Jude is instructed to produce the documents listed in Section IV of these Requests, using the definitions listed in Section II of these Requests and the instructions listed in Section I of these Requests.

St. Jude  is instructed to answer and verify under oath the Interrogatories listed in Section III of these Requests, using the definitions listed in Section II of these Requests and the instructions listed in Section I of these Requests.  A separate verification is required of each person who responds to any portion of these Interrogatories and, if more than one person answers these Interrogatories, the answer to each Interrogatory must identify the person or persons answering that specific Interrogatory.

Pursuant to applicable rules, your response to these Requests must be served on the undersigned no later than thirty (30) days after the service hereof, your answers to the Interrogatories must be served on the undersigned no later than thirty (30) days after the service hereof, and the documents requested in Section IV of these Requests (or any documents produced in response to the Interrogatories) must be produced, no later than thirty (30) days after the service hereof, all at the following address:

Munsch Hardt Kopf & Harr, P.C.
Attn: Fareed Kaisani
3800 Lincoln Plaza
500 N. Akard Street
Dallas, Texas 75201

In producing the documents designated in Section IV of these Requests, St. Jude  must produce all responsive documents in its possession, custody, care or control, regardless of

whether the documents are currently in its possession, or in the possession of its attorney(s), accountant(s), employee(s), agent(s) or other representative(s), regardless of who obtained the documents on its behalf, and regardless of the source from which the documents were obtained.

In the event that any document is known which is responsive to any request, but which is no longer within St. Jude's possession, custody or control, specify what disposition was made of it and identify the person in whose possession, custody or control the document is now. In the event that any document referred to in or encompassed by any request has been destroyed, specify the date of destruction, the manner of destruction, the reason for destruction, the person authorizing destruction and the custodian of the document at the time of its destruction.

If any portion of any document is responsive to any request, then the entire document must be produced. Documents shall be produced in the order in which they are found in St. Jude's files. Documents that are found stapled, clipped, or otherwise fastened shall be produced in such form.

In the event that no document exists which is responsive to a particular request, a written response indicating the same shall be provided.

Each Interrogatory shall be construed as referring to information now within your knowledge, possession, custody, or control, and that of your agents, employees, servants, and/or representatives, whether or not believed to be admissible, as well as any information, knowledge, data, document, electronically stored information, tangible item, or communication that subsequently obtained, discovered, or comes into the possession, custody, or control of you, your agents, employees, servants, and/or representatives, that demonstrates that any answer originally provided in response to these Interrogatories was either incorrect or incomplete. In answering these Interrogatories, furnish such information as is available to you, not merely such

information as is within your knowledge. This means that you are to furnish information that is known by, available to, or in the possession of your employees, representatives, servants, or agents, including your attorneys or any agent or investigator for you or your attorneys (unless privileged).

If you cannot answer any of these Interrogatories completely, please answer them to the fullest extent possible, indicate the reasons for your inability to answer the remainder, and state fully the information, knowledge or belief you now have, or which is in your possession, custody, or control, concerning the answered portions.

If any Document is withheld on the basis of privilege, or any Request is objected to on the basis of privilege, St. Jude must nevertheless produce other responsive Documents pursuant to such Request which are not subject to any privilege, and St. Jude must produce a privilege log concerning Documents withheld on the basis for privilege, except that, where the Document is only between St. Jude and one or more of its attorneys, and no one else, no privilege log need be provided.

Pursuant to the provisions of Rule 26(e) of the Federal Rules of Civil Procedure, you shall supplement your answers to these Interrogatories and these Requests if, subsequent to the date of service of your answers, you learn that any one or more of your answers is in some material respect incomplete or incorrect and that the additional or corrective information has not otherwise been made known to Trustee and his counsel prior to the hearing on this matter.

## II.  DEFINITIONS

"And" and "or" shall each be individually interpreted in every instance as meaning "and/or" and shall not be interpreted disjunctively to exclude any information otherwise within the scope of any specification.

"Communication" means any contact or act by which any information is transmitted or conveyed between two or more persons, and shall include, without limitation, written contact by such means as letters, memoranda, telegrams, telexes, electronically transmitted messages, e-mails, or by any Document, and any oral contact by such means as face to face meetings or conversations and telephone conversations which are transcribed, notated or in any other manner memorialized in written, typed or recorded form.

"Documents" refers to (a) all handwritten, typed, or printed matter of any kind, including the originals and all non-identical copies, whether different from the original by reason of any notation made on such copies or otherwise, including, without limitation, agreements, correspondence, forecasts, memoranda, notes, jottings, speeches, press releases, diaries, examinations, statistics, letters, telegrams, minutes, time records, payroll records, expense records, contracts, reports, studies, training manuals, canceled checks, statements, receipts, delivery tickets, returns, summaries, work orders, pamphlets, books, prospectuses, statement of operations, interoffice and intraoffice communications, offers, notations of any sort of conversations, telephone calls, meetings, or other communications, bulletins, printed matter, computer printouts, teletypes, invoices, worksheets, and all drafts, alterations, modifications, changes, and amendments of any of the foregoing; (b) graphic or aural records or representations of any kind, including, without limitation, photographs, charts, graphs, microfiche, microfilm, videotape(s), recordings, motion pictures, and; (c) electronic, mechanical or electric records or representations of any kind, including, without limitation, e-mails, tapes, cassettes, disks, recordings, and all transcriptions, in whole or in part, of any of the foregoing.

"Debtor" means Walnut Hill Physicians' Hospital, LLC and its agents and representatives.

"Goods" is defined using the Uniform Commercial Code definition. Specifically, Goods means:

> [A]ll things (including specially manufactured goods) which are movable at the time of identification to the contract for sale other than the money in which the price is to be paid, investment securities (Article 8) and things in action. "Goods" also includes the unborn young of animals and growing crops and other identified things attached to realty as described in the section on goods to be severed from realty (Section 2-107).

"Including" means 'including but not limited to', and is not restrictive or limiting.

"Motion" refers to the *Motion for Allowance and Payment of Administrative Expense Priority Claim* filed by St. Jude [Docket No. 200].

"Petition Date" means June 6, 2017, the day the Debtor filed its bankruptcy petition.

"Relate", "related to" "relating" or "relating to" refers to any act, work, meeting, oral or written communication, or document, referring, directly or indirectly, in any way to the described facts, or evidencing, directly or indirectly, such facts.

"You" and "your" shall mean St. Jude and includes, if applicable, any relevant information known by your agents and representatives.

### III.    INTERROGATORIES

#### INTERROGATORY NO. 1

Identify all the Goods that were shipped by St. Jude and received by the Debtor in the one (1) year period prior to the Petition Date?

    ANSWER:

#### INTERROGATORY NO. 2

For your response to Interrogatory 1, please identify the date the Goods were shipped, the price charged the Debtor for the Goods, and the price the Debtor paid for the Goods.

    ANSWER:

## INTERROGATORY NO. 3

For your response to Interrogatory 1, please identify the date the Debtor ordered each of the Goods.

ANSWER:

## INTERROGATORY NO. 4

What is the basis for your assertion in the Motion that "Those Medical Goods shipped by St. Jude to the Debtor were sold by St. Jude to the Debtor for its use in the ordinary course of the Debtor's business"?

ANSWER:

## INTERROGATORY NO. 5

What is the basis for your assertion in the Motion that "St. Jude's Medical Goods were necessary to assist Debtor in running its business"?

ANSWER:

## INTERROGATORY NO. 6

Do you know if any of the Goods that St. Jude allegedly shipped to the Debtor within 20 days of the Petition Date were actually used by the Debtor in running its business?

ANSWER:

## INTERROGATORY NO. 7

What is the basis for your assertion in the Motion that "St. Jude has provided a benefit to the estate"?

ANSWER:

**INTERROGATORY NO. 8**

What is the basis for your assertion in the Motion that "St. Jude is owed $131,790.36 for St. Jude Medical Goods Received by the Debtor within twenty days prior to the Petition Date"?

ANSWER:

**INTERROGATORY NO. 9**

Did St. Jude at any time pick up, recover, stop delivery of, or actually not deliver, any of the Goods the subject of the Motion?

ANSWER:

**INTERROGATORY NO. 10**

Identify each St. Jude employee or agent with whom the Debtor communicated to order any of the Goods the subject of the Motion, and provide the title (or job description) of such employee, and the contact information for such employee.

ANSWER:

**INTERROGATORY NO. 11**

What do you assert is the value of the Goods the subject of the Motion and how do you determine such value? If your answer includes the proposition that the value is determined by the amounts billed or invoiced by you, then explain whether you charge or bill different clients different amounts for the same Goods (the subject of the Motion) at approximately the same time, and explain how these amounts are derived (for example, whether there are any bulk discounts, government discounts, charity discounts, or other factors that determine different pricing).

ANSWER:

## IV.    REQUESTS FOR PRODUCTION

**REQUEST NO. 1**

All Documents and Communications between St. Jude and the Debtor which relate to or evidence an agreement between the parties for St. Jude to provide Goods to the Debtor including, specifically, any Document or Communication by which the Debtor agreed to pay for the same.

      RESPONSE:

**REQUEST NO. 2**

All Documents and Communications within the one (1) year period prior to the Petition Date that detail shipments of Goods from St. Jude to the Debtor. Include the Good shipped, the prices, the date of shipment, and the date the Debtor ordered the Goods.

      RESPONSE:

**REQUEST NO. 3**

All Documents and Communications between the Debtor and St. Jude within the one (1) year prior to the Petition Date, including any such Documents and Communications related to or evidencing any payment by the Debtor to St. Jude.

      RESPONSE:

**REQUEST NO. 4**

All Documents and Communications related to any assertion in the Motion, including all Documents and Communications that St. Jude will offer into evidence at any hearing on the Motion.

      RESPONSE:

**REQUEST NO. 5**

All Documents and Communications between you and any third party related to any demand for payment, claim submitted, or payment received, by St. Jude against or from such third party,

related to, for, or on account of the Debtor's failure to pay for any of the Goods the subject of the Motion, including as may be related to any guarantor, insurer, letter of credit issuer, co-obligor, or indemnitor.

RESPONSE:

## REQUEST NO. 6

All Documents and Communications that support your answers to the Interrogatories not otherwise requested in another Request.

RESPONSE:

## REQUEST NO. 7

All Documents and Communications related to any different pricing charged different customers within the meaning of Interrogatory No. 11.

RESPONSE:

Respectfully Submitted,

**MUNSCH HARDT KOPF & HARR, P.C.**

By: /s/ Fareed Kaisani
    Davor Rukavina, Esq.
    Texas Bar No. 24030781
    Fareed Kaisani, Esq.
    Texas Bar No. 24104017
    3800 Ross Tower
    500 N. Akard Street
    Dallas, Texas 75201
    Telephone: (214) 855-7500
    Facsimile: (214) 855-7584

**ATTORNEYS FOR**
**SCOTT M. SEIDEL, TRUSTEE**

TRUSTEE'S FIRST SET OF INTERROGATORIES AND FIRST SET OF REQUESTS FOR PRODUCTION TO ST. JUDE MEDICAL S.C., INC. – Page 10

EXHIBIT B
Page 10 of 11

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that, on this the 2nd day of February, 2018, he caused true and correct copies of this document to be served by U.S. first class mail, postage prepaid, and by e-mail, on the following:

Counsel St. Jude Medical S.C., Inc.

Samuel C. Wisotzkey, Esq.
Kohner, Mann, & Kailas, S.C.
4650 N. Port Washington Rd.
Milwaukee, WI 53212-1059
Email: swisotzkey@kmksc.com

John E. Johnson, Esq.
Padfield & Stout, L.L.P.
705 Ross Avenue
Dallas, Texas 75202
Email: jjohnson@padfieldstout.com

By: /s/ Fareed Kaisani
    Fareed Kaisani, Esq.
    Texas Bar No. 24104017

TRUSTEE'S FIRST SET OF INTERROGATORIES AND FIRST SET OF REQUESTS FOR PRODUCTION TO
ST. JUDE MEDICAL S.C., INC. – Page 11
4826-1528-0987v.1

EXHIBIT B
Page 11 of 11

Davor Rukavina, Esq.
Texas Bar No. 24030781
Fareed Kaisani, Esq.
Texas Bar No. 24104017
MUNSCH HARDT KOPF & HARR, P.C.
500 N. Akard Street, Suite 3800
Dallas, Texas 75201-6659
Telephone: (214) 855-7500
Facsimile: (214) 855-7584

ATTORNEYS FOR SCOTT M.
SEIDEL, TRUSTEE

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| In re: | § | Chapter 7 |
| | § | |
| WALNUT HILL PHYSICIANS' | § | Case No. 17-32255-bjh-7 |
| HOSPITAL, LLC, | § | |
| | § | |
| Debtor. | § | |

**TRUSTEE'S SECOND SET OF REQUESTS FOR PRODUCTION
TO ST. JUDE MEDICAL S.C., INC.**

**TO:** **St. Jude Medical S.C., Inc., by and through its counsel of record, Samuel C. Wisotzkey, Esq., Kohner, Mann, & Kailas, S.C., 4650 N. Port Washington Rd., Milwaukee, WI 53212-1059, and John E. Johnson, Esq., Padfield & Stout, L.L.P., 705 Ross Avenue, Dallas, Texas 75202.**

Scott M. Seidel (the "Trustee"), the duly appointed chapter 7 trustee of the bankruptcy

estate (the "Estate") of Walnut Hill Physicians' Hospital, LLC (the "Debtor"), the debtor in the

above styled and numbered bankruptcy case (the "Bankruptcy Case"), hereby serves, pursuant to

Rule 34 of the Federal Rules of Civil Procedure and Rule 7034 of the Federal Rules of

Bankruptcy Procedure, as made applicable by Federal Rule of Bankruptcy Procedure 9014, this

his *Second Set of Requests for Production* (the "Requests") *to St. Jude Medical S.C., Inc.* ("St.

Jude"), in relation to the *Motion for Allowance and Payment of Administrative Expense Priority*

*Claim.*

TRUSTEE'S SECOND SET OF REQUESTS FOR PRODUCTION TO ST. JUDE MEDICAL S.C., INC.—Page 1

EXHIBIT C
Page 1 of 7

St. Jude is instructed to respond to the following Requests, and to produce responsive documents, by serving the same on the undersigned no later than thirty (30) days after the service hereof:

Munsch Hardt Kopf & Harr, P.C.
Attn: Davor Rukavina
3800 Lincoln Plaza
500 N. Akard Street
Dallas, Texas 75201

St. Jude is instructed to use the following definitions:

"Communication" means any contact or act by which any information is transmitted or conveyed between two or more persons, and shall include, without limitation, written contact by such means as letters, memoranda, telegrams, telexes, electronically transmitted messages, e-mails, or by any Document, and any oral contact by such means as face to face meetings or conversations and telephone conversations which are transcribed, notated or in any other manner memorialized in written, typed or recorded form.

"Debtor" means Walnut Hill Physicians' Hospital, LLC and its agents, employees, and representatives.

"Documents" refers to (a) all handwritten, typed, or printed matter of any kind, including the originals and all non-identical copies, whether different from the original by reason of any notation made on such copies or otherwise, including, without limitation, agreements, correspondence, forecasts, memoranda, notes, jottings, speeches, press releases, diaries, examinations, statistics, letters, telegrams, minutes, time records, payroll records, expense records, contracts, reports, studies, training manuals, canceled checks, statements, receipts, delivery tickets, returns, summaries, work orders, pamphlets, books, prospectuses, statement of operations, interoffice and intraoffice communications, offers, notations of any sort of

EXHIBIT C
Page 2 of 7

conversations, telephone calls, meetings, or other communications, bulletins, printed matter, computer printouts, teletypes, invoices, worksheets, and all drafts, alterations, modifications, changes, and amendments of any of the foregoing; (b) graphic or aural records or representations of any kind, including, without limitation, photographs, charts, graphs, microfiche, microfilm, videotape(s), recordings, motion pictures, and; (c) electronic, mechanical or electric records or representations of any kind, including, without limitation, e-mails, tapes, cassettes, disks, recordings, and all transcriptions, in whole or in part, of any of the foregoing.

"You" and "your" shall mean St. Jude and includes, if applicable, any relevant information known by your agents and representatives.

## REQUEST NO. 1

All Communications and Documents between you, on the one hand, and Richard Genovese (including Richard Genovese, Jr., if applicable), on the other hand, related to, referring to, or mentioning the Debtor, including any invoice between you and he related to any goods or products sold, provided to, consigned, or otherwise transferred to the Debtor or to any patient of the Debtor's.

**RESPONSE:**

## REQUEST NO. 2

All contracts or agreements between you, one the one hand, and Richard Genovese (including Richard Genovese, Jr., if applicable), on the other hand, addressing, governing, or related to, any sales by him to the Debtor of any of your goods or products, or otherwise related, in any way, to him displaying, demonstrating, selling, providing, consigning, transferring title to,

EXHIBIT C
Page 3 of 7

advancing credit for, replacing, or handling any of your goods or products to, with, or for, the Debtor.

**RESPONSE:**

## REQUEST NO. 3

All Communications and Documents between you, on the one hand, and the "Campbell" referred to on your invoice number 9006810804, on the other hand, related to, referring to, or mentioning the Debtor, including any invoice between you and he/she related to any goods or products sold, provided to, consigned, or otherwise transferred to the Debtor or to any patient of the Debtor's.

**RESPONSE:**

## REQUEST NO. 4

All contracts or agreements between you, one the one hand, and the "Campbell" referred to on your invoice number 9006810804, on the other hand, addressing, governing, or related to, any sales by him/her to the Debtor of any of your goods or products, or otherwise related, in any way, to him/her displaying, demonstrating, selling, providing, consigning, transferring title to, advancing credit for, replacing, or handling any of your goods or products to, with, or for, the Debtor.

**RESPONSE:**

EXHIBIT C
Page 4 of 7

**REQUEST NO. 5**

All Communications and Documents between you, on the one hand, and the "Stamme" referred to on your invoice number 9006810804, on the other hand, related to, referring to, or mentioning the Debtor, including any invoice between you and he/she related to any goods or products sold, provided to, consigned, or otherwise transferred to the Debtor or to any patient of the Debtor's.

**RESPONSE:**

**REQUEST NO. 6**

All contracts or agreements between you, one the one hand, and the "Stamme" referred to on your invoice number 9006810804, on the other hand, addressing, governing, or related to, any sales by him/her to the Debtor of any of your goods or products, or otherwise related, in any way, to him/her displaying, demonstrating, selling, providing, consigning, transferring title to, advancing credit for, replacing, or handling any of your goods or products to, with, or for, the Debtor.

**RESPONSE:**

**REQUEST NO. 7**

All Communications and Documents between you, on the one hand, and the "M Child" referred to on your invoice number 9006810804, on the other hand, related to, referring to, or mentioning the Debtor, including any invoice between you and he/she related to any goods or

EXHIBIT C
Page 5 of 7

products sold, provided to, consigned, or otherwise transferred to the Debtor or to any patient of the Debtor's.

**RESPONSE:**

## REQUEST NO. 8

All contracts or agreements between you, one the one hand, and the "M Child" referred to on your invoice number 9006810804, on the other hand, addressing, governing, or related to, any sales by him/her to the Debtor of any of your goods or products, or otherwise related, in any way, to him/her displaying, demonstrating, selling, providing, consigning, transferring title to, advancing credit for, replacing, or handling any of your goods or products to, with, or for, the Debtor.

**RESPONSE:**

## REQUEST NO. 9

All contracts or agreements between you, one the one hand, and the Debtor, on the other hand, related to, mentioning, or governing the sale or provision by you of any goods, products, or services to the Debtor, and the Debtor's payment obligations for the same. The foregoing includes any Document that you assert governs any rights or obligations related to the Debtor, irrespective of whether it is a formal contract or agreement, including any unsigned proposals or offers.

**RESPONSE:**

DATED at Dallas, Texas on this the 3d day of April, 2018.

MUNSCH HARDT KOPF & HARR, P.C.

By: _____
Davor Rukavina, Esq.
Texas Bar No. 24030781
Fareed Kaisani, Esq.
Texas Bar No. 24104017
3800 Ross Tower
500 N. Akard Street
Dallas, Texas 75201
Telephone: (214) 855-7500
Facsimile: (214) 855-7584

**ATTORNEYS FOR**
**SCOTT M. SEIDEL, TRUSTEE**

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that, on this the 3d day of April, 2018, he caused true and correct copies of this document to be served by U.S. first class mail, postage prepaid, and by e-mail, on the following:

Samuel C. Wisotzkey, Esq.
Kohner, Mann, & Kailas, S.C.
4650 N. Port Washington Rd.
Milwaukee, WI 53212-1059
Email: swisotzkey@kmksc.com

John E. Johnson, Esq.
Padfield & Stout, L.L.P.
705 Ross Avenue
Dallas, Texas 75202
Email: jjohnson@padfieldstout.com

By: _____
Davor Rukavina, Esq.

---

TRUSTEE'S SECOND SET OF REQUESTS FOR PRODUCTION TO ST. JUDE MEDICAL S.C., INC.—Page 7

4849-6888-2016v.1 013229.00005

EXHIBIT C
Page 7 of 7

## UNITED STATES BANKRUPTCY COURT
## NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

| | | |
|---|---|---|
| In re: | ) | Chapter 7 |
| | ) | |
| WALNUT HILL PHYSICIANS' HOSPITAL, LLC, | ) ) | Case No. 17-32255-bjh |
| | ) | |
| Debtor. | ) | |
| | ) | |
| SCOTT M. SEIDEL, TRUSTEE | ) | |
| | ) | Adv. Case No. 18-03033-bjh |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| ST. JUDE MEDICAL S.C., INC., | ) | |
| | ) | |
| Defendant. | ) | |

## ST. JUDE MEDICAL S.C., INC.'S COMBINED PRELIMINARY RESPONSES TO TRUSTEE'S FIRST SET OF INTERROGATORIES AND FIRST SET OF REQUESTS FOR PRODUCTION AND TRUSTEE'S SECOND SET OF REQUESTS FOR PRODUCTION TO ST. JUDE MEDICAL S.C., INC.

TO PLAINTIFF SCOTT M. SEIDEL, TRUSTEE, by and through its attorneys, Munsch Hardt Kopf & Harr, P.C., Attn: Fareed Kaisani, 3800 Lincoln Plaza, 500 N. Akard Street, Dallas, Texas 75201

Defendant St. Jude Medical S.C., Inc. ("St. Jude"), responds to Trustee's First Set of

Requests for Production of Documents and Interrogatories, and the Trustee's Second Set of

Request for Production of Documents (collectively, the "Requests") as follows:

## GENERAL RESPONSE

1.      St. Jude objects to the Requests to the extent they seek to impose any obligation on St. Jude that is greater than or inconsistent with that stated in the Federal Rules of Bankruptcy Procedure and applicable Federal Rules of Civil Procedure.

2.      St. Jude objects to the Requests to the extent they are overly broad, not sufficiently particularized, unduly burdensome, oppressive and harassing.

3.      St. Jude objects to the Requests to the extent that they request disclosure of confidential and proprietary information, including potentially protected health information of particular patents. St. Jude will make such confidential information available only upon entry by the Court of a protective order providing suitable and necessary protection of such information.

4.      St. Jude objects to the Requests to the extent that they seek disclosure of information protected from discovery or other involuntary disclosure by reason of the attorney-client privilege, work product immunity or other rule of privilege or confidentiality provided by law, including, but not limited to, information concerning internal memoranda, notes and records prepared by St. Jude's counsel.

5.      St. Jude construes the Requests as not seeking information concerning the legal memoranda, draft pleadings, attorney notes, correspondence involving counsel for St. Jude and other letters, communications and documents that have come into existence during counsel's representation of St. Jude with regard to the subject matter of this action. To the extent the Requests might be construed as seeking such information, St. Jude objects on the grounds of the attorney-client privilege, work product doctrine, and any other rule of privilege or confidentiality provided by law, and further objects on the grounds that the Requests are overly broad, unduly

2

burdensome and not relevant to the subject matter of this action or reasonably calculated to lead to discovery of admissible evidence.

6. St. Jude objects to the Requests to the extent they may seek disclosure of information that is not relevant to the claim or defense of any party, are not reasonably calculated to lead to the discovery of admissible evidence, or are not proportional to the needs of the case, considering the importance of the issues at stake, the amount in controversy, the Plaintiff's access to relevant information, the importance of the discovery in resolving the issues, and the burden and expense of the proposed discovery outweighs its likely benefit.

7. St. Jude objects to the Requests to the extent they seek documents already in the possession of Debtor Walnut Hill Physicians Hospital, LLC ("Debtor"), Trustee Scott M. Seidel ("Trustee") or any agents or attorneys acting on any of their behalf, including, without limitation, documents previously produced by St. Jude.

8. St. Jude objects to the Definitions and Instructions set forth in the Requests to the extent they differ from or conflict with the obligations set forth in Fed. R. Bankr. P. 7026, 7033 and 7034, and additionally objects to the extent they are overly broad, unduly burdensome, oppressive and harassing. In particular, and without limitation, St. Jude objects to the definition of "relate," "related to," "relating," "relating to" and all other similar phrases as vague, overly broad, unduly burdensome, oppressive and harassing, as such expansive definition could be construed to extend to a vast amount of documents and communications not relevant and not reasonably calculated to lead to the discovery of admissible evidence.

9. St. Jude reserves the right to add to or otherwise modify this response to the Requests as appropriate and as further discovery, investigation and other circumstances may warrant.

3

EXHIBIT D
Page 3 of 19

10.     St. Jude objects to the Requests on the ground that discovery is continuing and it

continues to review its records. St. Jude anticipates that, as further discovery and investigation

proceed, additional information responsive to the Requests may be revealed.

11.     The objections set forth in the General Response are incorporated into each and

every of the Answers and Responses set forth below.

## I.     INTERROGATORIES

### INTERROGATORY NO. 1

Identify all the Goods that were shipped by St. Jude and received by the Debtor in the one (1) year
period prior to the Petition Date?

ANSWER: Subject to the General Response, and without waiving objections therein, see

documents produced herewith including a payment history and related invoices paid for the

relevant time period. See also documents previously produced, including copies of invoices and

proof of delivery for invoices comprising St. Jude's new value defense. See also St. Jude's proof

of claim filed herein. In particular, see documents numbered SJM-000001-001203 and SJM-

001207-001211.

### INTERROGATORY NO: 2

For your response to Interrogatory 1, please identify the date the Goods were shipped, the price
charged the Debtor for the Goods, and the price the Debtor paid for the Goods.

ANSWER: Subject to the General Response and without waiving objections therein, see

response to Interrogatory No. 1.

4

## INTERROGATORY NO. 3

For your response to Interrogatory 1, please identify the date the Debtor ordered each of the Goods.

ANSWER: Subject to the General Response, and without waiving objections therein, see

response to Interrogatory No. 1.


## INTERROGATORY NO. 4

What is the basis for your assertion in the Motion that "Those Medical Goods shipped by St. Jude to the Debtor were sold by St. Jude to the Debtor for its use in the ordinary course of the Debtor's business"?

ANSWER: Subject to the General Response, and without waiving objections therein, the

Debtor operated a medical facility. The goods sold to and delivered to the Debtor were medical

products ordered and/or used or to be used by the Debtor for use in the operation of its business.


## INTERROGATORY NO. 5

What is the basis for your assertion in the Motion that "St. Jude's Medical Goods were necessary to assist Debtor in running its business"?

ANSWER: Subject to the General Response, and without waiving objections therein, see

response to Interrogatory No. 4.


## INTERROGATORY NO. 6

Do you know if any of the Goods that St. Jude allegedly shipped to the Debtor within 20 days of the Petition Date were actually used by the Debtor in running its business?

ANSWER: Subject to the General Response, and without waiving objections therein, St.

Jude has been informed by the Trustee that the goods listed on invoice 9006810805 are allegedly

still located at the Debtor's former business premises. The Trustee is also believed to have

information about St. Jude products that were not used, and other goods the Trustee used or sold

5

and used to pay down obligations to the Debtor's secured creditor, including, without limitation, the goods listed by the Trustee as to be sold in Docket No. 107. To the extent the invoices indicate that the applicable goods were delivered by "hand carry," that notation generally indicates that such goods were used contemporaneously in a surgical procedure on or about the dates indicated on the invoice or on the related packing slip associated with the invoice.

## INTERROGATORY NO. 7

What is the basis for your assertion in the Motion that "St. Jude has provided a benefit to the estate"?

ANSWER: Subject to the General Response, and without waiving objections therein, St. Jude's goods were either used in the operation of its business prior to the Petition Date and generated revenue, or were otherwise available to the Trustee and the Debtor's secured creditors to reduce the Debtor's secured obligations.

## INTERROGATORY NO. 8

What is the basis for your assertion in the Motion that "St. Jude is owed $131,790.36 for St. Jude Medical Goods Received by the Debtor within twenty days prior to the Petition Date"?

ANSWER: There was a listing of invoices attached to St. Jude's motion. Upon further review, it appears that invoice no. 9006876194 in the amount of $16,589.89 was paid. The Trustee further asserts that goods on invoice no. 9006810805 were received by the Debtor, but may constitute a duplicate shipment, and St. Jude is continuing to investigate the matter. St. Jude continues to review its records, and reserves the right to include any additional goods it discovers were received by the Debtor in the ordinary course of business with the 20 day period. At this time, and subject to ongoing and continuing investigation, St. Jude believes its valid 503(b)(9) claim is not less than $115,200.47.

6

## INTERROGATORY NO. 9

Did St. Jude at any time pick up, recover, stop delivery of, or actually not deliver, any of the Goods the subject of the Motion?

ANSWER: Subject to the General Response and St. Jude's ongoing investigation, St. Jude

believes all goods that were the subject of the Motion were delivered and retained.

## INTERROGATORY NO. 10

Identify each St. Jude employee or agent with whom the Debtor communicated to order any of the Goods the subject of the Motion, and provide the title (or job description) of such employee, and the contact information for such employee.

ANSWER: St. Jude objects to this request to identify employees that would receive orders

for goods that have been invoiced and delivered as not proportional to the needs of the case,

considering the importance of the issues at stake, the amount in controversy, the importance of the

discovery in resolving the issues, and the burden and expense of the proposed discovery outweighs

its likely benefit. Subject to this objection and the General Response and without waiving

objections therein, reference is made to the documents produced prior to this response, and

produced again here. In addition, for hand carry items, St. Jude believes the order would have

been communicated directly to the sales person indicated on the invoice or referenced on the bill

only form or packing slip associated with the invoice. Other goods that were shipped via Federal

Express or other methods would have been ordered via telephone to St. Jude's customer service

department.

## INTERROGATORY NO. 11

What do you assert is the value of the Goods the subject of the Motion and how do you determine such value? If your answer includes the proposition that the value is determined by the amounts billed or invoiced by you, then explain whether you charge or bill different clients different amounts for the same Goods (the subject of the Motion) at approximately the same time, and

7

explain how these amounts are derived (for example, whether there are any bulk discounts, government discounts, charity discounts, or other factors that determine different pricing).

ANSWER: St. Jude objects to this request to the extent that it seeks information about other St. Jude customers or its pricing to other customers, as those arrangements are confidential and proprietary, not relevant to the matters at issue in this case, nor are they reasonably calculated to lead to the discovery of admissible evidence. Moreover, St. Jude further objects to this request because the request for information relating to other customers is not proportional to the needs of the case, considering the importance of the issues at stake, the amount in controversy, the Plaintiff's access to relevant information, the importance of the discovery in resolving the issues, and the burden and expense of the proposed discovery outweighs its likely benefit. Subject to all objections, and without waiving any such objections, the value of the goods is listed on the invoices, all of which are produced again herewith, and pricing is either determined by contract, pricing letter or other agreement with the Debtor. Contracts and agreements that have been identified at this time are also produced herewith as documents numbered SJM 001212-001242.

## II.     FIRST SET OF REQUESTS FOR PRODUCTION

## REQUEST NO. 1

All Documents and Communications between St. Jude and the Debtor which relate to or evidence an agreement between the parties for St. Jude to provide Goods to the Debtor including, specifically, any Document or Communication by which the Debtor agreed to pay for the same.

RESPONSE: St. Jude objects to this Request as overly broad, unduly burdensome, and as seeking documents that are not relevant and are not reasonably calculated to lead to the discovery of admissible evidence. St. Jude further objects to this request because the request for "All Documents and Communications" is not proportional to the needs of the case, considering the importance of the issues at stake, the amount in controversy, the Plaintiff's access to relevant

information, the importance of the discovery in resolving the issues, and the burden and expense of the proposed discovery outweighs its likely benefit. Subject to those objections and the General Response and without waiving them, see documents produced in response to Interrogatory 1, and the additional documents produced herewith and numbered SJM-001212-001242.

## REQUEST NO. 2

All Documents and Communications within the one (1) year period prior to the Petition Date that detail shipments of Goods from St. Jude to the Debtor. Include the Good shipped, the prices, the date of shipment, and the date the Debtor ordered the Goods.

RESPONSE: St. Jude objects to this Request as overly broad, unduly burdensome, and as seeking documents that are not relevant and are not reasonably calculated to lead to the discovery of admissible evidence. St. Jude further objects to this request because the request for "All Documents and Communications" is not proportional to the needs of the case, considering the importance of the issues at stake, the amount in controversy, the Plaintiff's access to relevant information, the importance of the discovery in resolving the issues, and the burden and expense of the proposed discovery outweighs its likely benefit. Subject to those objections and the General Response and without waiving them, see documents produced in response to Interrogatory 1.

## REQUEST NO. 3

All Documents and Communications between the Debtor and St. Jude within the one (1) year prior to the Petition Date, including any such Documents and Communications related to or evidencing any payment by the Debtor to St. Jude.

RESPONSE: St. Jude objects to this Request as overly broad, unduly burdensome, and as seeking documents that are not relevant and are not reasonably calculated to lead to the discovery of admissible evidence. St. Jude further objects to this request because the request for "All Documents and Communications" is not proportional to the needs of the case, considering the

9

importance of the issues at stake, the amount in controversy, the Plaintiff's access to relevant information (including the Debtor's payment records and information), the importance of the discovery in resolving the issues, and the burden and expense of the proposed discovery outweighs its likely benefit. Subject to those objections and the General Response and without waiving them, see documents produced in response to Interrogatories 1 and SJM-001207-001211.

## REQUEST NO. 4

All Documents and Communications related to any assertion in the Motion, including all Documents and Communications that St. Jude will offer into evidence at any hearing on the Motion.

RESPONSE: St. Jude objects to this Request as overly broad, unduly burdensome, and as seeking documents that are not relevant and are not reasonably calculated to lead to the discovery of admissible evidence. St. Jude further objects to this request because the request for "All Documents and Communications" is not proportional to the needs of the case, considering the importance of the issues at stake, the amount in controversy, the Plaintiff's access to relevant information, the importance of the discovery in resolving the issues, and the burden and expense of the proposed discovery outweighs its likely benefit. St. Jude further objects because it has not yet determined what evidence it will use at any hearing in this matter—given the present stage of this matter, it is not reasonably possible for St. Jude to provide at this time a complete statement of all Documents and Communications that St. Jude will offer into evidence—St. Jude will disclose and produce such documents in accordance with the Scheduling Order in the case. Subject to those objections and the General Response and without waiving them, see documents produced in response to Interrogatory 1 and all other documents produced in connection with this response.

10

## REQUEST NO. 5

All Documents and Communications between you and any third party related to any demand for payment, claim submitted, or payment received, by St. Jude against or from such third party, related to, for, or on account of the Debtor's failure to pay for any of the Goods the subject of the Motion, including as may be related to any guarantor, insurer, letter of credit issuer, co-obligor, or indemnitor.

RESPONSE: Subject to the General Response, St. Jude asserts that there are no documents responsive to this request.

## REQUEST NO. 6

All Documents and Communications that support your answers to the Interrogatories not otherwise requested in another Request.

RESPONSE: St. Jude objects to this Request as overly broad, unduly burdensome, and as seeking documents that are not relevant and are not reasonably calculated to lead to the discovery of admissible evidence. St. Jude further objects to this request because the request for "All Documents and Communications" is not proportional to the needs of the case, considering the importance of the issues at stake, the amount in controversy, the Plaintiff's access to relevant information, the importance of the discovery in resolving the issues, and the burden and expense of the proposed discovery outweighs its likely benefit. Subject to those objections and the General Response and without waiving them, see documents produced in response to Interrogatory 1.

## REQUEST NO. 7

All Documents and Communications related to any different pricing charged different customers within the meaning of Interrogatory No. 11.

RESPONSE: St. Jude objects to this Request as overly broad, unduly burdensome, and as seeking documents that are not relevant and are not reasonably calculated to lead to the discovery

11

of admissible evidence. St. Jude further objects to this request because the request for "All Documents and Communications" is not proportional to the needs of the case, considering the importance of the issues at stake, the amount in controversy, the Plaintiff's access to relevant information, the importance of the discovery in resolving the issues, and the burden and expense of the proposed discovery outweighs its likely benefit. St. Jude also objects to this request on the grounds stated in its response to Interrogatory 11.

## III. SECOND SET OF REQUESTS FOR PRODUCTION

### REQUEST NO. 1

All Communications and Documents between you, on the one hand, and Richard Genovese (including Richard Genovese, Jr., if applicable) on the other hand, related to, referring to, or mentioning the Debtor, including any invoice between you and he related to any goods or products sold, provided to, consigned, or otherwise transferred to the Debtor or to any patient of the Debtor's.

RESPONSE: St. Jude objects to this Request as overly broad, unduly burdensome, and as seeking documents that are not relevant and are not reasonably calculated to lead to the discovery of admissible evidence. St. Jude further objects to this request because the request for "All Communications and Documents" relating to a sales representative, let alone multiple sales representatives, is not proportional to the needs of the case, considering the importance of the issues at stake, the amount in controversy, the Plaintiff's access to relevant information, the importance of the discovery in resolving the issues, and the burden and expense of the proposed discovery outweighs its likely benefit.

### REQUEST NO. 2

All contracts or agreements between you, on the one hand, and Richard Genovese (including Richard Genovese, Jr., if applicable) on the other hand, addressing, governing, or related to any sales by him to the Debtor of any of your goods or products, or otherwise related, in any way, to him displaying, demonstrating, selling, providing, consigning, transferring title to,

12

advancing credit for, replacing, or handling, any of your goods or products to, with, or for, the Debtor.

RESPONSE: St. Jude objects to this Request as overly broad, unduly burdensome, and as seeking documents that are not relevant and are not reasonably calculated to lead to the discovery of admissible evidence. St. Jude further objects to this request because the request for contracts and agreements with any sales representative, let alone multiple sales representatives, is not proportional to the needs of the case, considering the importance of the issues at stake, the amount in controversy, the Plaintiff's access to relevant information, the importance of the discovery in resolving the issues, and the burden and expense of the of the proposed discovery outweighs its likely benefit.

## REQUEST NO. 3

All Communications and Documents between you, on the one hand, and the "Campbell" referred to on your invoice number 9006810804, on the other hand, related to, referring to, or mentioning the Debtor, including any invoice between you and he/she related to any goods or products sold, provided to, consigned, or otherwise transferred to the Debtor or to any patient of the Debtor's.

RESPONSE: St. Jude objects to this Request as overly broad, unduly burdensome, and as seeking documents that are not relevant and are not reasonably calculated to lead to the discovery of admissible evidence. St. Jude further objects to this request because the request for "All Communications and Documents" relating to a sales representative, let alone multiple sales representatives, is not proportional to the needs of the case, considering the importance of the issues at stake, the amount in controversy, the Plaintiff's access to relevant information, the importance of the discovery in resolving the issues, and the burden and expense of the proposed discovery outweighs its likely benefit.

13

## REQUEST NO. 4

All contracts or agreements between you, on the one hand, and the "Campbell" referred to on your invoice number 9006810804, on the other hand, addressing, governing, or related to any sales by him/her to the Debtor of any of your goods or products, or otherwise related, in any way, to him displaying, demonstrating, selling, providing, consigning, transferring title to, advancing credit for, replacing, or handling, any of your goods or products to, with, or for, the Debtor.

RESPONSE: St. Jude objects to this Request as overly broad, unduly burdensome, and as

seeking documents that are not relevant and are not reasonably calculated to lead to the discovery

of admissible evidence. St. Jude further objects to this request because the request for contracts

and agreements with any sales representative, let alone multiple sales representatives, is not

proportional to the needs of the case, considering the importance of the issues at stake, the amount

in controversy, the Plaintiff's access to relevant information, the importance of the discovery in

resolving the issues, and the burden and expense of the of the proposed discovery outweighs its

likely benefit.

## REQUEST NO. 5

All Communications and Documents between you, on the one hand, and the "Stamme" referred to on your invoice number 9006810804, on the other hand, related to, referring to, or mentioning the Debtor, including any invoice between you and he/she related to any goods or products sold, provided to, consigned, or otherwise transferred to the Debtor or to any patient of the Debtor's.

RESPONSE: St. Jude objects to this Request as overly broad, unduly burdensome, and as

seeking documents that are not relevant and are not reasonably calculated to lead to the discovery

of admissible evidence. St. Jude further objects to this request because the request for "All

Communications and Documents" relating to a sales representative, let alone multiple sales

representatives, is not proportional to the needs of the case, considering the importance of the

issues at stake, the amount in controversy, the Plaintiff's access to relevant information, the

14

importance of the discovery in resolving the issues, and the burden and expense of the proposed

discovery outweighs its likely benefit.

## REQUEST NO. 6

All contracts or agreements between you, on the one hand, and the "Stamme" referred to on your invoice number 9006810804, on the other hand, addressing, governing, or related to any sales by him/her to the Debtor of any of your goods or products, or otherwise related, in any way, to him displaying, demonstrating, selling, providing, consigning, transferring title to, advancing credit for, replacing, or handling, any of your goods or products to, with, or for, the Debtor.

RESPONSE: St. Jude objects to this Request as overly broad, unduly burdensome, and as

seeking documents that are not relevant and are not reasonably calculated to lead to the discovery

of admissible evidence. St, Jude further objects to this request because the request for contracts

and agreements with any sales representative, let alone multiple sales representatives, is not

proportional to the needs of the case, considering the importance of the issues at stake, the amount

in controversy, the Plaintiff's access to relevant information, the importance of the discovery in

resolving the issues, and the burden and expense of the of the proposed discovery outweighs its

likely benefit.

## REQUEST NO. 7

All Communications and Documents between you, on the one hand, and the "M Child" referred to on your invoice number 9006810804, on the other hand, related to, referring to, or mentioning the Debtor, including any invoice between you and he/she related to any goods or products sold, provided to, consigned, or otherwise transferred to the Debtor or to any patient of the Debtor's.

RESPONSE: St. Jude objects to this Request as overly broad, unduly burdensome, and as

seeking documents that are not relevant and are not reasonably calculated to lead to the discovery

of admissible evidence. St. Jude further objects to this request because the request for "All

Communications and Documents" relating to a sales representative, let alone multiple sales

15

representatives, is not proportional to the needs of the case, considering the importance of the issues at stake, the amount in controversy, the Plaintiff's access to relevant information, the importance of the discovery in resolving the issues, and the burden and expense of the proposed discovery outweighs its likely benefit.

## REQUEST NO. 8

All contracts or agreements between you, on the one hand, and the "M Child" referred to on your invoice number 9006810804, on the other hand, addressing, governing, or related to any sales by him/her to the Debtor of any of your goods or products, or otherwise related, in any way, to him displaying, demonstrating, selling, providing, consigning, transferring title to, advancing credit for, replacing, or handling, any of your goods or products to, with, or for, the Debtor.

RESPONSE: St. Jude objects to this Request as overly broad, unduly burdensome, and as seeking documents that are not relevant and are not reasonably calculated to lead to the discovery of admissible evidence. St. Jude further objects to this request because the request for contracts and agreements with any sales representative, let alone multiple sales representatives, is not proportional to the needs of the case, considering the importance of the issues at stake, the amount in controversy, the Plaintiff's access to relevant information, the importance of the discovery in resolving the issues, and the burden and expense of the of the proposed discovery outweighs its likely benefit.

## REQUEST NO. 9

All contracts or agreements between you, on the one hand, and the Debtor, on the other hand, relating to, mentioning, or governing the sale or provision by you of any goods, products, or services to the Debtor, and the Debtor's payment obligations for the same. The foregoing includes any Document that you assert governs any rights or obligations related to the Debtor, irrespective of whether it is a formal contract or agreement, including any unsigned proposals or offers.

RESPONSE: St. Jude objects to this Request because it is duplicative of other requests, is overly broad, unduly burdensome, and seeks documents not proportional to the needs of the case,

16

considering the importance of the issues at stake, the amount in controversy, the Plaintiff's access

to relevant information, the importance of the discovery in resolving the issues, and the burden

and expense of the proposed discovery outweighs its likely benefit. Subject to those objections

and the General Response and without waiving them, see documents produced Response to

Request no. 1 of the Trustee's First Set of Requests for Documents.

AS TO OBJECTIONS AND RESPONSES TO REQUEST FOR PRODUCTION OF
DOCUMENTS:

KOHNER, MANN & KAILAS, S.C.

Attorneys for St. Jude Medical S.C., Inc.

By: _____

Samuel C. Wisotzkey
Attorney No. 1029537

P. O. Office Address:
Barnabas Business Center
4650 North Port Washington Road
Milwaukee, WI 53212-1059
Telephone: (414) 962-5110
Facsimile: (414) 962-8725

17

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that, on this the ___9th___ day of May, 2018, he caused true and correct copies of this document to be served by Federal Express on the following:

Counsel Scott Seidel, Trustee

Davor Rukavina
Fareed Kaisani
Munsch Hardt Kopf & Harr, P.C.,
3800 Lincoln Plaza
500 N. Akard Street
Dallas, Texas 75201

Samuel C. Wisotzkey

18

STATE OF ILLINOIS
COUNTY OF LAKE

      Gregory Haut, being first duly sworn on oath, deposes and states that:

      1.     I am an Accounts Receivable Manager with Abbott Laboratories Inc., the authorized agent of St. Jude Medical Center, S.C., Inc. "(Defendant"), and, in that capacity, I have read the foregoing Answers to Interrogatories and know the contents thereof.

      2.     The Answers to Interrogatories were prepared with the assistance and advice of counsel.

      3.     The answers set forth in the Answers to Interrogatories, subject to inadvertent or undiscovered errors, are based on and therefore necessarily limited by the records and information still in existence, presently recollected and thus far discovered in the course of the preparation of such answers.

      4.     Consequently, I reserve the right to make any changes in such answers if it appears at any time that omissions or errors have been made therein or that more accurate information is available.

      5.     Subject to the limitations set forth herein, such answers are true to the best of my knowledge, information and belief.

AS TO ANSWERS:

Gregory Haut

STATE OF ILLINOIS

County of Lake SS.

On this 0̲9̲ day of May, 2018, before me, the undersigned notary public, personally appeared Gregory Haut, personally known to me to be the person whose name is signed on the preceding or attached document, and acknowledged to me that he signed it voluntarily for its stated purpose.

WITNESS my hand and official seal.

Notary Public

[seal]

OFFICIAL SEAL
CINDY J CLAWSON
NOTARY PUBLIC, STATE OF ILLINOIS
MY COMMISSION EXPIRES 09/14/2019

**Rukavina, Davor**

| | |
|---|---|
| **From:** | Rukavina, Davor |
| **Sent:** | Thursday, May 10, 2018 11:17 AM |
| **To:** | Samuel C. Wisotzkey (SWisotzkey@kmksc.com) |
| **Cc:** | John Johnson (JJohnson@padfieldstout.com); Vasek, Julian |
| **Subject:** | Seidel/St. Jude |

Gentlemen:

We are starting to review your discovery responses, and we noted that St. Jude asserted boilerplate objections (and indeed objected to every request). Frankly, I think this is ridiculous after the extensions we granted. I could I guess take the position that all objections were waived, by not being timely asserted, but I will hold off on making that decision to see whether we can work out supplemental responses that omit the general objections and specify what, if anything, is being withheld. Please see *Heller v. City of Dallas*, 303 F.R.D. 466, 483 (N.D. Tex. 2014) for what our courts do with these general objections.

Please let me know if St. Jude will supplement and, if so, by when, or please let me know whether you are available Monday or Tuesday to have a conference regarding these issues.

There are also discrete objections that I would like to discuss.

Thank you,

**Davor Rukavina, Esq.**

Munsch Hardt Kopf & Harr, P.C.
500 N. Akard Street, Suite 3800 / Dallas, Texas 75201-6659

Direct: +1.214.855.7587 / drukavina@munsch.com / munsch.com

Notice: This email message is for the sole use of the intended recipient(s) and may contain confidential and privileged information. Any unauthorized review, use, disclosure or distr bution is prohibited. Nothing contained in this message or in any attachment shall constitute a contract or electronic signature under the Electronic Signatures in Global and National Commerce Act, any version of the Uniform Electronic Transactions Act or any other statute governing electronic transactions.

**EXHIBIT E**
**Page 1 of 1**



**MUNSCH HARDT**

DALLAS / HOUSTON / AUSTIN

Ross Tower
500 N. Akard Street Suite 3800
Dallas, Texas 75201-6659
Main 214.855.7500
Fax 214.855.7584
munsch.com

Direct Dial 214.855.7528
jvasek@munsch.com

May 16, 2018

*Via Electronic Mail*
Samuel C. Wisotzkey
Kohner, Mann & Kailas, S.C.
4650 N. Port Washington Rd.
Washington Bldg., 2nd Floor
Milwaukee, WI 53212-1059
swisotzkey@kmksc.com

Re:   *Seidel v. St. Jude Medical S.C., Inc. (In re Walnut Hill Physicians' Hospital, LLC)*, Adv. No. 18-3033, pending in the U.S. Bankruptcy Court for the Northern District of Texas

Dear Mr. Wisotzkey:

As you know, my firm represents Scott Seidel, the chapter 7 trustee (the "Trustee") for Walnut Hill Physicians' Hospital, LLC (the "Debtor"), in the above-referenced adversary proceeding against your client, St. Jude Medical S.C., Inc. ("St. Jude"). Following your telephone call yesterday with Mr. Rukavina, I am writing to outline the Trustee's position on *St. Jude Medical S.C., Inc.'s Combined Preliminary Responses to Trustee's First Set of Interrogatories and First Set of Requests for Production and Trustee's Second Set of Requests for Production to St. Jude Medical S.C., Inc.* (the "Responses"), which we received on May 10, 2018.

Shortly after receiving the Responses, Mr. Rukavina sent you a citation to *Heller v. City of Dallas*, 303 F.R.D. 466 (N.D. Tex. 2014), which provides detailed guidance on the discovery standards applicable in the Northern District of Texas. Upon Sherpardizing this case, one will see that various judges in this district have cited it with approval sixty-four times in the three-and-a-half years since it was published. On average, Northern District judges cite *Heller* more than once a month.

Under this precedent, the "General Response" section of St. Jude's Responses is *per se* invalid. As the *Heller* court explained:

> Counsel should cease and desist from raising these free-standing and purportedly universally applicable "general objections" in responding to discovery requests. Deploying these general objections in this manner is … inconsistent with the Federal Rules and is not warranted by existing law.

*Heller*, 303 F.R.D. at 484.

Despite repeated requests to remove the general objections from its Responses, St. Jude has not done so. Once again, the Trustee requests that St. Jude issue amended discovery responses that do not

4826-5582-2950v.2

**EXHIBIT F**
**Page 1 of 7**

Samuel C. Wisotzkey
May 16, 2018
Page 2

include the "General Response" section or any reference to or incorporation of it in St. Jude's specific discovery responses. Please note as well that the deadline to object to the Trustee's discovery requests passed prior to any objection being made, and the Trustee reserves his right to argue that all objections have been waived, if we cannot reach an agreement, especially after so many agreed response extensions.

Boilerplate objections in response to specific requests are likewise impermissible. *Heller*, 303 F.R.D. at 483 ("boilerplate or unsupported objections—even when asserted in response to a specific discovery request and not as part of a general list of generic objections preceding any responses to specific discovery requests—are likewise improper and ineffective and may rise (or fall) to the level of what the Fifth Circuit has described as 'an all-too-common example of the sort of 'Rambo tactics' that have brought disrepute upon attorneys and the legal system'") (quoting *McLeod, Alexander, Powel & Apffel, P.C. v. Quarles*, 894 F.2d 1482, 1484-86 (5th Cir. 1990)).

The *Heller* court listed various rules that govern specific discovery responses, including the following four:

> A party served with written discovery must fully answer each interrogatory or document request to the full extent that it is not objectionable and affirmatively explain what portion of an interrogatory or document request is objectionable and why, affirmatively explain what portion of the interrogatory or document request is not objectionable and the subject of the answer or response, and affirmatively explain whether any responsive information or documents have been withheld.

> * * *

> [R]esponding to a document request or interrogatory "subject to" and "without waiving" objections is not consistent with the Federal Rules or warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law.

> * * *

> If a discovery request is overbroad, the responding party must, to comply with Rule 33 or Rule 34, explain the extent to which it is overbroad and answer or respond to the extent that it is not—and explain the scope of what the responding party is answering or responding to.

> * * *

> Similarly, if answering or responding to a discovery request would impose an undue burden, the responding party must, as discussed below, properly substantiate that assertion and then should only answer or

Samuel C. Wisotzkey
May 16, 2018
Page 3

> respond to the part or extent, if any, of the request that would not involve
> an undue burden

*Heller*, 303 F.R.D. at 485-89.

St. Jude's Responses violate each of these rules. First, St. Jude asserted one of the two following, nearly-identical boilerplate objections in response to fourteen of the Trustee's sixteen discovery requests:

> St. Jude objects to this Request as overly broad, unduly burdensome, and as seeking documents that are not relevant and are not reasonably calculated to lead to the discovery of admissible evidence. St. Jude further objects to this request because the request for "All Documents and Communications" is not proportional to the needs of the case, considering the importance of the issues at stake, the amount in controversy, the Plaintiff's access to relevant information, the importance of the discovery in resolving the issues, and the burden and expense of the proposed discovery outweighs its likely benefit.

> [or]

> St. Jude objects to this Request as overly broad, unduly burdensome, and as seeking documents that are not relevant and are not reasonably calculated to lead to the discovery of admissible evidence. St. Jude further objects to this request because the request for ["All Documents and Communications" relating to a / contracts and agreements with any] sales representative, let alone multiple sales representatives, is not proportional to the needs of the case, considering the importance of the issues at stake, the amount in controversy, the Plaintiff's access to relevant information, the importance of the discovery in resolving the issues, and the burden and expense of the proposed discovery outweighs its likely benefit.

Second, St. Jude responded to six of the sixteen discovery responses "subject to" its general and specific objections.

The Trustee therefore requests that St. Jude promptly amend its Responses to (1) remove any "subject to" qualifying language; (2) explain the extent to which each allegedly objectionable request is overbroad, respond to the extent that it is not, and explain the scope of what St. Jude is responding to; (3) properly substantiate its undue-burden assertions and respond to the extent that each request does not involve an undue burden; and (4) affirmatively explain whether any responsive information or documents have been withheld based on St. Jude's objections.

Finally, St. Jude's Responses indicate that St. Jude is refusing to produce documents in response nine requests. The Trustee will address each of them below.

Samuel C. Wisotzkey
May 16, 2018
Page 4

## I.    FIRST SET OF REQUESTS FOR PRODUCTION

REQUEST NO. 7: All Documents and Communications related to any different pricing charged different customers within the meaning of Interrogatory 11.[1]

The dispute between St. Jude and the Trustee arose on November 11, 2017, when St. Jude filed its *Motion for Allowance and Payment of Administrative Expense Priority Claim*, alleging that St. Jude provided $131,790.36 in goods to the Debtor in the twenty days before the Debtor commenced the Bankruptcy Case. On March 14, 2018, the Trustee filed an adversary proceeding against St. Jude alleging that St. Jude received $460,292.16 in preferential payments during the ninety days before the Debtor filed the Bankruptcy Case. St. Jude filed an answer on April 16, 2018, in which St. Jude asserted the following affirmative defenses: (1) contemporaneous exchange for new value; (2) ordinary course of business; and (3) unpaid new value after the fact.

Request 7 relates to St. Jude's ordinary-course-of-business defense. Specifically, St. Jude alleged that the preferential transfers are unavoidable because they were made according to ordinary business terms. The prices that St. Jude was charging other customers for the same products is information relevant to this defense. In order to address any undue burden or proportionality objections, the Trustee will limit this request to a period of two years. The ordinary-course defense requires a historical analysis, and the Debtor's hospital only operated for about three years. Additionally, value is critical to section 503(b)(9), making the pricing issue all the more relevant. While the Trustee does not concede that producing documents spanning three years is unduly burdensome or disproportionate to the needs of this case, he believes two years is a reasonable compromise. The Trustee will also enter into a reasonable protective order to the extent this request seeks to discover proprietary information.

## II.    SECOND SET OF REQUESTS FOR PRODUCTION

REQUEST NO. 1: All Communications and Documents between you, on the one hand, and Richard Genovese (including Richard Genovese, Jr., if applicable) on the other hand, related to, referring to, or mentioning the Debtor, including any invoice between you and he related to any goods or products sold, provided to, consigned, or otherwise transferred to the Debtor or to any patient of the Debtor's.

REQUEST NO. 2: All contracts or agreements between you, one the one hand, and Richard Genovese (including Richard Genovese, Jr., if applicable), on the other hand, addressing, governing, or related to, any

---

[1] Interrogatory 11 asked the following: "What do you assert is the value of the Goods the subject of the Motion [for 503(b)(9) admin claim] and how do you determine such value? If you answer includes the proposition that the value is determined by the amounts billed or invoiced by you, then explain whether you charge or bill different clients different amounts for the same Goods (the subject of the Motion) at approximately the same time, and explain how these amounts are derived (for example, whether there are any bulk discounts, government discounts, charity discounts, or other factors that determine different pricing)."

4826-5582-2950v.2

Samuel C. Wisotzkey
May 16, 2018
Page 5

sales by him to the Debtor of any of your goods or products, or otherwise related, in any way, to him displaying, demonstrating, selling, providing, consigning, transferring title to, advancing credit for, replacing, or handling any of your goods or products to, with, or for, the Debtor

REQUEST NO. 3: All Communications and Documents between you, on the one hand, and the "Campbell" referred to on your invoice number 9006810804, on the other hand, related to, referring to, or mentioning the Debtor, including any invoice between you and he/she related to any goods or products sold, provided to, consigned, or otherwise transferred to the Debtor or to any patient of the Debtor's.

REQUEST NO. 4: All contracts or agreements between you, one the one hand, and the "Campbell" referred to on your invoice number 9006810804, on the other hand, addressing, governing, or related to, any sales by him/her to the Debtor of any of your goods or products, or otherwise related, in any way, to him/her displaying, demonstrating, selling, providing, consigning, transferring title to, advancing credit for, replacing, or handling any of your goods or products to, with, or for, the Debtor.

REQUEST NO. 5: All Communications and Documents between you, on the one hand, and the "Stamme" referred to on your invoice number 9006810804, on the other hand, related to, referring to, or mentioning the Debtor, including any invoice between you and he/she related to any goods or products sold, provided to, consigned, or otherwise transferred to the Debtor or to any patient of the Debtor's.

REQUEST NO. 6: All contracts or agreements between you, one the one hand, and the "Stamme" referred to on your invoice number 9006810804, on the other hand, addressing, governing, or related to, any sales by him/her to the Debtor of any of your goods or products, or otherwise related, in any way, to him/her displaying, demonstrating, selling, providing, consigning, transferring title to, advancing credit for, replacing, or handling any of your goods or products to, with, or for, the Debtor.

REQUEST NO. 7: All Communications and Documents between you, on the one hand, and the "M Child" referred to on your invoice number 9006810804, on the other hand, related to, referring to, or mentioning the Debtor, including any invoice between you and he/she related to any goods or products sold, provided to, consigned, or otherwise transferred to the Debtor or to any patient of the Debtor's.

Samuel C. Wisotzkey
May 16, 2018
Page 6

>REQUEST NO. 8: All contracts or agreements between you, one the one hand, and the "M Child" referred to on your invoice number 9006810804, on the other hand, addressing, governing, or related to, any sales by him/her to the Debtor of any of your goods or products, or otherwise related, in any way, to him/her displaying, demonstrating, selling, providing, consigning, transferring title to, advancing credit for, replacing, or handling any of your goods or products to, with, or for, the Debtor.

As Mr. Rukavina explained to you on the phone, the Trustee has a reasonable factual basis to believe that St. Jude's products were delivered to the Debtor on consignment. As we understand it, whenever a patient needed one of St. Jude's implants, her physician would obtain the implant from a consigned inventory, which St. Jude delivered at an earlier date. The Debtor was then obligated to restock the inventory. This theory is based on information from the Debtor's employee in charge of purchasing, and we believe the contract St. Jude already produced supports it. If we are correct, then the nature of consignment calls into question the appropriate date to consider when determining if St. Jude provided subsequent or contemporaneous new value to the Debtor. Under certain circumstances, title to consigned goods passes upon delivery rather than upon sale. You seem to have disagreed, and you suggested that perhaps the parties varied the terms of the contract by their actions or otherwise.

Moreover, St. Jude has asserted ordinary-course defenses, which are highly factual. Thus, communications and documents related to these salespeople, and what their understanding or actions may have been, are highly relevant. The Trustee intends to depose these individuals as well, and he needs relevant, responsive documents prior to doing so. However, at this time the Trustee does not even know if these individuals are employees or agents of St. Jude, or contractors, or unrelated persons, as St. Jude has refused to provide any information regarding the same.

I understand that you disagree with our theory of the case, but the Trustee is entitled to discovery of documents and information that has any potential to prove or disprove his theory. And while requests for "all documents and communications" are sometimes overbroad, such requests are permissible when they are otherwise reasonably tailored. These eight requests seek documents, communications, contracts, and agreements between St. Jude and four discrete individuals related to St. Jude's business relationship with the Debtor. In order to address any undue-burden or proportionality objections, the Trustee will limit these requests to a period of two years, as he did with request no. 7 above.

Given the adversarial nature of discovery disputes in general and this one in particular, I believe the parties will be served best if we conduct any further negotiations regarding discovery in writing. To that end, please provide the requested, amended discovery responses no later than 5:00 p.m. Central time on May 23, 2018, along with copies of any additional, responsive documents. If St. Jude does not intend to comply with the Trustee's requests described herein, I would appreciate you letting me know in writing on or before the same date.

4826-5582-2950v.2

Samuel C. Wisotzkey
May 16, 2018
Page 7

I remind St. Jude that an evasive, incomplete, or misleading response is the same as no response at all. If we cannot reach prompt agreement regarding this matter, the Trustee will be forced to seek appropriate relief from the Court, which will include a request for his reasonable attorney's fees.

Best regards,

/s/  *Julian P. Vasek*

Julian P. Vasek, Esq.

EXHIBIT F
Page 7 of 7



www.kmksc.com



Washington Building
Barnabas Business Center
4650 N. Port Washington Road
Milwaukee, WI 53212-1059
Telephone (414) 962-5110
Facsimile (414) 962-8725
Email kmksc@kmksc.com

May 23, 2018

**VIA EMAIL AND FEDERAL EXPRESS (jvasek@munsch.com)**
Julian P. Vasek, Esq.
Munsch Hardt
500 N. Akard Street, Suite 3800
Dallas, TX 75201

RE: *Seidel v. St. Jude Medical, S.C., Inc. (In re Walnut Hill Physicians' Hospital, LLC)*
Adv. No. 18-3033

Dear Mr. Vasek:

This responds to your May 16, 2018, letter regarding alleged discovery deficiencies in St. Jude's Combined Preliminary Reponses to Trustee's First Set of Interrogatories and First Set of Requests for Production and Trustee's Second Set of Requests for Production (the "Responses").

As I understand it, you were present during the telephone call conducted on May 15, 2018, primarily between Mr. Rukavina, my colleague Melinda Bialzik and me (the "May 15 Call"). As I indicated to your colleague when we were arranging the call, and reiterated at the beginning of the call, St. Jude remains committed to attempting to address the issues in this case without imposing undue cost and expense on both parties. We were prepared on the May 15 Call to discuss reasonable ways to address the concerns you raised with the Responses. However, based upon your colleague's conduct during the call, especially his abrupt termination of the call when Ms. Bialzik and I questioned the basis of the newly disclosed "Theory of the Case," and based upon your follow up letter, your approach seems to be different. As Mr. Rukavina expressly stated when he was unilaterally terminating the May 15 Call, he was going to send us a letter to "set us up for a motion to compel." Your "set up" letter, including its insistence on further written communications to the exclusion of any effort to pick up the phone, seems designed to increase the cost of this matter, rather than provide a conduit to a good faith effort to continue a dialogue regarding the facts, legal theories, or legitimate issues in the case.

Nonetheless, we continue to be available to discuss via telephone ways to conciliate regarding these issues and move this case forward in a productive manner. We think the discovery responses we have provided, including more than 1200 pages of invoices, proofs of delivery and pricing contracts, more than reasonably establish St. Jude's subsequent new value defense and its entitlement to a § 503(b)(9) claim. But if there are limited additional documents that you think will aid the Trustee in his effort to verify the same, or witnesses we could make available via sworn declaration or testimony, we are prepared to discuss that approach. However, we continue to believe that the specific issues in the case are primarily the value of the goods delivered to the Debtor in the 20-day 503(b)(9) period, or in the 90 day preference period that establish St. Jude's new value defense, and both of these issues are only concerned with a very narrow 90 day time period prior to the petition date.

Still, we will respond in turn to the issues you raise in your letter



www.kmksc.com



KOHNER
MANN &
KAILAS, s.c.
ATTORNEYS AT LAW

Washington Building
Barnabas Business Center
4650 N. Port Washington Road
Milwaukee, WI 53212-1059
Telephone (414) 962-5110
Facsimile (414) 962-8725
Email kmksc@kmksc.com

Julian P. Vasek, Esq.
May 23, 2018
Page 2

**General Discovery Objections**

From your letter, you appear intent on conducting a wide ranging fishing expedition of discovery, seeking documents and communications going back for the course of two years, imposing additional costs on St. Jude and by extension on the estate by your insisting on our searching for and then producing that information without articulating a good faith basis for needing such a broad range of documents. But we do not think you can ignore our new value defense, especially when you have not supported your new theory of consignment with any legal authority or reference to specific documents related to the goods that St. Jude has asserted comprise its new value defense and 503(b)(9) claim. The proportionality requirements of discovery under the federal rules do not allow you to ignore these issues and allege you need discovery to address St. Jude's ordinary course of business defense, when St. Jude is plainly not primarily relying on the ordinary course of business defense, as you well know. Your focus on that defense, and scant mention of the complete new value defense we have asserted since prior to the commencement of the preference action, is telling.

Moreover, your blanket insistence on addressing the general objections in the Responses seems designed to impose additional cost on St. Jude to no practical end. To be clear, we have not specifically identified or withheld documents from your requests based solely on the general objections, but rather rely on the specific objections to each individual request. By producing the invoices and proofs of delivery, contracts, and other documents, we have functionally responded to the parts of the requests that we think are not objectionable. Further, we think there are reasonable ways you can narrow your requests to get the confirmation you need regarding the issues in this case, which are addressed in this letter. To the extent you need to deem our objections and responses revised accordingly, you can deem them revised by this letter.[1] We continue to resist your requests for other customer pricing information, and all contracts, documents and communications relating the sales reps on the grounds already stated in the Responses and the proportionality objections that we asserted. To the extent you find the general objections problematic with respect to other specific requests, we should discuss your specific concerns and we will seek to address them.

We will now turn to your complaints about specific objections.

---

[1] We do not withdraw any general objection related to work product, or attorney client information. As we assume that your requests are not aimed at such information, we further assume you have no issue with those general and standing objections.



www.kmksc.com



Washington Building
Barnabas Business Center
4650 N. Port Washington Road
Milwaukee, WI 53212-1059
Telephone (414) 962-5110
Facsimile (414) 962-8725
Email kmksc@kmksc.com

Julian P. Vasek, Esq.
May 23, 2018
Page 3

**The Newly Announced Theory of the Case**

During the May 15 Call, your colleague announced his theory of the case, which he acknowledged had not been shared with us before: that St. Jude had provided the Debtor Walnut Hill with goods on consignment, thereby calling into question the date of delivery of the goods supporting St. Jude's § 503(b)(9) claim and St. Jude's subsequent new value defense. However, your letter mis-states and mischaracterizes the evidence that your colleague claims led him to that conclusion.

You state that

> [T]he Trustee has a reasonable factual basis to believe that St. Jude's products were delivered to the Debtor on consignment. As we understand it, whenever a patient needed one of St. Jude's implants, her physician would obtain the implant from a consigned inventory, which St. Jude delivered at an earlier date. The Debtor was then obligated to restock the inventory. This theory is based on information from the Debtor's employee in charge of purchasing, and we believe the contract St. Jude already produced supports it.

This recitation is starkly different from the scenario your colleague described on our call, and has acknowledged in prior emails. In the May 15 Call specifically, rather than getting goods from a consigned inventory, Mr. Rukavina has admitted that the information he is getting from a former Debtor employee is, in fact, that certain of the goods at issue in this case would be provided by reps on site—a St. Jude sales representative would arrive during the day of the appointed surgery, and the goods were provided from the sales reps' "trunk stock." As I recall, your colleague identified the term "trunk stock" even before I confirmed that we, too, had been advised that this was the procedure. Had you asked an interrogatory directed to this procedure, we could have provided a response tailored to this issue.

Moreover, the indication that "trunk stock" was delivered on the day of the surgery by reps on site is the exact position that your colleague took in his email to my colleague Devon Daugherty on February 9, 2018. The invoices and packing slips for "Hand Carry" items we provided with our discovery responses for the new value and 503(b)(9) periods (which were previously delivered to your colleague on February 18, 2018) are consistent with this relationship, and include no indication that any delivered goods were "resupply" or consignment goods. The invoices for goods used in the medical procedures are plainly billing for the specific items used, not for a re-supply of other goods. Similarly, for the goods delivered by Federal Express, the invoices, on their face, confirm that Walnut Hill was being billed for the goods delivered at the time of delivery. This evidence supports St. Jude's subsequent new value defense.





KOHNER
MANN &
KAILAS, s.c.
ATTORNEYS AT LAW

Washington Building
Barnabas Business Center
4650 N. Port Washington Road
Milwaukee, WI 53212-1059
Telephone (414) 962-5110
Facsimile (414) 962-8725
Email kmksc@kmksc.com

www.kmksc.com

Julian P. Vasek, Esq.
May 23, 2018
Page 4

When we questioned on the May 15 Call how a delivery out of trunk stock could be considered consigned inventory, that is when your colleague abruptly terminated the dialogue. It was clear to us that the call ended to avoid discussing the fundamental weaknesses in the purported theory, and instead embark on the "set up letter" approach.

To be clear, we have no information and no facts to confirm that the parties ever established an on-site consignment inventory at Walnut Hill, as contemplated by standard commercial law, where goods are provided on a sale or return basis. *See* Tex Bus. & Comm. Code § 2.326. The "Hand Carry" invoices, and related packing slips that have been provided to you with our discovery responses (and for the new value and 503(b)(9) items, previously provided on February 18, 2018) confirm that the products supplied were immediately implanted in specific patients, and billed accordingly. There was no opportunity for the Debtor to return these goods, and no "consignment" inventory created. Moreover, although the CRM agreement we produced with the Responses references the possibility that St. Jude could provide consigned inventory (and generally outlines a classic "sale or return" arrangement), the agreement also provides that the parties must mutually agree on the amount of inventory to place on site. Our information confirms that no such consignment inventory was ever established, and the claim in your letter that a doctor would take an implant from a consigned inventory is the first time you have made that claim. Simply put, there is no way for us to produce documents relating to a consignment arrangement that was not implemented.

Moreover, your consignment theory is refuted by the documents we produced in February and again with the Responses. As our Responses make clear, our 503(b)(9) motion now is focused on eight (8) specific invoices, and only two of those were Hand Carry invoices:

| Delivery Date | Invoice No. | Amt. | Fedex/ Hand Carry |
|---|---|---|---|
| 5/22/2017 | 9006810805 | $52,176.50 | Fedex |
| 5/23/2017 | 9006810803 | $3,572.25 | Fedex |
| 5/23/2017 | 9006810804 | $27,712.30 | Fedex |
| 5/24/2017 | 9006819601 | $2,630.48 | Fedex |
| 5/24/2017 | 9006820084 | $3,572.25 | Fedex |
| 5/24/2017 | 9006820085 | $3,572.25 | Fedex |
| 5/24/2017 | 9006876193 | $5,814.44 | Hand Carry |
| 5/26/2017 | 9006848900 | $16,150.00 | Hand Carry |



www.kmksc.com



Washington Building
Barnabas Business Center
4650 N. Port Washington Road
Milwaukee, WI 53212-1059
Telephone (414) 962-5110
Facsimile (414) 962-8725
Email kmksc@kmksc.com

Julian P. Vasek, Esq.
May 23, 2018
Page 5

For the Hand Carry invoices, as noted, we have provided the packing slips that indicate the date of the procedures and the date the actual medical products were implanted in the patients, and those dates were in the 20-day period. Likewise, for the new value analysis we provided months ago, we did not rely on the invoice date for the Hand Carry invoices, and specifically only relied on the implant date. We have to believe that the Trustee has access to the Debtor's records to confirm that the applicable surgeries took place on those dates, and presumably, too, that the Debtor then proceeded to bill the patient, insurance carriers, or other third party payers for those products.

As for the products delivered by Federal Express, there is no indication of any consignment relationship for these goods either. If these deliveries were alleged replenishment of consignment inventory, intended to simply be held until used by the Debtor or returned, the products would not be billed. The invoices reflect the opposite—the goods were delivered and they were billed at that time.

Therefore, there is no reasonable basis to conclude that further discovery on this consignment theory is relevant to the goods actually delivered. Nonetheless, we remain willing to review and consider information or legal authorities you might provide so we can further evaluate this position. We are also willing to schedule a further call with you to discuss this issue.

**Sales Representative Requests**

Moving on to your requests for information about the sales representatives, we note the following: you failed to submit tailored interrogatories seeking information about the status of the sales representatives, and instead used blanket requests, unfocused on the alleged facts or propositions of law, seeking all manner of documents relating to four separate Sales Representative.

On the May 15 Call, we pointed out that the requests relating to the sales representatives would encompass all their customers, their entire territory, and a vast array of pointedly unhelpful and distracting documents and information wholly beyond any scope or theory related to your consignment theory. In fact, when we pointed this out to your colleague, he acknowledged that he was not seeking that information, but he did focus on the part of the request seeking invoices to the sale representatives, apparently trying to confirm whether the sales reps were billed for the product provided to the Debtor. We note that your letter fails to even address this targeted and narrow issue. As narrowed, we have confirmed that there were no invoices issued to sales reps, so there are no invoices to reps to produce. If you need us to provide a certification to that issue, we can certainly do so.

We can also confirm that the Sales Representatives were employees of St. Jude, and not independent contractors, and they certainly were not required to purchase personally the tens of thousands of dollars' worth of medical devices and medical products that they would carry. Likewise, the sales reps

**EXHIBIT G
Page 5 of 8**



www.kmksc.com



KOHNER
MANN&
KAILAS, s.c.
ATTORNEYS AT LAW

Washington Building
Barnabas Business Center
4650 N. Port Washington Road
Milwaukee, WI 53212-1059
Telephone (414) 962-5110
Facsimile (414) 962-8725
Email kmksc@kmksc.com

Julian P. Vasek, Esq.
May 23, 2018
Page 6

are not liable to St. Jude for the $2 million in invoices for which the Debtor failed to pay. In light of
these specific issues, your offered "concession" to limit your sales representative requests to two years
of documents is not reasonable on its face.

Again, however, we remain willing to review and consider information or legal authorities you might
provide so we can further evaluate this position. We are also willing to schedule a further call with
you to discuss this issue.

**Other Customer Pricing Information**

As to your request for Documents and Communications on different pricing to other customers within
the meaning of Interrogatory 11, your letter again attempts to re-write history, now asserting that this
request is geared towards St. Jude's ordinary course of business defense. This discovery request,
however, was submitted before the complaint was even filed.

Nonetheless, even assuming that this is the revised basis of your request, we are aware of no authority
in an ordinary course of business scenario where pricing to other customers is remotely relevant. You
have not cited any authority for this position. If you can cite some definitive authority for your
contention, we will re—review this issue with our client. But I can tell you that in the decades of cases
where I have defended preference cases with an ordinary course of business defense, pricing to other
customers has never been an issue.

Moreover, these requests remain objectionable on a proportionality basis, because the focus of the
preference case is subsequent new value, as we have explained. We also continue to maintain the
specific confidential, proprietary information, and other objections set forth in the Responses.

To the extent that you claim that pricing to other customers relates to value, new value, or 503(b)(9),
we also reject that contention.

We realize that you cited to *In re Semcrude, L.P.*, 416 B.R. 399 (Bankr. D. Del. 2009) in your
opposition to our 503(b)(9) motion as allegedly creating a basis for looking beyond the invoice pricing
between the parties. We note that you do not cite to *Semcrude* in your letter, likely because you realize
that that case does not authorize the fishing expedition you are trying to conduct. No subsequent case
has cited *Semcrude* in concluding other customer pricing was relevant, or relied on that decision to
overcome the presumption that the value of the goods on the invoice is the best measure of the value.
We are aware of no decision, let alone a decision involving products provided to a hospital for medical
procedures, specifically determining value in a new value context or for 503(b)(9) purposes where
pricing to other customers was considered. If you can cite such a case to us, we will review and



www.kmksc.com



Washington Building
Barnabas Business Center
4650 N. Port Washington Road
Milwaukee, WI 53212-1059
Telephone (414) 962-5110
Facsimile (414) 962-8725
Email kmksc@kmksc.com

Julian P. Vasek, Esq.
May 23, 2018
Page 7

respond. In addition, we have provided you with the pricing letters and contracts that further confirmed the pricing that was being charged, and you have not indicated that any of the invoicing is inconsistent from the pricing agreed to between the parties.

Based on the lack of authorities, and your after-the-fact and unsupported assertion trying to tie other customer information to the ordinary course defense, we continue to believe these requests are not legitimate subjects of discovery in a case of this type given the overall needs of the case. As with your other assertions, however, if you provide legal authority for that position, we will consider that with our client.

**Conclusion and Request for Further Conciliation**

We are willing to make another attempt to engage in a productive dialogue to try to resolve these issues. In addition to the revisions noted above, we have located additional documents and invoices relating to the new value defense, as well as some information about the duplicate order, and we are producing those additional documents with the Fedex copy of this letter. We have also asked our client to look for communications related to the other specific new value and 503(b)(9) invoices we have already produced. We continue to think focusing on the specifics of the issues will be helpful to bring focus to the case.

On the other hand, your aggressive positions taken so far are not helpful and do not advance the case. We will not shy away from defending our client from "Rambo-type" litigation and discovery tactics. Proceed with the motion to compel you seem intent to set us up for if you must—we will defend our position and request reasonable attorneys' fees in return.

However, if we can focus on the core issues in this case, so the Trustee can confirm that no goods were provided on consignment and the new value defense applies, we think we can move this case to a productive resolution, quickly. We stand ready and willing to do so.

Very truly yours,

KOHNER, MANN & KAILAS, S.C.

Samuel C. Wisotzkey

SCW:pal
Enc. (with Fedex)



www.kmksc.com



**KOHNER MANN & KAILAS, s.c.**
ATTORNEYS AT LAW

Washington Building
Barnabas Business Center
4650 N. Port Washington Road
Milwaukee, WI 53212-1059
Telephone (414) 962-5110
Facsimile (414) 962-8725
Email kmksc@kmksc.com

Julian P. Vasek, Esq.
May 23, 2018
Page 8

Cc:  Melinda Bialzik, Esq. (via email; w/o Enc.)
     John Johnson, Esq.(via email; w/o Enc.)
     Davor Rukavina, Esq. (via email; w/o Enc.)



**MUNSCH HARDT**
DALLAS / HOUSTON / AUSTIN

Ross Tower
500 N. Akard Street. Suite 3800
Dallas, Texas 75201-6659
Main 214.855.7500
Fax 214.855.7584
munsch.com

Direct Dial 214 855 7528
jvasek@munsch.com

May 23, 2018

*Via Electronic Mail*
Samuel C. Wisotzkey
Kohner, Mann & Kailas, S.C.
4650 N. Port Washington Rd.
Washington Bldg., 2nd Floor
Milwaukee, WI 53212-1059
swisotzkey@kmksc.com

Re:  *Seidel v. St. Jude Medical S.C., Inc. (In re Walnut Hill Physicians' Hospital, LLC)*, Adv.
No. 18-3033, pending in the U.S. Bankruptcy Court for the Northern District of Texas

Dear Mr. Wisotzkey:

I am responding to your letter of today's date.

We categorically reject your false allegations about what Mr. Rukavina said during your telephone conversation, as well as your allegation that my May 16 letter was the first you heard about the Trustee's theory of the case. The fact that neither party is sure of what exactly happened or what the arrangements between the Debtor and St. Jude actually were is precisely why discovery is needed.

Furthermore, your confusing double-speak about St. Jude's general objections is insufficient. The Trustee is entitled to clean and clear, formal discovery responses. Unless you amend St. Jude's responses to remove the impermissible general objections by noon tomorrow, which should take only minutes of your time, the Trustee will have no choice but to file a motion to compel. Only once those general objections are stricken can we have a meaningful discussion about St. Jude's specific objections, as we have informed you now on multiple occasions.

Finally, your letter implies that St. Jude does not intend to rely on the ordinary-course-of-business defense. If so, please consider this letter the Trustee's written consent under rule 15(a)(2) for the limited purpose of amending St. Jude's answer to strike paragraph 19. The Trustee does not consent to any other amendments at this time. We ask that you also do this by noon tomorrow in order to facilitate additional efforts to resolve this discovery dispute without court intervention.

Best regards,

/s/  *Julian P. Vasek*

Julian P. Vasek, Esq.

4850-6620-1702v.1

**EXHIBIT H**
**Page 1 of 1**

 **ST. JUDE MEDICAL**

St. Jude Medical
USD Division
6300 Bee Cave Road
Building 2, Suite 100
Austin, TX 78746-5221 USA

February 13, 2015

Jon Aldama
Walnut Hill Medical Center
7502 Greenville Ave
Dallas, Texas 75231

Ref: FlexAbility Catheter Pricing

Dear Jon Aldama,

This letter is to confirm our mutual agreement that pricing shall be as set forth in Exhibit I, attached hereto and effective upon full execution. Pricing shall remain effective until 12/31/2015; any changes or additions to this pricing must be in writing. This letter contains the entire understanding of the parties and supersedes all prior written or verbal agreements between Walnut Hill Medical Center and St. Jude Medical with respect to the pricing for the products specified in this letter.

All orders are subject to, but not limited to, the terms and conditions noted below:
- Payment terms of Net 30 days from date of invoice.
- St. Jude Medical's Return Policy and Terms and Conditions. For details, please contact Customer Service.
- Standard shipping terms of F.O.B. Origin. Freight prepaid and added to invoice.
- Any correspondence with St. Jude Medical should be directed to:
    St. Jude Medical S.C., Inc
    Attn: USD Contracts
    6300 Bee Cave Rd, Bldg Two, Ste
    100 Austin, TX 78746-5833

The details of this pricing and terms acknowledgement letter shall be deemed accepted by Walnut Hill Medical Center upon receipt of a purchase order for any of the products in Exhibit I hereto on or after the effective date set forth above.

St. Jude Medical thanks you for your continued support and business. Should you have any questions, please do not hesitate to contact your local sales representative.

St. Jude Medical S.C., Inc.

By: _____
          Signature

Printed Name: _____

Title: _____

Business Phone # of Signatory: _512 __2_76 - 707_

Date: __9/11/15__

Account

By: _____
          Signature

Printed Name: _Cory Courtney Man_

Titled: _CEO_

Business Phone # of Signatory: _8 (912)843-6201_

Date: __9/9/15__

CONFIDENTIAL

## EXHIBIT I

### PRODUCT DESCRIPTION AND PRICING

| Model Number | Description | Price |
|---|---|---|
| A701124 | FlexAbility Bi-Directional Irrigated Ablation Catheter, DD Curve | $ 1,650.00 |
| A701125 | FlexAbility Bi-Directional Irrigated Ablation Catheter, DF Curve | $ 1,650.00 |
| A701127 | FlexAbility Bi-Directional Irrigated Ablation Catheter, FF Curve | $ 1,650.00 |
| A701128 | FlexAbility Bi-Directional Irrigated Ablation Catheter, FJ Curve | $ 1,650.00 |
| A701129 | FlexAbility Bi-Directional Irrigated Ablation Catheter, JJ Curve | $ 1,650.00 |
| A701157 | FlexAbility Uni-Directional Irrigated Ablation Catheter, D Curve | $ 1,495.00 |
| A701158 | FlexAbility Uni-Directional Irrigated Ablation Catheter, F Curve | $ 1,495.00 |
| A701159 | FlexAbility Uni-Directional Irrigated Ablation Catheter, J Curve | $ 1,495.00 |
| 85641 | Therapy Ablation Cable for IBI-1500T9 (1641 CABLE) | $ 140.00 |
| 85785 | Cool Point Tubing Set | $ 100.00 |

 ST. JUDE MEDICAL

### Cardiac Rhythm Management Products Purchase Agreement

This Agreement is entered into and by and between St. Jude Medical S.C., Inc. ("USD"), a Minnesota corporation with its principal place of business in Austin, Texas and Walnut Hill Physicians Hospital, LLC, Dallas, TX, 1000188210. ("Account"). The foregoing will be collectively referenced herein as "the Parties". This Agreement will be effective upon full execution by authorized signatories of the Parties.

#### TERMS AND CONDITIONS

This offer is valid through October 15, 2015

**Exhibit I contains product descriptions and pricing and is attached here to and incorporated herein by reference.**

**Exhibit II contains special terms and/or rebates and is attached hereto and incorporated herein by reference.**

#### TERM OF PURCHASE AGREEMENT
The term of this agreement is effective from date of full execution of this Agreement by both parties and will remain in effect for a period of two (2) years.

#### PAYMENT TERMS
Net 30 days from Account's receipt of invoice.
USD accepts payment via wire transfers, Automated Clearing House ("ACH") and checks.

#### SHIPPING
Shipping terms are F.O.B. Origin, Freight prepaid.
Emergency delivery within twenty-four (24) hours
Normal delivery within forty-eight (48) hours

#### CUSTOMER SERVICE
Phone: 800-681-9293
Mail: One Lillehei Plaza
St. Paul, MN 55117
Email: sycustomerservice@sjm.com
Fax: 800-918-8111

Customer Service Hours of Operation: 7:30 AM to 5:30 PM U.S. Central Time Monday through Friday, except holidays.

To contact your **local sales representative** or for urgent issues outside of Customer Service business hours, call 800-PACE-ICD (800-722-3423).

#### RETURNED MERCHANDISE POLICY
All returns require a Return Material Authorization number assigned by USD's Customer Service Department. USD will accept returns for full credit or replacement at its sole discretion provided that the product(s) are: returned within 30 days of Account's receipt of invoice, unopened and in saleable condition except in the case where product was received by Account in damaged condition.

Returns will only be accepted for items processed in error by USD, received by Account in damaged or non-conforming condition, or if specifically agreed to by USD. Products deemed to be defective or malfunctioning will be handled according to the warranty specific to such products.

#### MINIMUM ORDER QUANTITY
The minimum order quantity is one box of any product ordered.

SJM-001227
EXHIBIT I
Page 3 of 18

 ST. JUDE MEDICAL

**COMPLIANCE WITH LAWS**

(a)    Bother parties shall, in connection with this Agreement, comply with all applicable federal and state laws, regulations, and other authorities, specifically including but not limited to the federal health care program anti-kickback law, 42 U.S.C. § 1320a-7b(b) ("Anti-Kickback Law").

(b)    Both parties hereby acknowledges their legal obligations to fully and accurately report the discounts and/or rebates it receives under all applicable federal and state laws, regulations, and other authorities, specifically including but not limited to the Anti-Kickback Law. As part of the cost reporting process or otherwise, Account may be obligated to report and provide information concerning any discounts, rebates, or other price reductions provided under this Agreement pursuant to 42 U.S.C. section 1320a-7b(b)(3)(A) (the discount exception to the Anti-Kickback Law) and/or 42 C.F.R. § 1001.952(h)(the discount safe harbor to the Anti-Kickback Law), other federal or state laws, or agreement with third party payers. Account should retain this Agreement and any other documentation of discounts, rebates, or other price reductions and make such information available to federal or state health care programs upon request.

(c)    USD and Account agree and acknowledge that there may be circumstances in which USD will offer Account, and/or health care professionals affiliated with Account, technical training on its products. This may involve USD's reimbursement for reasonable out-of-pocket expenses, including costs associated with meals, travel and lodging.

**WARRANTY**

As specified on the Limited Warranty enclosed with product packaging.

**NEW PRODUCTS**

New products introduced by USD after the effective date of this proposal will be added to the Agreement at a negotiated price.

**CONSIGNMENT**

For the term of the Agreement, USD agrees to provide Cardiac Rhythm Management (CRM) products to Account on consignment.

The quantity of products to be consigned will be mutually agreed upon by Account and USD; however, the quantity of products consigned cannot exceed more than two (2) months usage of products listed in Exhibit I.

Until products consigned to Account are implanted or used by Account, the products shall remain the sole and exclusive property of USD. USD will place the USD products at Account at no charge to Account solely for Account's use.

Account shall notify USD Customer Service Department within one business day from the date that product from consigned inventory is used by Account. Account shall provide USD Customer Service Department with a purchase order that includes the model and serial number of the product(s) used, if applicable. Thereafter, USD shall invoice Account for used products, and Account shall pay USD in accordance with the pricing and other terms then in effect between USD and Account. In addition, USD shall replenish the product with a replacement product of the same model number.

Account shall provide adequate care and storage of products as described in the "Instructions for Use" (IFU) and/or product package label. Account shall bear any risk of loss or damage of consigned product to the extent suffered as a direct result of Account's (or Account's agents, employees or designees) negligence, fires, floods, contamination or pilferage.

Account shall assure proper inventory management/rotation of product including storage and use of product with shortest expiration first. Expiration dates are visible on the outside of product packaging and listed by day, month, and year.

USD shall periodically monitor product inventory to ensure appropriate product rotation, and USD will report the inventory status to Account.

If the Product expiration date is reached while the Product is still in consigned inventory, Account shall return all unused, expired products to a location designated by USD. Upon termination or cancellation (as provided herein) of this Agreement, Account shall either: (i) purchase the products, or (ii) return the products to USD (provided that such products comply with the St. Jude Medical Return Goods Policy).

 **St. Jude Medical**

## CANCELLATION
Either party may cancel this Agreement upon one hundred eighty (180) days written notice to the non-terminating party.

## INDEMNIFICATION
(a)     USD and Account shall indemnify, hold harmless and defend each other, all of each other's parent and affiliated entities ("Entities"), and each other's' and their respective Entities' employees, trustees, directors, officers, agents, assigns, patients, insurers and users of the purchased products from and against all actions, suits, liability, claims, fines, damages, losses and expenses (including reasonable attorney's fees through trial and upon appeal) related to or arising out of: a) the injury of any person or the injury or destruction of any property arising out of and caused by the grossly negligent acts or omissions of such party, any of its employees, subcontractors or authorized agents (collectively "Staff"); b) the material breach by such party of the terms and conditions of this Agreement; c) violation of any law by such party or its Staff; and d) as to USD's indemnification obligations only, the infringement of any patent by reason of the sale or use of any Products purchased or furnished hereunder.

(b)     The indemnified party shall give the indemnifying party prompt notice of any claim that could give rise to a claim for indemnity under this Agreement and the indemnified party shall cooperate with the indemnifying party in the defense of any claim for which indemnity is provided. The indemnifying party shall be permitted to defend the claim and make all decisions thereto, including but not limited to hiring counsel of its choosing. The indemnifying party shall also have the sole right to settle any indemnified legal claim provided that it obtains a complete release for the indemnified party. This Section shall survive the termination or expiration of this Agreement for any reason.

## CONFIDENTIALITY
The pricing, terms and conditions offered herein are confidential and proprietary and neither party shall disclose such pricing, terms or conditions to any third party, unless required to do so by law. The confidentiality requirement includes the prohibition of disclosure, whether blinded as to its source or otherwise, to any group purchasing organization, consultant, online comparative source, subcontractor or temporary employee which may, from time to time, be retained by Account for the purpose of rendering a service. This confidentiality requirement is not only specific to the proposal herein but also to any resultant agreement to purchase. With any breach of this confidentiality requirement, the non-breaching party may rescind or terminate the proposal immediately and may seek any and all remedies available to it as a result of this breach including injunctive relief and damages.

## ASSIGNMENT
Account shall not assign or pledge this Agreement, in whole or in part, nor shall Account sublet or lend any product referenced hereunder without prior written consent of USD. Any such attempt by Account to sublet or lend any equipment, or assign or pledge this Agreement, shall be null and void and of no effect against USD.

## NOTICES
All notices required or permitted under this Agreement shall be sufficient if sent via U.S. mail or express courier delivery to such party at the address set forth in this Agreement, or at such other address as such party may designate to the other party in writing from time to time. Any notice mailed via U.S. mail shall be effective three days after it has been duly addressed and postmarked via the U.S. postal service.

| Any notice provided to Account shall be directed to: | Any notice provided to USD shall be directed to: |
|---|---|
| Walnut Hill Physicians Hospital, LLC | St. Jude Medical S.C., Inc. |
| Attn: Director of Purchasing | Attn: USD Contracts |
| 7502 Greenville Avenue | 6300 Bee Cave Rd. |
| Dallas, TX 75231 | Building 2, Suite 100 |
| | Austin, TX 78746 |
| With a copy to: | |
| | |
| Brennan, Manna & Diamond, LLC | |
| 75 East Market Street | |
| Akron, Ohio 44308 | |
| Attn: Frank T. Sossi, Esq. | |

## NON-WAIVER

SJM-001229
EXHIBIT I
Page 5 of 18

 ST. JUDE MEDICAL

**EXHIBIT I**

**CRM PRODUCTS DESCRIPTION AND PRICING**

| Model | Description | UOM | Access Price |
|---|---|---|---|
| *Brady Pacing Products* | | | |
| *Dual Chamber DDDR Pacemakers* | | | |
| PM2240 | Assurity Pacemaker DR - RF | EA | 4,061.25 |
| PM2160 | Endurity Pacemaker DR | EA | 3,200.00 |
| PM2210 | Accent DR RF | EA | 3,325.00 |
| PM2110 | Accent DR | EA | 2,755.00 |
| 5826 | Zephyr XL DR | EA | 2,660.00 |
| 5820 | Zephyr DR | EA | 2,660.00 |
| *Single Chamber SSIR Pacemakers* | | | |
| PM1240 | Assurity Pacemaker SR - RF | EA | 3,158.75 |
| PM1160 | Endurity Pacemaker SR | EA | 2,872.00 |
| PM1210 | Accent SR RF | EA | 2,617.25 |
| PM1110 | Accent SR | EA | 2,617.25 |
| 5620 | Zephyr SR | EA | 2,256.25 |
| 5626 | Zephyr SR XL | EA | 2,256.25 |
| 2525T | Microny II SR+ | EA | 2,256.25 |
| *Media Connectivity Package with Pacemakers* | | | |
| PM2240 CELL | Assurity DR RF, MerlinPkg | EA | 4,061.25 |
| PM2160 CELL | Endurity DR, MerlinPkg | EA | 3,200.00 |
| PM2210 CELL | Accent DR RF, MerlinPkg | EA | 3,325.00 |
| PM2110 CELL | Accent DR, MerlinPkg | EA | 2,755.00 |
| PM1240 CELL | Assurity SR RF, MerlinPkg | EA | 3,158.75 |
| PM1160 CELL | Endurity SR, MerlinPkg | EA | 2,617.25 |
| PM1210 CELL | Accent SR RF, MerlinPkg | EA | 2,617.25 |
| PM1110 CELL | Accent SR, MerlinPkg | EA | 2,617.25 |
| *Dual Chamber DDDR Pacemaker Systems* | | | |
| PM2240 SYSTEM | Assurity Pacemaker DR - RF System | EA | 4,916.25 |
| PM2160 SYSTEM | Endurity Pacemaker DR System | EA | 4,055.00 |
| PM2210 SYSTEM | Accent DR RF System | EA | 4,180.00 |
| PM2110 SYSTEM | Accent DR System | EA | 3,610.00 |
| 5826 SYSTEM | Zephyr XL DR System | EA | 3,515.00 |
| 5820 SYSTEM | Zephyr DR System | EA | 3,515.00 |
| 5357/MS SYSTEM | Verity DR M/S System | EA | 855.00 |
| *Single Chamber SSIR Pacemaker Systems* | | | |
| PM1240 SYSTEM | Assurity Pacemaker SR - RF System | EA | 3,586.25 |
| PM1160 SYSTEM | Endurity Pacemaker SR System | EA | 3,299.50 |
| PM1210 SYSTEM | Accent SR RF System | EA | 3,044.75 |
| PM1110 SYSTEM | Accent SR System | EA | 3,044.75 |
| 5620 SYSTEM | Zephyr SR System | EA | 2,683.75 |
| 5626 SYSTEM | Zephyr SR XL System | EA | 2,683.75 |
| 2525 SYSTEM | Microny II SR+ System | EA | 2,683.75 |

SJM-001230
EXHIBIT I
Page 6 of 18

# ░░░ ST. JUDE MEDICAL

| | Merlin Connectivity Package with Pacesetters Systems | | |
|---|---|---|---|
| PM2240 SYSCELL | Assurity DR RF Sys, MerlinPkg | EA | 4,916.25 |
| PM2160 SYSCELL | Endurity DR Sys, MerlinPkg | EA | 4,055.00 |
| PM2210 SYSCELL | Accent DR RF Sys, MerlinPkg | EA | 4,180.00 |
| PM2110 SYSCELL | Accent DR Sys, MerlinPkg | EA | 3,610.00 |
| PM1240 SYSCELL | Assurity SR RF Sys, MerlinPkg | EA | 3,586.25 |
| PM1160 SYSCELL | Endurity SR Sys, MerlinPkg | EA | 3,299.50 |
| PM1210 SYSCELL | Accent SR RF Sys, MerlinPkg | EA | 3,044.75 |
| PM1110 SYSCELL | Accent SR Sys, MerlinPkg | EA | 3,044.75 |
| | Biventricular Pacemaker | | |
| PM3242 | Allure Quadra CRT-P RF | EA | 7,000.00 |
| PM3222 | Allure CRT-P RF | EA | 5,866.25 |
| PM3210 | Anthem CRT-P RF | EA | 5,866.25 |
| | Merlin Connectivity Package with Biventricular Pacemaker | | |
| PM3242 CELL | Allure Quadra CRT-P, MerlinPkg | EA | 7,000.00 |
| PM3222 CELL | Allure CRT-P, MerlinPkg | EA | 5,866.25 |
| PM3210 CELL | Anthem CRT-P, MerlinPkg | EA | 5,866.25 |
| | Biventricular Pacemaker System | | |
| PM3242 SYSTEM | Allure Quadra CRT-P RF System | EA | 9,788.25 |
| PM3222 SYSTEM | Allure CRT-P RF System | EA | 8,393.25 |
| PM3210 SYSTEM | Anthem CRT-P RF System | EA | 8,393.25 |
| | Merlin Connectivity Package with Biventricular Pacemaker System | | |
| PM3242 SYSCELL | Allure Quadra CRT-P Sys, MerlinPkg | EA | 9,788.25 |
| PM3222 SYSCELL | Allure CRT-P Sys, MerlinPkg | EA | 8,393.25 |
| PM3210 SYSCELL | Anthem CRT-P Sys, MerlinPkg | EA | 8,393.25 |
| | Implantable Cardiac Monitors | | |
| DM2100 | Confirm IC Monitor | EA | 2,797.50 |
| DM2102 | Confirm AF IC Monitor | EA | 3,158.75 |
| | Pacemaker Leads | | |
| 2088TC/46 | | EA | 427.50 |
| 2088TC/52 | | EA | 427.50 |
| 2088TC/58 | Tendril STS | EA | 427.50 |
| 2088TC/65 | | EA | 427.50 |
| 2088TC/100 | | EA | 427.50 |
| 1999/40 | | EA | 427.50 |
| 1999/46 | OptiSense Optim | EA | 427.50 |
| 1999/52 | | EA | 427.50 |
| 1699T/40 | | EA | 427.50 |
| 1699T/58 | OptiSense | EA | 427.50 |
| 1699TC/46 | | EA | 427.50 |
| 1699TC/52 | | EA | 427.50 |
| 1882TC/46 | | EA | 427.50 |
| 1882TC/52 | | EA | 427.50 |
| 1888TC/46 | | EA | 427.50 |
| 1888TC/52 | Tendril ST Optim | EA | 427.50 |
| 1888TC/58 | | EA | 427.50 |
| 1888TC/65 | | EA | 427.50 |
| 1782TC/40 | Tendril ST | EA | 427.50 |
| 1782TC/46 | | EA | 427.50 |

CONFIDENTIAL

XX/XX 9/24/2015

SJM-001231
EXHIBIT I
Page 7 of 18

**ST. JUDE MEDICAL**

| | | | |
|---|---|---|---|
| 1782TC/52 | Tendril ST | EA | 427.50 |
| 1788T/65 | | EA | 427.50 |
| 1944/46 | | EA | 427.50 |
| 1944/52 | | EA | 427.50 |
| 1946/46 | Isoflex Optim | EA | 427.50 |
| 1946/52 | | EA | 427.50 |
| 1946/58 | | EA | 427.50 |
| 1645K/34 | | EA | 427.50 |
| 1645K/40 | | EA | 427.50 |
| 1645K/46 | | EA | 427.50 |
| 1645K/52 | | EA | 427.50 |
| 1645K/58 | | EA | 427.50 |
| 1645R/85 | AV Isoflex S | EA | 427.50 |
| 1646T/34 | | EA | 427.50 |
| 1646T/40 | | EA | 427.50 |
| 1646T/46 | | EA | 427.50 |
| 1646T/52 | | EA | 427.50 |
| 1646T/58 | | EA | 427.50 |
| 1688TC/25 | | EA | 427.50 |
| 1688TC/34 | | EA | 427.50 |
| 1688TC/40 | Tendril SDX | EA | 427.50 |
| 1688TC/46 | | EA | 427.50 |
| 1688TC/52 | | EA | 427.50 |
| 1688TC/58 | | EA | 427.50 |
| 1368/52 | | EA | 427.50 |
| 1368/58 | AV Plus | EA | 427.50 |
| 1368/65 | | EA | 427.50 |
| 511211 | MyoPore Epicardial Lead 35 cm | EA | 494.00 |
| 511212 | MyoPore Epicardial Lead 54 cm | EA | 494.00 |

**Tachy Products**

| | | | |
|---|---|---|---|
| **Dual Chamber ICDs** | | | |
| CD2357-40C | Fortify Assura Next Generation DR 40 | EA | 13,086.25 |
| CD2357-40Q | Fortify Assura Next Generation DR 40 DF4 Connector | EA | 13,086.25 |
| CD2411-36C | Ellipse Next Generation DR 36 | EA | 13,086.25 |
| CD2411-36Q | Ellipse Next Generation DR 36 DF4 Connector | EA | 13,086.25 |
| CD2257-40 | Fortify Assura DR 40 | EA | 13,086.25 |
| CD2257-40Q | Fortify Assura DR 40 DF4 Connector | EA | 13,086.25 |
| CD2311-36 | Ellipse DR 36 | EA | 13,086.25 |
| CD2311-36Q | Ellipse DR 36 DF4 Connector | EA | 13,086.25 |
| CD2231-40 | Fortify ICD - DR 40 | EA | 13,086.25 |
| CD2231-40Q | Fortify ICD - DR 40 DF4 Connector | EA | 13,086.25 |
| **Single Chamber ICDs** | | | |
| CD1357-40C | Fortify Assura Next Generation VR 40 | EA | 12,093.50 |
| CD1357-40Q | Fortify Assura Next Generation VR 40 DF4 Connector | EA | 12,093.50 |
| CD1411-36C | Ellipse Next Generation VR 36 | EA | 12,093.50 |
| CD1411-36Q | Ellipse Next Generation VR 36 DF4 Connector | EA | 12,093.50 |
| CD1257-40 | Fortify Assura VR 40 | EA | 12,093.50 |
| CD1257-40Q | Fortify Assura VR 40 DF4 Connector | EA | 12,093.50 |

CONFIDENTIAL

XX/XX 9/24/2015

SJM-001232
EXHIBIT I
Page 8 of 18

### ST. JUDE MEDICAL

| | | | |
|---|---|---|---|
| CD1311-36 | Ellipse VR 36 | EA | 12,093.50 |
| CD1311-36Q | Ellipse VR 36 DF4 Connector | EA | 12,093.50 |
| CD1231-40 | Fortify ICD - VR 40 | EA | 12,093.50 |
| CD1231-40Q | Fortify ICD - VR 40 DF4 Connector | EA | 12,093.50 |
| | *Merlin Connectivity Package with ICD* | | |
| CD2357-40C CELL | Fortify Assura Next Generation DR-ICD, MerlinPkg | EA | 13,086.25 |
| CD2357-40Q CELL | Fortify Assura Next Generation DR-ICD DF4, MerlinPkg | EA | 13,086.25 |
| CD2411-36C CELL | Ellipse Next Generation DR-ICD, Merlin Pkg | EA | 13,086.25 |
| CD2411-36Q CELL | Ellipse Next Generation DR-ICD DF4, Merlin Pkg | EA | 13,086.25 |
| CD2257-40 CELL | Fortify Assura DR-ICD, MerlinPkg | EA | 13,086.25 |
| CD2257-40Q CELL | Fortify Assura DR-ICD DF4, MerlinPkg | EA | 13,086.25 |
| CD2311-36 CELL | Ellipse DR-ICD, Merlin Pkg | EA | 13,086.25 |
| CD2311-36Q CELL | Ellipse DR-ICD DF4, Merlin Pkg | EA | 13,086.25 |
| CD2231-40 CELL | Fortify DR-ICD, MerlinPkg | EA | 13,086.25 |
| CD2231-40Q CELL | Fortify DR-ICD DF4, MerlinPkg | EA | 13,086.25 |
| CD1357-40C CELL | Fortify Assura Next Generation VR-ICD, MerlinPkg | EA | 12,093.50 |
| CD1357-40Q CELL | Fortify Assura Next Generation VR-ICD DF4, MerlinPkg | EA | 12,093.50 |
| CD1411-36C CELL | Ellipse Next Generation VR-ICD, Merlin Pkg | EA | 12,093.50 |
| CD1411-36Q CELL | Ellipse Next Generation VR-ICD DF4, Merlin Pkg | EA | 12,093.50 |
| CD1257-40 CELL | Fortify Assura VR-ICD, MerlinPkg | EA | 12,093.50 |
| CD1257-40Q CELL | Fortify Assura VR-ICD DF4, MerlinPkg | EA | 12,093.50 |
| CD1311-36 CELL | Ellipse VR-ICD, Merlin Pkg | EA | 12,093.50 |
| CD1311-36Q CELL | Ellipse VR-ICD DF4, Merlin Pkg | EA | 12,093.50 |
| CD1231-40 CELL | Fortify VR-ICD, MerlinPkg | EA | 12,093.50 |
| CD1231-40Q CELL | Fortify VR-ICD DF4, MerlinPkg | EA | 12,093.50 |
| | *Dual Chamber ICD Systems* | | |
| CD2357-40C SYSTEM | Fortify Assura Next Generation DR 40 System | EA | 16,553.75 |
| CD2357-40Q SYSTEM | Fortify Assura Next Generation DR 40 DF4 Connector System | EA | 16,553.75 |
| CD2411-36C SYSTEM | Ellipse Next Generation DR 36 System | EA | 16,553.75 |
| CD2411-36Q SYSTEM | Ellipse Next Generation DR 36 DF4 Connector System | EA | 16,553.75 |
| CD2257-40 SYSTEM | Fortify Assura DR 40 System | EA | 16,553.75 |
| CD2257-40Q SYSTEM | Fortify Assura DR 40 DF4 Connector System | EA | 16,553.75 |
| CD2311-36 SYSTEM | Ellipse DR 36 System | EA | 16,553.75 |
| CD2311-36Q SYSTEM | Ellipse DR 36 DF4 Connector System | EA | 16,553.75 |
| CD2231-40 SYSTEM | Fortify ICD - DR 40 System | EA | 16,553.75 |
| CD2231-40Q SYSTEM | Fortify ICD - DR 40 System DF4 Connector | EA | 16,553.75 |
| | *Single Chamber ICD Systems* | | |
| CD1357-40C SYSTEM | Fortify Assura Next Generation VR 40 System | EA | 15,133.50 |
| CD1357-40Q SYSTEM | Fortify Assura Next Generation VR 40 DF4 Connector System | EA | 15,133.50 |
| CD1411-36C SYSTEM | Ellipse Next Generation VR 36 System | EA | 15,133.50 |
| CD1411-36Q SYSTEM | Ellipse Next Generation VR 36 DF4 Connector System | EA | 15,133.50 |
| CD1257-40 SYSTEM | Fortify Assura VR 40 System | EA | 15,133.50 |
| CD1257-40Q SYSTEM | Fortify Assura VR 40 DF4 Connector System | EA | 15,133.50 |
| CD1311-36 SYSTEM | Ellipse VR 36 System | EA | 15,133.50 |
| CD1311-36Q SYSTEM | Ellipse VR 36 DF4 Connector System | EA | 15,133.50 |
| CD1231-40 SYSTEM | Fortify ICD - VR 40 System | EA | 15,133.50 |
| CD1231-40Q SYSTEM | Fortify ICD - VR 40 System DF4 Connector | EA | 15,133.50 |
| | *Merlin Connectivity Package with ICD Systems* | | |
| CD2357-40C SYSCELL | Fortify Assura Next Generation DR-ICD Sys, MerlinPkg | EA | 16,553.75 |

CONFIDENTIAL

XX/XX 9/24/2015

SJM-001233
EXHIBIT I
Page 9 of 18

### ST. JUDE MEDICAL

| | | | |
|---|---|---|---|
| CD2357-40Q SYSCELL | Fortify Assura Next Generation DR-ICD DF4 Sys, MerlinPkg | EA | 16,553.75 |
| CD2411-36C SYSCELL | Ellipse Next Generation DR-ICD Sys, Merlin Pkg | EA | 16,553.75 |
| CD2411-36Q SYSCELL | Ellipse Next Generation DR-ICD DF4 Sys, Merlin Pkg | EA | 16,553.75 |
| CD2257-40 SYSCELL | Fortify Assura DR-ICD Sys, MerlinPkg | EA | 16,553.75 |
| CD2257-40Q SYSCELL | Fortify Assura DR-ICD DF4 Sys, MerlinPkg | EA | 16,553.75 |
| CD2311-36 SYSCELL | Ellipse DR-ICD Sys, Merlin Pkg | EA | 16,553.75 |
| CD2311-36Q SYSCELL | Ellipse DR-ICD DF4 Sys, Merlin Pkg | EA | 16,553.75 |
| CD2231-40 SYSCELL | Fortify DR-ICD Sys, MerlinPkg | EA | 16,553.75 |
| CD2231-40Q SYSCELL | Fortify DR-ICD DF4 Sys, MerlinPkg | EA | 16,553.75 |
| CD1357-40C SYSCELL | Fortify Assura Next Generation VR-ICD Sys, MerlinPkg | EA | 15,133.50 |
| CD1357-40Q SYSCELL | Fortify Assura Next Generation VR-ICD DF4 Sys, MerlinPkg | EA | 15,133.50 |
| CD1411-36C SYSCELL | Ellipse Next Generation VR-ICD Sys, Merlin Pkg | EA | 15,133.50 |
| CD1411-36Q SYSCELL | Ellipse Next Generation VR-ICD DF4 Sys, Merlin Pkg | EA | 15,133.50 |
| CD1257-40 SYSCELL | Fortify Assura VR-ICD Sys, MerlinPkg | EA | 15,133.50 |
| CD1257-40Q SYSCELL | Fortify Assura VR-ICD DF4 Sys, MerlinPkg | EA | 15,133.50 |
| CD1311-36 SYSCELL | Ellipse VR-ICD Sys, Merlin Pkg | EA | 15,133.50 |
| CD1311-36Q SYSCELL | Ellipse VR-ICD DF4 Sys, Merlin Pkg | EA | 15,133.50 |
| CD1231-40 SYSCELL | Fortify VR-ICD Sys, MerlinPkg | EA | 15,133.50 |
| CD1231-40Q SYSCELL | Fortify VR-ICD DF4 Sys, MerlinPkg | EA | 15,133.50 |
| **ICD Leads** | | | |
| LDA210Q/52 | | EA | 3,040.00 |
| LDA210Q/58 | Optimizr DF4 - Active TBP Single Shock | EA | 3,040.00 |
| LDA210Q/65 | | EA | 3,040.00 |
| LDA220Q/52 | | EA | 3,040.00 |
| LDA220Q/58 | Optimizr DF4 - Active TBP Dual Shock | EA | 3,040.00 |
| LDA220Q/65 | | EA | 3,040.00 |
| LDA230Q/65 | | EA | 3,040.00 |
| LDP220Q/65 | Optimizr DF4 - Passive TBP Dual Shock | EA | 3,040.00 |
| LDA210/65 | | EA | 3,040.00 |
| LDA220/65 | Optimizr DF1 | EA | 3,040.00 |
| 7120Q/52 | | EA | 3,040.00 |
| 7120Q/58 | | EA | 3,040.00 |
| 7120Q/65 | | EA | 3,040.00 |
| 7121Q/52 | | EA | 3,040.00 |
| 7121Q/58 | Durata DF4 - Active TBP Single Shock | EA | 3,040.00 |
| 7121Q/65 | | EA | 3,040.00 |
| 7122Q/52 | | EA | 3,040.00 |
| 7122Q/65 | | EA | 3,040.00 |
| 7122Q/58 | | EA | 3,040.00 |
| 7170Q/58 | | EA | 3,040.00 |
| 7170Q/65 | Durata DF4 - Passive TBP Dual Shock | EA | 3,040.00 |
| 7171Q/58 | | EA | 3,040.00 |
| 7171Q/65 | | EA | 3,040.00 |
| 7170/65 | Durata | EA | 3,040.00 |
| 7171/65 | | EA | 3,040.00 |
| 7130/60 | | EA | 3,040.00 |
| 7131/65 | | EA | 3,040.00 |
| 7120/60 | | EA | 3,040.00 |
| 7120/65 | | EA | 3,040.00 |

CONFIDENTIAL

XX/XX 9/24/2015

SJM-001234
EXHIBIT I
Page 10 of 18

### ST. JUDE MEDICAL

| | | | |
|---|---|---|---|
| 7121/60 | | EA | 3,040.00 |
| 7121/65 | Durata | EA | 3,040.00 |
| 7122/60 | | EA | 3,040.00 |
| 7122/65 | | EA | 3,040.00 |

**CRT Products**

**Bi-ventricular ICDs**

| | | | |
|---|---|---|---|
| CD3365-40C | Quadra Assura Next Generation CRT-D 40 | EA | 17,147.50 |
| CD3365-40Q | Quadra Assura Next Generation CRT-D 40 DF4 Connector | EA | 17,147.50 |
| CD3265-40 | Quadra Assura CRT-D 40 | EA | 17,147.50 |
| CD3265-40Q | Quadra Assura CRT-D 40 DF4 Connector | EA | 17,147.50 |
| CD3357-40C | Unify Assura Next Generation CRT-D 40 | EA | 16,150.00 |
| CD3357-40Q | Unify Assura Next Generation CRT-D 40 DF4 Connector | EA | 16,150.00 |
| CD3257-40 | Unify Assura CRT-D 40 | EA | 16,150.00 |
| CD3257-40Q | Unify Assura CRT-D 40 DF4 Connector | EA | 16,150.00 |
| CD3231-40 | Unify CRT-D 40 | EA | 16,150.00 |
| CD3231-40Q | Unify CRT-D 40 DF4 Connector | EA | 16,150.00 |

**Merlin Connectivity Package with Bi-ventricular ICDs**

| | | | |
|---|---|---|---|
| CD3365-40C CELL | Quad Assura Next Generation CRT-D, MerlinPkg | EA | 17,147.50 |
| CD3365-40Q CELL | Quad Assura Next Generation CRT-D DF4, MerlinPkg | EA | 17,147.50 |
| CD3265-40 CELL | Quad Assura CRT-D, MerlinPkg | EA | 17,147.50 |
| CD3265-40Q CELL | Quad Assura CRT-D DF4, MerlinPkg | EA | 17,147.50 |
| CD3357-40C CELL | Unify Assura Next Generation CRT-D, MerlinPkg | EA | 16,150.00 |
| CD3357-40Q CELL | Unify Assura Next Generation CRT-D DF4, MerlinPkg | EA | 16,150.00 |
| CD3257-40 CELL | Unify Assura CRT-D, MerlinPkg | EA | 16,150.00 |
| CD3257-40Q CELL | Unify Assura CRT-D DF4, MerlinPkg | EA | 16,150.00 |
| CD3231-40 CELL | Unify CRT-D, MerlinPkg | EA | 16,150.00 |
| CD3231-40Q CELL | Unify CRT-D DF4, MerlinPkg | EA | 16,150.00 |

**Bi-ventricular ICD System**

| | | | |
|---|---|---|---|
| CD3365-40C SYSTEM | Quadra Assura Next Generation CRT-D 40 System | EA | 21,548.25 |
| CD3365-40Q SYSTEM | Quadra Assura Next Generation CRT-D 40 DF4 Connector System | EA | 21,548.25 |
| CD3265-40 SYSTEM | Quadra Assura CRT-D 40 System | EA | 21,548.25 |
| CD3265-40Q SYSTEM | Quadra Assura CRT-D 40 DF4 Connector System | EA | 21,548.25 |
| CD3357-40C SYSTEM | Unify Assura Next Generation CRT-D 40 System | EA | 21,289.50 |
| CD3357-40Q SYSTEM | Unify Assura Next Generation CRT-D 40 DF4 Connector System | EA | 21,289.50 |
| CD3257-40 SYSTEM | Unify Assura CRT-D 40 System | EA | 21,289.50 |
| CD3257-40Q SYSTEM | Unify Assura CRT-D 40 DF4 Connector System | EA | 21,289.50 |
| CD3231-40 SYSTEM | Unify CRT-D 40 System | EA | 21,289.50 |
| CD3231-40Q SYSTEM | Unify CRT-D 40 System DF4 Connector | EA | 21,289.50 |

**Merlin Connectivity Package with Bi-ventricular ICD System**

| | | | |
|---|---|---|---|
| CD3365-40C SYSCELL | Quad Assura Next Generation CRT-D Sys, MerlinPkg | EA | 21,548.25 |
| CD3365-40Q SYSCELL | Quad Assura Next Generation CRT-D DF4 Sys, MerlinPkg | EA | 21,548.25 |
| CD3265-40 SYSCELL | Quad Assura CRT-D Sys, MerlinPkg | EA | 21,548.25 |
| CD3265-40Q SYSCELL | Quad Assura CRT-D DF4 Sys, MerlinPkg | EA | 21,548.25 |
| CD3357-40C SYSCELL | Unify Assura Next Generation CRT-D Sys, MerlinPkg | EA | 21,289.50 |
| CD3357-40Q SYSCELL | Unify Assura Next Generation CRT-D DF4 Sys, MerlinPkg | EA | 21,289.50 |
| CD3257-40 SYSCELL | Unify Assura CRT-D Syz, MerlinPkg | EA | 21,289.50 |
| CD3257-40Q SYSCELL | Unify Assura CRT-D DF4 Sys, MerlinPkg | EA | 21,289.50 |
| CD3231-40 SYSCELL | Unify CRT-D Sys, MerlinPkg | EA | 21,289.50 |

CONFIDENTIAL

SJM-001235
EXHIBIT I
Page 11 of 18

### ST. JUDE MEDICAL

| CD3231-40Q SYSCELL | Unify CRT-D DF4 Sys, MailnPkg | EA | 21,289.50 |
|---|---|---|---|
| *LV leads* | | | |
| 1458Q/75 | | EA | 1,933.25 |
| 1458Q/86 | QUARTET | EA | 1,933.25 |
| 1458Q/92 | | EA | 1,933.25 |
| 1458Q NSJM | QUARTET - Not Purchased w/ SJM System | EA | 3,000.00 |
| 1258T/75 | | EA | 1,672.00 |
| 1258T/86 | QUICKFLEX MICRO | EA | 1,672.00 |
| 1258T/92 | | EA | 1,672.00 |

CONFIDENTIAL

SJM-001236
EXHIBIT I
Page 12 of 18

 ST. JUDE MEDICAL

## OTHER PRODUCTS PRICING

### MediGuide CPS Package Pricing

| Model | Model Description | UOM | Price |
|-------|-------------------|-----|-------|
| DS2M021 | CPS Direct™, MediGuide Enabled™, Outer catheter, Wide Curve | EA | $ 1,000 |
| DS2M022 | CPS Direct™, MediGuide Enabled™, Outer catheter, 115° Curve | EA | $ 1,000 |
| DS2M023 | CPS Direct™, MediGuide Enabled™, Outer catheter, 135° Curve | EA | $ 1,000 |
| DS2M027 | CPS Excel, MediGuide Enabled Guidewire – Soft | EA | $ 1,000 |
| DS2M028 | CPS Excel, MediGuide Enabled Guidewire – Medium | EA | $ 1,000 |
| DS2M029 | CPS Excel, MediGuide Enabled Guidewire – Extra Firm | EA | $ 1,000 |

### CARDIOMEMS PRICING

| PRODUCT DESCRIPTION | Order No. | Qty | U of M | Contract Price |
|---------------------|-----------|-----|--------|----------------|
| CardioMEMS™ PA Sensor and Delivery System<br><br>Choice of one (1) Patient Electronics System with pillow and flexible antenna, Either GSM (CM-1000) or Landline (CM-1010) | CM PATIENT SYSTEM | 1 | Each | $23,950 |

CONFIDENTIAL

XX/XX 9/24/2015

PAGE 12 of 14

SJM-001237
EXHIBIT I
Page 13 of 18

 **ST. JUDE MEDICAL**

## EXHIBIT II

### REBATES AND/OR SPECIAL TERMS AND CONDITIONS

#### 1) Dual Vendor Rebate

Account agrees USD shall be one of two vendors during the period of this Agreement for CRM products, meaning that Account shall fulfill 85% of its CRM products through purchases from USD and one other vendor. Non-compliance may result in termination of this Agreement by USD.

Market share will be validated on a quarterly basis. Market share data is calculated as the percentage of total USD revenue vs. the total aggregate revenue purchased by Account during the period for those Products under this Agreement. Only generators shall count as a unit in the market share calculation.

The Parties recognize and agree that the following rebates will be applied to Account quarterly via a credit memo if Account enters in a dual vendor agreement with SJM. Rebates will be applied to Account quarterly.

| Products Line | Dual Vendor |
|---|---|
| CRM | 5% |
| EP | 2% |
| CardioMEMS | $1,500.00 |

#### 2) CRM Market Share Rebate

SJM will remit to Account quarterly via credit memo a rebate as described in the table below.

| Products Line | 80% MS Rebates | 45% MS Rebates |
|---|---|---|
| CRM | 20% | 10% |
| EP | 10% | 5% |
| CardioMEMS | $4,000.00 | $2,000.00 |

#### GENERAL REBATES TERMS

Notwithstanding anything herein to the contrary, USD will pay rebates based on purchases of Products by Account in the amounts stated in this Agreement when the rebate for the relevant period is $50.00 or greater. Unless otherwise agreed by USD and Account in writing, warranties, capital equipment, or other capital-related product purchases, or accessories not manufactured by St. Jude Medical shall not qualify for rebates. Rebates shall be payable to Account and shall be based on purchases under this Agreement made during each rebate period. Qualifying purchases will be net of any returns, discounts, rebates, and allowances.

Rebates shall be paid within forty-five (45) days after the end of the rebate period or after all necessary information is provided whichever is later. Account must notify USD in writing of any rebate dispute within ninety (90) days of disputed rebate period end; any notifications received after this time will not be eligible for any rebate adjustments. Rebates calculated for which no payment is due for two (2) consecutive terms may void the Rebates portion of the contract at the discretion of USD. Quarterly rebate programs may be adjusted to reflect USD quarters.

Notwithstanding any provision herein to the contrary, Account shall not be eligible for the rebate(s) set forth herein if Account has any outstanding balance with USD under any purchase agreement that is greater than ninety (90) days past due; and if Account has any outstanding, past due balance with USD, under any purchase agreement, that is less than ninety (90) days past due, USD shall apply any rebate earned hereunder to such outstanding balance(s).

CONFIDENTIAL

XX/XX 9/24/2015

### ▜▜▜
### ▜▜▜ St. Jude Medical
### ▜▜▜

The last date of the rebate period shall be the date for which balance due is calculated. If earned rebates are applied to an outstanding balance, they shall be applied to the oldest past due invoice first and thereafter in a chronological fashion until either all past due balances have been paid in full or the rebate amount has been exhausted. In the event that Account has a rebate balance due after payment of such invoices, Account shall receive the balance in the form of a credit memo.

Account hereby acknowledges its legal obligations to fully and accurately report the discounts and/or rebates it receives under all applicable federal and state laws, regulations, and other authorities, specifically including but not limited to the federal health care program anti-kickback law, 42 U.S.C. section 1320a-7b(b)("Anti-Kickback Law"). As part of the cost reporting process or otherwise, Account may be obligated to report and provide information concerning any discounts, rebates, or other price reductions provided under this Agreement pursuant to 42 U.S.C. section 1320a-7b (b)(3)(A) (the discount exception to the Anti-Kickback Law) and/or 42 C.F.R. section 1001.952(h)(the discount safe harbor to the Anti-kickback Law), other federal or state laws, or agreement with third party payers.

SJM-001239
EXHIBIT I
Page 15 of 18

# ⧫ ST. JUDE MEDICAL˙

No waiver of any of Account's obligations, conditions or covenants shall be effective unless contained in a writing signed by USD. Failure to exercise any remedy which USD may have shall not constitute a waiver of any obligation with respect to which Account is in default.

## GOVERNING LAW AND VENUE

This Agreement shall be interpreted and governed by the substantive and procedural laws of the State of Texas. The Parties hereto both consent to the jurisdiction of Texas courts to resolve any dispute arising from this Agreement.

## SEVERABILITY

In the event any sections, sentences, clauses or phrases of this Agreement shall be found to be invalid, void, and/or unenforceable, for any reason, neither the Agreement generally nor the remainder of this Agreement shall, as a result, be rendered invalid, void, and/or unenforceable.

## FORCE MAJEURE

Neither USD nor Account shall be liable for any failure or delay in the performance of its obligations under this Agreement due to causes beyond the control of such party, including, but not limited to, fires, floods, other acts of God, accidents, embargoes, war, riots, and any act or order of any government or governmental agency.

## REMEDIES

In the event of a breach of this Contract, the parties acknowledge that the other party will have available to it all available remedies in law or equity, specifically including, without limitation, monetary damages and/or entitlement as a matter of course to an injunction or similar equitable relief, without bond or with a nominal bond if allowed by law.

## AUDITS

Account has the right to audit USD orders, invoices, sales reports, and discounts related to the Account purchases of products under this Agreement once every 12 months and up to one year after contract expiration. Account may audit for the purpose of determining whether USD:

    a.  Extended the correct pricing

    b.  Paid the correct contract fees and/or rebates

Audits of invoices outside of the one year period will not be reviewed by USD. USD will not reimburse credits over one year after contract expiration.

## PRIOR AGREEMENTS / CONFLICT BETWEEN CONTRACT AND PURCHASE ORDER

This Agreement contains the entire Agreement between the parties related to the subject matter hereof, and terms of this Agreement shall supersede and replace all prior or conflicting agreements, representations, promises or conditions between the parties with respect to the sale of the products covered hereunder to Account, including but not limited to any additional or conflicting provisions contained in purchase orders or other documentation submitted by Account. This Agreement may not be amended except by written agreement signed by both parties.

| | |
|---|---|
| St. Jude Medical S.C., Inc. | Account |
| By: _[signature]_ | By: _____ _[signature]_ |
|       Signature |       Signature |
| Printed Name: Chris Carlson | Printed Name: Cory COUNTRYMAN |
| Title: Sr. Manager, Strategic Pricing | Title: CEO |
| Business Phone # of Signatory: (512) 286-4124 | Business Phone # of Signatory: 972-863-6201 |
| Date: _[handwritten]_ | Date: 10/9/2015 |

CONFIDENTIAL

XX/XX 9/24/2015

SJM-001240
EXHIBIT I
Page 16 of 18

**▚▚▚ St. Jude Medical**

Amendment to the Cardiac Rhythm Management Products Purchase Agreement

Between

Walnut Hill Physicians Hospital, LLC
Dallas, TX
Account# 1000188210
And

St. Jude Medical, S.C., Inc.

WHEREAS, Walnut Hill Physicians Hospital, LLC ("Account") and St. Jude Medical S.C., Inc. ("USD") desire to amend terms of the existing Cardiac Rhythm Management Products Purchase Agreement for the Cardiac Rhythm Management Products, by and between Account and USD and effective October 9, 2015 (the "Agreement"); and

NOW THEREFORE, the Agreement is hereby amended as detailed below. This Amendment is effective upon full execution by authorized signatures of both parties.

**NEW PRODUCTS**
The new products and pricing listed below are hereby added to the Agreement.

| Model | Description | Contract Price |
|---|---|---|
| **Bi-ventricular Pacemaker** | | |
| PM3262 | Quadra Allure MP RF CRT-P | 8,000.00 |
| **Merlin Connectivity Package with Bi-ventricular Pacemaker** | | |
| **Merlin Connectivity Package with Bi-ventricular Pacemaker** | | |
| PM3262 CELL | Quadra Allure MP RF CRT P, MerlinPkg | 8,000.00 |
| **Bi-ventricular Pacemaker System** | | |
| PM3262 SYSTEM | Quadra Allure MP RF CRT-P System | 10,788.25 |
| **Merlin Connectivity Package with Bi-ventricular Pacemaker System** | | |
| PM3262 SYSCELL | Allure Quadra CRT-P System, MerlinPkg | 10,788.25 |
| **Bi-ventricular ICDs** | | |
| CD3369-40C | Quadra Assura MP CRT-D | 18,147.50 |
| CD3369-40Q | Quadra Assura MP CRT-D DF4 Connector | 18,147.50 |
| **Merlin Connectivity Package with Bi-ventricular ICDs** | | |
| CD3369-40C CELL | Quadra Assura MP CRT-D, MerlinPkg | 18,147.50 |
| CD3369-40Q CELL | Quadra Assura MP CRT-D DF4, MerlinPkg | 18,147.50 |
| **Bi-ventricular ICD Systems** | | |
| CD3369-40C SYSTEM | Quadra Assura MP CRT-D System | 23,548.25 |
| CD3369-40Q SYSTEM | Quadra Assura MP CRT-D DF4 Connector System | 23,548.25 |
| **Merlin Connectivity Package with Bi-ventricular ICD Systems** | | |
| CD3369-40C SYSCELL | Quadra Assura MP CRT-D System, MerlinPkg | 23,548.25 |

| CD3369-40Q 5YSCELL | Quadra Assura MP CRT-D DF4 System, MerlinPkg | 23,548.25 |
|---|---|---|
| **LV leads** | | |
| 1456Q/75 | QUARTET, Small-S | 1,933.25 |
| 1456Q/86 | | 1,933.25 |
| 1458QL/75 | QUARTET, Wide Spacing | 1,933.25 |
| 1458QL/86 | | 1,933.25 |

All other terms and conditions of the above identified Agreement shall remain unchanged and in full force and effect unless otherwise amended.

St. Jude Medical S.C., Inc.

By: _____
Signature
Printed Name: W.ll Dordo[
Title: Group Dir. Std. Contracts
Business Phone # of Signatory: 92-286-407
Date: 4/20/16

Walnut Hill Physicians Hospital, LLC.

By: _____
Signature
Printed Name: Cory Countryman
Title: CEO
Business Phone # of Signatory: 972-863-6201
Date: 4/20/16

**☰ ST. JUDE MEDICAL**

**INVOICE**
**\*\*D U P L I C A T E\*\***                    Confidential

St. Jude Medical S.C., INC.
6300 Bee Cave Road Bldg Two, Ste 100
Austin TX 78746
USA

For Inquiries: 1-800-654-6910 (Accounts Receivable)
1-855-478-5833 (Customer Service)
Bill To: 1000200771 / DO NOT USE

| | |
|---|---|
| SJM GLN: | 5414734000017 |
| Payer: | 1000200771 / DO NOT USE    Page: 1/2 |
| Sold To: | 1000188210 / DO NOT USE |
| | WALNUT HILL MEDICAL CENTER |
| | 7502 GREENVILLE AVE |
| | DALLAS TX 75231-3802 |

WALNUT HILL MEDICAL CENTER
ATTN: ACCOUNTS PAYABLE
7515 GREENVILLE AVE STE 710
DALLAS TX 75231-3848

Ship To: 1000188210 / DO NOT USE
WALNUT HILL MEDICAL CENTER
7502 GREENVILLE AVE
DALLAS TX 75231-3802

| Remit To: St Jude Medical | | |
|---|---|---|
| 22400 Network Place | SJM Remit To GLN: | 5414734000123 |
| Chicago IL 60673-1224 | SJM Tax ID: | ████5029 |

| INVOICE. | 9006876194 | INV. DATE: | 06/12/2017 | TERMS: | Net 30 DAYS |
|---|---|---|---|---|---|
| SALES ORDER: | 6007628488 | SHIP DATE: | 05/31/2017 | PURCHASE ORDER: 12700 | |
| SHIP TERMS. | Hand Carry | SHIP VIA: | Hand Carry | BILL OF LADING: | Hand Carry |

| LINE # | MATERIAL/MODEL # | Sales Person | UM | QTY | TAX | PRICE | TOTAL PRICE |
|---|---|---|---|---|---|---|---|
| 10 | 100157469 EX1150 | R Genovese Jr | EA | 1.000 | | | |
| | US,EX1150M@h,RFKU,v8.2.2, PR8.22.6 | | | | | | |
| | Serial Numbers : 25557055 | | | | | | |
| 20 | CD2411-36Q SYSCELL CD2411-36Q SYSCELL | R Genovese Jr | EA | 1.000 | 36.14 | 16,553.75 | 16,553.75 |
| | CD2411-36Q SYSCELL | | | | | | |
| 30 | 100116420 CD2411-36Q | R Genovese Jr | EA | 1.000 | | | |
| | CD2411-36Q EllipseDR_ICD_U_PR | | | | | | |
| | Serial Numbers : 7363537 | | | | | | |
| 40 | 100156463 | R Genovese Jr | EA | 1.000 | | | |

**General Invoice Discount/Rebate/Price Reduction/Warranty Disclosure for Buyers**

The prices for items reflected on this invoice may include discounts, credits, warranty credits or other price reductions, and may be subject to subsequent rebates or other price reductions or adjustments (collectively Reductions in Price). The items reflected in this invoice may also be part of a bundled sale arrangement, whereby the receipt of goods at a reduced or no charge is conditioned upon the purchase of other goods reflected in this and/or another invoice or document. Buyer may have an obligation to report, in its cost reports or claims submitted for reimbursement, and provide to federal or state agencies, information concerning any Reductions in Price, pursuant to 42 U.S.C. 1320a-7b(b)(3)(A) (the discount exception to the Anti-Kickback Statute (AKS)), 42 C.F.R. 1001 952(h) (the discount safe harbor to the AKS), 42 C.F.R 1001.952(g)(the warranty safe harbor to the AKS), other federalor state laws, and/or agreements with third-party payers. Buyer may contact St. Jude Medical to request additional detailed information which Buyer may need to comply with such obligations. Buyer should retain this invoice and any other documentation regarding Reductions in Price from St. Jude Medical and make such information available to federal or or state health care programs upon request and as required by law or regulation.

EXHIBIT J
Page 1 of 3

**ST. JUDE MEDICAL**

## INVOICE
**\*\*DUPLICATE\*\***

Confidential

St. Jude Medical S.C., INC.
6300 Bee Cave Road Bldg Two, Ste 100
Austin TX 78746
USA

For Inquiries: 1-800-654-6910 (Accounts Receivable)
1-855-478-5833 (Customer Service)
Bill To: 1000200771 / DO NOT USE

| SJM GLN: | 5414734000017 | |
|---|---|---|
| Payer: | 1000200771 / DO NOT USE | Page: 2/2 |
| Sold To: | 1000188210 / DO NOT USE | |
| | WALNUT HILL MEDICAL CENTER | |
| | 7502 GREENVILLE AVE | |
| | DALLAS TX 75231-3802 | |

WALNUT HILL MEDICAL CENTER
ATTN: ACCOUNTS PAYABLE
7515 GREENVILLE AVE STE 710
DALLAS TX 75231-3848

Ship To: 1000188210 / DO NOT USE
WALNUT HILL MEDICAL CENTER
7502 GREENVILLE AVE
DALLAS TX 75231-3802

| Remit To: St Jude Medical 22400 Network Place Chicago IL 60673-1224 | SJM Remit To GLN: 5414734000123 SJM Tax ID: 5029 |
|---|---|

| INVOICE: | 9006876194 | INV. DATE: | 06/12/2017 | TERMS: | | Net 30 DAYS | | |
|---|---|---|---|---|---|---|---|---|
| SALES ORDER: | 6007628488 | SHIP DATE: | 05/31/2017 | PURCHASE ORDER: 12700 | | | | |
| SHIP TERMS: | Hand Carry | SHIP VIA: | Hand Carry | BILL OF LADING: | | Hand Carry | | |
| LINE # | MATERIAL/MODEL # | | Sales Person | UM | QTY | TAX | PRICE | TOTAL PRICE |

EX1151
ModEX1151 USB WrlssAd,DTUS/MX,Huawei2131
Serial Numbers :
462829

| 50 | 100055851 LPA1200M/52 | R Genovese Jr | EA | 1.000 | | | |

LPA1200M/52 MRI CondTendril Lead_UMRI_US
Serial Numbers :
CBA094412

| 60 | 100117943 LDA210Q/65 | R Genovese Jr | EA | 1.000 | | | |

LDA210Q/65 OPTISURE LEADSS_U_PR
Serial Numbers :
DAR024646

| | | Currency: | | USD | | | SubTotal: | 16,553.75 |
|---|---|---|---|---|---|---|---|---|
| | | | | | | | Total Tax: | 36.14 |
| | | | | | | | Invoice Total: | 16,589.89 |

The above amount is due as per the terms of the invoice.

USDWB:Date Of Service. 05/24/2017 Dr: YOO, DALE Rep: GENOVESE RICHARD

**ST. JUDE MEDICAL**

St. Jude Medical S.C., INC.
15900 Valley View Court
Sylmar, CA 91342-3577 USA
(800) 777-2237    (818) 362-6822

**Implant Date:  05/24/2017**

**Packing List**
CONFIDENTIAL

**Purchase Order:  12700**

| Hospital: | Patient: |
|---|---|
| Sold To: 1000188210 /<br>WALNUT HILL MEDICAL CENTER<br>7515 GREENVILLE AVE STE 710<br>ATTN: ACCOUNTS PAYABLE<br>DALLAS, TX, 75231-3848 | Name: ▓▓▓ KLOTZ<br>Sex:  MALE     DOB: ▓▓▓1948      Age: 68<br>Medical Record #: ▓▓▓<br>Patient Account #: ▓▓▓ |
| Implanting: 1000188210 /<br>WALNUT HILL MEDICAL CENTER<br>7502 GREENVILLE AVE<br>DALLAS, TX, 75231-3802 | Implanting Physician:  YOO, DALE DR.<br>(214) 361-3300 |
|  | Sales Rep:  GENOVESE, RICHARD<br>3000016854<br>rgenovese@sjm.com |

| Qty | Model # | Serial # | Model Type | Position | Description | Unit Price | Ext'd Price |
|---|---|---|---|---|---|---|---|
| 1 | CD2411-36Q | 7363537 | HV Generator | ICD | CD2411-36Q EllipseDR_ICD_U_PR | $13,086.25 | $0.00 |
| 1 | LPA1200M/52 | CBA094412 | HV Lead | RA | LPA1200M/52 MRI CondTendril Lead_UMRI_US | $427.50 | $0.00 |
| 1 | LDA210Q/65 | DAR024646 | HV Lead | RV | LDA210Q/65 OPTISURE LEADSS_U_PR | $3,040.00 | $0.00 |
| 1 | EX1151 | 462829 | Other | Acc | ModEX1151 USB WrlssAd,DTUS/MX,Huawei2131 | $450.00 | $0.00 |
| 1 | CD2411-36Q SYSCELL |  | Other | N/A | CD2411-36Q SYSCELL | $16,553.75 | $16,553.75 |
| 1 | EX1150 | 25557055 | Other | Acc | US,EX1150M@h,RFKU,v8.2.2, PR8.22.6 | $0.00 | $0.00 |

Total Price: $16,553.75

Pricing reflected on packing slip is not necessarily reflective of agreed upon contracted pricing between account and St. Jude Medical. A separate invoice will
be sent to reflect final pricing.

Printed on: 06/16/2017 15:43  (Page 1 of 1)

Event Id: 45901-10701

EXHIBIT J
Page 3 of 3





Washington Building
Barnabas Business Center
4650 N. Port Washington Road
Milwaukee, WI 53212-1059
Telephone (414) 962-5110
Facsimile (414) 962-8725
Email kmksc@kmksc.com

www.kmksc.com

May 24, 2018

**VIA EMAIL (jvasek@munsch.com)**
Julian P. Vasek, Esq.
Munsch Hardt
500 N. Akard Street, Suite 3800
Dallas, TX 75201

RE:     *Seidel v. St. Jude Medical, S.C., Inc. (In re Walnut*
        *Hill Physicians' Hospital, LLC)*
        Adv. No. 18-3033

Dear Mr. Vasek:

This responds to your May 23, 2018, letter, received after business hours.

We stand by our characterizations of the May 15 Call, and your continuing threats to proceed with a motion to compel are unnecessary, and are unreasonably increasing the costs and expenses of this matter in light of the detailed issues we raised in our May 23 letter.

We also stand by the specifics of our May 23 letter—we gave you a written explanation relating to the General Responses, including confirming (as was evident) that we were not relying on the General Responses to withhold any documents or information. We also provided detailed explanations of our specific objections, and indicated that we were willing to continue efforts to conciliate our dispute and review any additional authorities or facts you would provide. You have ignored these efforts.

Nonetheless, we will review our responses again, but cannot proved you with any further revisions by your unilateral noon deadline today. It is not a simple matter as you suggest, given the overly aggressive and unreasonable posture in which you have placed this action. We also need to consult with our client, including, if necessary, their internal legal department. Moreover, my daughter is having surgery this afternoon so I will generally be unavailable over the next two days. We will provide you with a further response by the close of business on Tuesday, May 29, 2018.

Very truly yours,

KOHNER, MANN & KAILAS, S.C.

Samuel C. Wisotzkey

SCW:pal

Cc:     Melinda Bialzik, Esq. (via email)
        John Johnson, Esq.(via email)
        Davor Rukavina, Esq. (via email)





CLERK, U.S. BANKRUPTCY COURT
NORTHERN DISTRICT OF TEXAS

# ENTERED

THE DATE OF ENTRY IS ON
THE COURT'S DOCKET

**The following constitutes the ruling of the court and has the force and effect therein described.**

**Signed June 27, 2018**

United States Bankruptcy Judge

---

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| In re: | § | Chapter 7 |
| | § | |
| WALNUT HILL PHYSICIANS' | § | Case No. 17-32255-bjh-7 |
| HOSPITAL, LLC, | § | |
| | § | |
| Debtor. | § | |
| | § | |
| SCOTT M. SEIDEL, TRUSTEE, | § | |
| Plaintiff, | § | ADV. PRO. NO. 18-03033-bjh |
| | § | |
| v. | § | |
| | § | |
| ST. JUDE MEDICAL S.C., INC., | § | |
| Defendant. | § | |

**ORDER GRANTING IN PART AND DENYING IN PART TRUSTEE'S MOTION
TO COMPEL DISCOVERY RESPONSES AND PRODUCTION**

CAME ON FOR CONSIDERATION the *Trustee's Motion to Compel Discovery Responses and Production* [Docket No. 9] (the "Motion"), filed by Scott M. Seidel, the duly-appointed chapter 7 trustee (the "Trustee") for the estate (the "Estate") of Walnut Hill Physicians' Hospital, LLC (the "Debtor"), the debtor in the above styled and numbered chapter 7 bankruptcy case (the "Bankruptcy Case"). By the Motion, the Trustee seeks to compel St. Jude

---

EXHIBIT L
Page 1 of 3

Medical S.C., Inc. ("St. Jude") to provide amended written responses and to produce additional documents in response to the *Trustee's First Set of Interrogatories and First Set of Requests for Production to St. Jude Medical S.C., Inc.* (the "First RFPs") and the *Trustee's Second Set of Requests for Production to St. Jude Medical S.C., Inc.* (the "Second RFPs"). The Court held a hearing (the "Hearing") on the Motion on June 21, 2018, at which the Court heard argument from counsel for the Trustee and St. Jude. For the reasons stated on the record at the Hearing, it is hereby—

ORDERED that the Motion is GRANTED in part and DENIED in part as set forth herein; it is further—

ORDERED that the objections set forth in the "General Response" section of *St. Jude Medical S.C, Inc.'s Combined Preliminary Responses to Trustee's First Set of Interrogatories and First Set of Requests for Production and Trustee's Second Set of Requests for Production to St. Jude Medical S.C., Inc.* (the "Responses") are OVERRULED; it is further—

ORDERED that St. Jude's objections to First RFP No. 1, First RFP No. 2, First RFP No. 3, First RFP No. 4 (except as to work product as to exhibits St. Jude intends to offer), First RFP No. 5, First RFP No. 6, Second RFP No. 1, Second RFP No. 2, Second RFP No. 3, Second RFP No. 4, Second RFP No. 5, Second RFP No. 6, Second RFP No. 7, and Second RFP No. 8 are OVERRULED; it is further—

ORDERED that St. Jude's work product objection to RFP No. 4 as to exhibits it intends to offer, objections to First RFP No. 7 and Second RFP No. 9 are SUSTAINED; it is further—

ORDERED that St. Jude must search for and produce, to the extent they exist: archived emails responsive to First RFP No. 1, First RFP No. 2, First RFP No. 3, First RFP No. 4, First RFP No. 5, First RFP No. 6, Second RFP No. 1, Second RFP No. 2, Second RFP No. 3, Second

ORDER GRANTING TRUSTEE'S MOTION TO COMPEL DISCOVERY RESPONSES AND PRODUCTION—
Page **2** of **3**

EXHIBIT L
Page 2 of 3

RFP No. 4, Second RFP No. 5, Second RFP No. 6, Second RFP No. 7, and Second RFP No. 8;
and contracts directing how an identified sales person delivers or releases goods responsive to
Second RFP No. 2, Second RFP No. 3, Second RFP No. 4, Second RFP No. 5, Second RFP No.
6, Second RFP No. 7, and Second RFP No. 8 it is further—

ORDERED that St. Jude must amend its Responses to omit any objections that have been
overruled and to state clearly the extent to which responsive documents (a) have been produced;
(b) have been withheld based on an objection; and/or (c) have been withheld based on a
privilege, in which case St. Just must provide a detailed privilege log; it is further—

ORDERED that the deadline for St. Jude to comply with the terms of this Order is July 5,
2018 unless further extended by order on motion or by agreement of the parties; and it is
further—

ORDERED than any relief not expressly granted herein is DENIED.

### End of Order ###

AGREED AS TO FORM:

| /s/ *Julian P. Vasek* | /s/ *Melinda A. Bialzik*   (w/p JPV) |
|---|---|
| Davor Rukavina, Esq. | Samuel C. Wisotzkey |
| Texas Bar No. 24030781 | Admitted *pro hac vice* |
| Julian P. Vasek, Esq. | Melinda A. Bialzik |
| Texas Bar No. 24070790 | Admitted *pro hac vice* |
| MUNSCH HARDT KOPF & HARR, P.C. | Washington Building, Second Floor |
| 500 N. Akard Street, Suite 3800 | Barnabas Business Center |
| Dallas, Texas  75201-6659 | 4650 N. Port Washington Rd. |
| Telephone: (214) 855-7500 | Milwaukee, WI 53212-1059 |
| Facsimile: (214) 855-7584 | +1 414 962 5110 – telephone |
| | +1 414 962 8725 – telecopy |
| ATTORNEYS FOR SCOTT M. SEIDEL, TRUSTEE | ATTORNEYS FOR ST. JUDE MEDICAL S.C., INC. |



Ross Tower
500 N. Akard Street, Suite 3800
Dallas, Texas 75201-6659
Main 214.855.7500
Fax 214.855.7584
munsch.com

Direct Dial 214 855 7528
jvasek@munsch.com

July 10, 2018

*Via Electronic Mail*
Samuel C. Wisotzkey
Kohner, Mann & Kailas, S.C.
4650 N. Port Washington Rd.
Washington Bldg., 2nd Floor
Milwaukee, WI 53212-1059
swisotzkey@kmksc.com

      Re:    *Seidel v. St. Jude Medical S.C., Inc. (In re Walnut Hill Physicians' Hospital, LLC)*, Adv.
              No. 18-3033, pending in the U.S. Bankruptcy Court for the Northern District of Texas

Dear Mr. Wisotzkey:

On June 27, 2018, the Court ordered St. Jude to produce archived emails responsive to fourteen requests for production by no later than July 5, 2018. After a brief, agreed extension, St. Jude produced responsive documents on July 9, 2018. We were surprised that St. Jude's production consisted of only sixteen pages of emails. Based on our correspondence related to the agreed extension, it appears that St. Jude is taking the position that there are no more responsive documents. While we intend to give St. Jude the benefit of the doubt, St. Jude clearly has not produced all responsive emails.

First RFP #2, for example, requests "[a]ll ... Communications between the Debtor and St. Jude within the one (1) year prior to the Petition Date ...." As we explained to St. Jude and to the Court, the Trustee has paid to de-archive the emails of select hospital employees. Among them are emails between the Debtor and Richard Genovese that were sent and received within one year before the petition date. But St. Jude did not produce any of those emails. Based on this oversight, the Trustee questions whether St. Jude likewise failed to produce other responsive documents.

Perhaps it is the case that St. Jude mistakenly did not utilize appropriate search parameters, as we are confident that St. Jude would not intentionally disregard the Court's order. Whatever the cause of the oversight, we request confirmation that St. Jude is working to supplement its production promptly, and we are amenable to providing a reasonable amount of time for St. Jude to comply. If, on the other hand, St. Jude does not intend to broaden its search and produce additional documents, then we request a prompt telephone conference to discuss the matter.

                 Best regards,

                 /s/  *Julian P. Vasek*

                 Julian P. Vasek, Esq.

4810-4703-4221v.1

EXHIBIT M
Page 1 of 1





Washington Building
Barnabas Business Center
4650 N. Port Washington Road
Milwaukee, WI 53212-1059
Telephone (414) 962-5110
Facsimile (414) 962-8725
Email kmksc@kmksc.com

www.kmksc.com

July 10, 2018

**VIA EMAIL (jvasek@munsch.com)**
Julian P. Vasek, Esq.
Munsch Hardt
500 N. Akard Street, Suite 3800
Dallas, TX 75201

RE:  *Seidel v. St. Jude Medical, S.C., Inc. (In re Walnut Hill Physicians' Hospital, LLC)*
Adv. No. 18-3033

Dear Mr. Vasek:

This responds to your July 10, 2018, letter, relating to the production of emails. As we advised in the response to the Motion to Compel, and further indicated at the hearing, we were previously advised that St. Jude emails were generally only preserved for 30 days, and so we could not represent that an email archive search would identify responsive documents. As you know, the order on the motion to compel directed St. Jude to search email archives and produce responsive documents, to the extent they exist. Upon further investigation, we have been informed that the 30-day retention policy applied to sent and received emails, and emails would only have been preserved beyond that time if a user had moved the emails to a separate folder. Based on this policy, we are not surprised that there are few responsive emails that we have located to date.

Nonetheless, after the hearing last month, we worked with our client and provided broad search terms to search for emails from the 4-identified sales people, including Mr. Genovese, and potential other credit department representatives of St. Jude. We used these search terms: "Walnut Hill," "Rick Leonard," "Richard Leonard," "Keandrea Epps," "Keandrea," and "rick.leonard*" and the date range from June 1, 2016 to July 1, 2017. Based on the discovery requests, we were searching for emails between St. Jude and the Debtor, or emails between St. Jude and the 4 sales agents. However, based upon these searches, only the few responsive emails were located.

If you have additional search terms you think we should consider, please let us know. From our further investigation, we have identified two possible other St. Jude employees that may have had email communications with the Debtor relating to delivery of goods in the preference period, and we can discuss with our client conducting a further search, with the understanding that we cannot provide any assurances that any additional emails are recoverable. But, before we discuss with our client going to the expense of more searches, please advise what additional search terms you think might be appropriate.

We understand from the hearing that you de-archived Mr. Leonard's emails. We encourage you to share the emails you have located between him and St. Jude with us without a formal discovery request, especially if it will narrow the issues on the key questions of the timing of the delivery of goods by St. Jude, or otherwise impact the search for additional relevant, responsive emails on our end.

*Listed in Martindale - Hubbell Bar Register of Preeminent Lawyers*

EXHIBIT N
Page 1 of 2



www.kmksc.com



Washington Building
Barnabas Business Center
4650 N. Port Washington Road
Milwaukee, WI 53212-1059
Telephone (414) 962-5110
Facsimile  (414) 962-8725
Email kmksc@kmksc.com

Julian P. Vasek, Esq.
July 10, 2018
Page 2


St. Jude searched for archived emails in good faith, consistent with our representations to the Court, but we certainly stand ready to discuss the possibility of further additional reasonable searches that would be appropriate.

Very truly yours,

KOHNER, MANN & KAILAS, S.C.

Samuel C. Wisotzkey

SCW:pal

Cc:     Melinda Bialzik, Esq. (via email)
        John Johnson, Esq.(via email)



Ross Tower
500 N. Akard Street, Suite 3800
Dallas, Texas 75201-6659
Main 214.855.7500
Fax 214.855.7584
munsch.com

Direct Dial 214.855.7528
jvasek@munsch.com

MUNSCH HARDT

DALLAS / HOUSTON / AUSTIN

July 25, 2018

*Via Electronic Mail*
Samuel C. Wisotzkey
Kohner, Mann & Kailas, S.C.
4650 N. Port Washington Rd.
Washington Bldg., 2nd Floor
Milwaukee, WI 53212-1059
swisotzkey@kmksc.com

    Re:    *Seidel v. St. Jude Medical S.C., Inc. (In re Walnut Hill Physicians' Hospital, LLC)*, Adv.
        No. 18-3033, pending in the U.S. Bankruptcy Court for the Northern District of Texas

Dear Mr. Wisotzkey:

    I am writing in response to your letter dated July 10, 2018. While we appreciate your attempt to explain your client's position to us, we are confused by your letter, and we seek further clarification.

    On the one hand, your letter could be interpreted as stating that St. Jude simply did not retain e-mails after thirty days, or alternatively that it actively deleted them. We find it hard to believe that St. Jude, a large company in a heavily regulated market, and likely with government contracts at that, would do this, especially for implantable devices. In fact, we find it hard to believe that St. Jude does not retain e-mails going back years, at least in back-up format.

    On the other hand, your letter could be interpreted as stating that St. Jude archives e-mails after thirty days, except for those e-mails which any given user separately saves to a local file. This would be far more in line with our experience and with industry standards, and would be what we would except. Indeed, this is what the Debtor did, and it is why the Trustee has limited access to former employee e-mails. Separate from archiving e-mails, it would be logical and normal for St. Jude to back-up its e-mail servers and to retain the back-up for some period of time. Your letter is silent on this issue and on whether St. Jude reviewed any e-mail back-ups.

    Initially, therefore, we request that you clarify which of the above options it is (or, if there is a third, that you please clearly explain it). We ask that your clarification expressly state what St. Jude's archiving and/or back-up policies were during the relevant periods, and what efforts have been made to review the same for responsive e-mails.

    Next, and assuming that e-mails have been archived or backed-up, I would note that St. Jude is obligated to search such e-mails and to produce the same not only pursuant to rule 26(b)(2)(B), but also pursuant to the Court's order, since any undue burden or cost objections have been overruled. At the same time, we agree that this does not mean that St. Jude is required to de-archive and review *all* e-mails. A targeted de-archiving and review is appropriate, and we both welcome and agree with your

Samuel C. Wisotzkey
July 25, 2018
Page 2

suggestion that this process be collaborative. In that spirit, we request that St. Jude undertake the following process.

First, St. Jude should identify and isolate the individuals whose archived or backed-up e-mails are to be searched. This would include those people identified on the invoices, such as Richard Genovese, Campbell, Stamme, and Child. From our review of the Debtor's e-mails, the following St. Jude personnel also communicated with the Debtor, and therefore their e-mails should also be searched:

1. DMott@sjm.com,
2. CPottneyer@sjm.com,
3. AStammer@sjm.com,
4. DDowd@sjm.com,
5. MTodryk@sjm.com,
6. TManess@sjm.com,
7. BCampbell02@sjm.com,
8. MSorensen2@sjm.com,
9. MZamrazil@sjm.com,
10. CKelm@sjm.com,
11. NNguyen19@sjm.com,
12. HRigby@sjm.com,
13. CJeffries@sjm.com,
14. JBarton@sjm.com,
15. MArmstrong03@sjm.com,
16. JJones07@sjm.com,
17. JHesman@sjm.com,
18. RRiebesell@sjm.com,
19. SDonnelly@sjm.com,
20. RJohn@sjm.com,
21. TDunckel@sjm.com,
22. Keggen@sjm.com,
23. PSawall@sjm.com,
24. DYoung03@sjm.com,
25. THentges@sjm.com,
26. JZigler@sjm.com,
27. KMccollum@sjm.com,
28. BCannon02@sjm.com,
29. TBest02@sjm.com,
30. PMahan@sjm.com,
31. PhysicianEducation.MG@sjm.com,
32. JAlvarez-Fetzer10@sjm.com,
33. JDallager@sjm.com,
34. JMcCue@sjm.com,
35. Vcorrea@sjm.com,
36. BEverling@sjm.com,

Samuel C. Wisotzkey
July 25, 2018
Page 3

      37.      NPeltier@sjm.com,
      38.      CMorris@sjm.com,
      39.      CLamkin@sjm.com,
      40.      MRodriguez32@sjm.com, and
      41.      SNikitas@sjm.com.

St. Jude should also inquire of its senior management and its accounts receivable departments, as well as any other relevant departments (*e.g.* sales, delivery, returns, etc.), whether any of its personnel had communications with any Debtor personnel during the relevant timeframe. If they did, then those individuals' archived e-mails should also be searched. This information is uniquely within St. Jude's knowledge, and we cannot help to identify these individuals. We stress, however, that it is St. Jude's obligation to perform a reasonable investigation into this issue.

Second, the relevant date range must be expanded. It appears from your letter that St. Jude only searched emails from June 1, 2016 to July 1, 2017. But not all of the requests are limited to a one-year period. Only First RFPs 2 and 3 are so limited. Nevertheless, we acknowledge that it is not necessary for St. Jude to search emails going back in time indefinitely. The earliest email we have discovered to or from an sjm.com address is dated October 4, 2013. Accordingly, the appropriate date range for the non-time-limited RFPs is October 4, 2013 to July 1, 2017. Only archived or backed-up e-mails falling within that date range need be searched.

Third, various additional search terms should be employed. Ultimately, it is St. Jude's obligation to fashion reasonable search terms, as certain information may be uniquely within its control (such as internally used terms and phrases of which we would not have any knowledge). However, we are willing to help with identifying what we believe to be reasonable search terms. In this respect, we request that St. Jude search de-archived and backed-up e-mails for the following terms, in addition to reasonable terms identified by St. Jude, where * represents a wildcard and /x represents two words within x number of words of each other:

      1.      all e-mail addresses with @walnuthillmc.com;
      2.      "Walnut Hill";
      3.      Wal* /2 Hill;
      4.      Leonard;
      5.      1000200771;[1]
      6.      1000188210;[2]
      7.      WHMC;
      8.      Tarectecan;
      9.      America /5 CFO;

---

[1]     This number appears on the invoices with the notation "do not use." That may be because the invoices were created after-the-fact for litigation purposes, which is fine. In any event, whatever the unique number assigned to the Debtor was, that is the number that should be searched.

[2]     *Supra*, n. 1.

Samuel C. Wisotzkey
July 25, 2018
Page 4

10.     America /2 T*;
11.     Countryman;
12.     Cory /2 C*;
13.     Montgomery;
14.     Aldama;
15.     Summers;
16.     Medistar;
17.     E* /2 Alexander;
18.     SDP;
19.     Greenville;
20.     bankrupt*;
21.     "chapter 7"; and
22.     invoice numbers, sales order numbers, and purchase order numbers, for each invoice that falls within the 503(b)(9) claim and that is the basis of the new value defense.[3]

Fourth, St. Jude must also review internal e-mails between its employees and agents. While the above should capture some or all of that, St. Jude will have to independently and in good faith employ reasonable methods to de-archive and search appropriate e-mail files. For example, did St. Jude employees communicate with the CFO or any other internal officer regarding the Debtor's defaults? Was there a collections specialist used on the file? With respect to the goods that the Debtor sought to return, was there a different department or employee? We cannot offer any suggestions on this issue since we do not know St. Jude's internal policies and procedures.

Fifth, to the extent there are paper files or records, those must be searched as well. It does not appear that there are any, so this should not be an issue.

Sixth, individual employees who may have had responsive communications internally or externally must be asked whether they saved or stored responsive e-mails, facsimiles, notes, or other documents or communications. This should include any personal e-mails that they may have used.

Pursuant to your request, I enclose a selection e-mails that I was able to de-archive from the Debtor's e-mails that the Trustee imaged. Once we have further production from St. Jude, I will be able to search more Debtor e-mails using the additional Debtor personnel who may be identified.

In order to move things along and because the Trustee needs finality on this issue before taking depositions, I ask that you provide me with a response to this letter by August 3. I understand that additional time may be required to undertake the above procedure, or whatever other procedure St. Jude employs, and the Trustee will be reasonable with respect to the same.

---

[3]     We recognize that this may be burdensome, but we believe that there should be a faster way to locate responsive communications once you have consulted with St. Jude employees. For example, if Mr. Genovese always communicated an order to a given person or inputted an order in a certain manner electronically, then reviewing those sources could be sufficient.

EXHIBIT O
Page 4 of 5

Samuel C. Wisotzkey
July 25, 2018
Page 5

     Finally, I am also enclosing the Trustee's second set of interrogatories and fourth set of requests for production, which are narrowly tailored to address the Trustee's concerns and confusion about St. Jude's document and e-mail retention policies.

                  Best regards,

                  /s/   *Julian P. Vasek*

                  Julian P. Vasek, Esq.

Encl.

EXHIBIT O
Page 5 of 5

Davor Rukavina, Esq.
Texas Bar No. 24030781
Julian P. Vasek, Esq.
Texas Bar No. 24070790
MUNSCH HARDT KOPF & HARR, P.C.
500 N. Akard Street, Suite 3800
Dallas, Texas 75201-6659
Telephone: (214) 855-7500
Facsimile: (214) 855-7584

ATTORNEYS FOR SCOTT M. SEIDEL, TRUSTEE

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

| | | |
|---|---|---|
| In re: | § | |
| | § | Chapter 7 |
| WALNUT HILL PHYSICIANS | § | |
| HOSPITAL, LLC, | § | Case No. 17-32255-bjh-7 |
| | § | |
| Debtor. | § | |
| | § | |
| SCOTT M. SEIDEL, TRUSTEE, | § | |
| Plaintiff, | § | ADV. PRO. NO. 18-03033-bjh |
| | § | |
| v. | § | |
| | § | |
| ST. JUDE MEDICAL S.C., INC., | § | |
| Defendant. | § | |

### TRUSTEE'S SECOND SET OF INTERROGATORIES AND FOURTH
### SET OF REQUESTS FOR PRODUCTION TO ST. JUDE MEDICAL S.C., INC.

**TO:** **St. Jude Medical S.C., Inc., by and through its counsel of record, Samuel C. Wisotzkey, Esq., Kohner, Mann, & Kailas, S.C., 4650 N. Port Washington Rd., Milwaukee, WI 53212-1059, and John E. Johnson, Esq., Padfield & Stout, L.L.P., 705 Ross Avenue, Dallas, Texas 75202.**

Scott M. Seidel, the duly appointed chapter 7 trustee of the bankruptcy estate of Walnut

Hill Physicians' Hospital, LLC (the "Debtor"), the debtor in the above styled and numbered

bankruptcy case, hereby serves, pursuant to Rules 33 and 34 of the Federal Rules of Civil

Procedure and Rules 7033, 7034, and 9014 of the Federal Rules of Bankruptcy Procedure, this

his *Second Set of Interrogatories and Fourth Set of Requests for Production to St. Jude Medical S.C., Inc.*

St. Jude Medical S.C., Inc. is instructed to serve its responses to these requests and interrogatories, along with all documents responsive to these requests, no later than **August 24, 2018**, by delivering them to Julian Vasek, Munsch Hardt Kopf & Harr P.C., 500 N. Akard St., Ste. 3800, Dallas, Texas 75201, jvasek@munsch.com.

## I. INTERROGATORIES

### INTERROGATORY NO. 1

Provide the name, department, title, and business address of the St. Jude employee(s) responsible for drafting, implementing, and enforcing St. Jude's document and e-mail retention policies, and provide a description of each individual's role in such endeavor. This interrogatory seeks to discover the identities and roles of both (a) lay employees responsible for drafting, implementing, and enforcing such policies, as well as (b) employees with technical expertise in the field of information technology who actually draft, implement, and/or enforce such policies as network administrators or in any similar capacity.

**RESPONSE:**

## II. REQUESTS FOR PRODUCTION

### REQUEST NO. 1

Produce copies of all written policies and procedures in place during 2015, 2016, and 2017 governing St. Jude's retention (whether by archiving, backing up, or otherwise) of e-mails and other documents. To the extent these policies and procedures are contained in documents

·with other, irrelevant content, the Trustee does no object to St. Jude redacting such other, irrelevant portions.

**RESPONSE:**

**REQUEST NO. 2**

Produce copies of all employee manuals, employee handbooks, and other similar documents from 2015, 2016, and 2017 that inform and/or instruct St. Jude employees regarding how, when, and/or why to store, delete, archive, back-up, or otherwise manage e-mail communications. The Trustee does not object to St. Jude redacting other, irrelevant portions of such documents.

**RESPONSE:**

**REQUEST NO. 3**

Produce all documents and communications containing, relating to, or providing for a litigation hold regarding Walnut Hill Physicians' Hospital. For purposes of this request, a "litigation hold" includes any document or communication provided to agents or employees related to or instructing them to preserve all forms of relevant information when litigation is reasonably anticipated. It may include, for example, a direction to employees instructing them not to delete, but to preserve, all e-mail communications potentially relevant to anticipated, pending, or actual litigation.

**RESPONSE:**

DATED at Dallas, Texas on this the 25th day of July, 2018.

**MUNSCH HARDT KOPF & HARR, P.C.**

By: ___/s/ *Julian P. Vasek*_____
       Davor Rukavina, Esq.
       Texas Bar No. 24030781
       Julian P. Vasek, Esq.
       Texas Bar No. 24170790
       3800 Ross Tower
       500 N. Akard Street
       Dallas, Texas 75201
       Telephone: (214) 855-7500
       Facsimile: (214) 855-7584

**ATTORNEYS FOR SCOTT M. SEIDEL, TRUSTEE**

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that, on this the 25th day of July, 2018, he caused true and correct copies of this document to be served by U.S. first class mail, postage prepaid, and by e-mail, on the following:

Samuel C. Wisotzkey, Esq.
Kohner, Mann, & Kailas, S.C.
4650 N. Port Washington Rd.
Milwaukee, WI 53212-1059
Email: swisotzkey@kmksc.com

John E. Johnson, Esq.
Padfield & Stout, L.L.P.
705 Ross Avenue
Dallas, Texas 75202
Email: jjohnson@padfieldstout.com

By: ___/s/ *Julian P. Vasek*_____
       Julian P. Vasek, Esq.

EXHIBIT P
Page 4 of 4



www.kmksc.com



Washington Building
Barnabas Business Center
4650 N. Port Washington Road
Milwaukee, WI 53212-1059
Telephone (414) 962-5110
Facsimile (414) 962-8725
Email kmksc@kmksc.com

August 3, 2018

**VIA EMAIL (jvasek@munsch.com)**
Julian P. Vasek, Esq.
Munsch Hardt
500 N. Akard Street, Suite 3800
Dallas, TX 75201

RE: *Seidel v. St. Jude Medical, S.C., Inc. (In re Walnut Hill Physicians' Hospital, LLC)*
Adv. No. 18-3033

Dear Mr. Vasek:

This responds to your July 25, 2018, letter, which was responding to our July 10, 2018 letter describing the email searches we conducted arising out of the court's ruling on June 21, 2018, and the subsequent order dated June 27, 2018.

Let us first reiterate, as noted in our July 10 letter that St. Jude searched for emails in good faith, consistent with our representations to the court and the court's order. While we remain willing to discuss appropriate additional searches, we believe your July 25 letter seeks to insist upon additional searches that go far beyond any reasonable bounds.

At the June 21, 2018, hearing, both the Trustee and the Court substantially limited the scope of email communications which St. Jude is obligated to search and, if responsive communications are discovered, produce. In that vein, to the extent your letter seeks to ignore these limitations and return to the broad discovery requests as written, we think your letter is inappropriate. The Trustee represented to the Court that your discovery requests were asking St. Jude to take "but a little bit of attorney time to go target certain people's emails and run certain word searches like Walnut Hill or like Rick Leonard (phonetic) or something like that. And if there's nothing that they can tell us that after a reasonable search they found nothing, no problem." (Tr. 21: 6-11) The Trustee further represented to the court that the Trustee was asking St. Jude to search emails of "five or ten employees." (Tr. 22: 5-6). Based on your representations that the Trustee was looking for simple searches of these "five or ten employees" the Court further limited the scope "If I need to be specific, its archived e-mails... But we're not talking about e-mails from the dawn of the e-mail era. We're talking about e-mails **14 months** ago. That's not terrible long--- **15, 16 months** ago." (Tr. 23:25-24:5)

The Trustee then confirmed that the above order was "absolutely" "broad enough" with regard to employees identified in Second Request Nos. 1 to 8. (Tr. 33:11-15)

St. Jude complied with the Court's order, searching its files for emails of the specifically identified sales employees, and the few other employees we understood might have been directly involved with the credit department, identifying seven total employee accounts to search, which was consistent with the Trustee's stated expectation at the hearing. Nonetheless, as referenced in our July 10 letter, because they appeared that they might have had specific communications with Walnut Hill in the preference period relating to the sale of goods, St. Jude is willing to expand the search to include two

*Listed in Martindale - Hubbell Bar Register of Preeminent Lawyers*

EXHIBIT Q
Page 1 of 3





Washington Building
Barnabas Business Center
4650 N. Port Washington Road
Milwaukee, WI 53212-1059
Telephone (414) 962-5110
Facsimile (414) 962-8725
Email kmksc@kmksc.com

www.kmksc.com

Julian P. Vasek, Esq.
August 3, 2018
Page 2

additional email accounts. Mark Sorensen (included in the list of your 7/25/18 letter), and a John Grimsley (not listed in your letter). Further, based on the limited emails you produced with your July 25, 2018 letter, it appears it may be appropriate to attempt to search Mark Todyrk. However, we have no reason to believe the thirty-nine other employee email accounts referenced in your 7/25/18 letter belonged to employees who would have had relevant communications with St. Jude regarding the ordinary course of business between the parties. Clearly, you presumably have listed these additional 41 employees because you have found emails that included these address, as you say. But expanding the accounts to be searched in this manner is wholly inconsistent with the limitations on the requests stated at the hearing. Unless you can explain why you believe any identified employee had a role whereby we could expect relevant communications, St. Jude will not agree to expand its search to include those employees.

Similarly, the list of your requested search terms far exceeds the scope of the stated expectations at the June 21 hearing. The Trustee identified Walnut Hill and Rick Leonard as reasonable search terms, and as to the identified sales people in Second Request Nos. 1-8, the Trustee confirmed that he sought "communications that mention the debtor." (Tr. 33:4-5) St. Jude's search terms amply met, and exceeded, these expectations. If you can articulate a reason that any of these search terms is relevant or necessary, and how such search terms are reasonable in light of the limited searches that were represented as sufficient at the hearing, we will consider your request.

As to what files are available for searching, it is our understanding that while St. Jude used email backup tapes prior to and for a period of time after St. Jude was acquired by Abbott, those backup tapes no longer exist and were solely available for disaster recovery purposes. In addition, St. Jude email has been migrated into Abbott's Office 365 tenant, a cloud-based, multi-tenant environment managed by Microsoft that does not utilize backup tapes. To further clarify our prior explanation, in October 2017, Abbott converted St. Jude employees to Abbott's global email retention policy which, as stated before, purges all email located in an employee's Inbox and Sent Items older than 30 days and all email located in user-created folders older than 15 months. Our email searches for those identified employees included all available folders within their mailbox at the time the searches were executed. Our client has informed us that, prior to October 2017, (when Abbott converted St. Jude email to comply with Abbott's global email retention policy) St. Jude employees had the ability (again solely dependent on the employee's choice) to manage their email mailbox and, if necessary, to save some emails in PST file format. While we believe our prior searches of folders were sufficient under the court order, and we understand that the conversion would have eliminated many of these retained PST files, it is possible that further searches might find additional emails if a St. Jude employee elected to save PSTs as a means of managing their email.

EXHIBIT Q
Page 2 of 3



www.kmksc.com



Washington Building
Barnabas Business Center
4650 N. Port Washington Road
Milwaukee, WI 53212-1059
Telephone (414) 962-5110
Facsimile (414) 962-8725
Email kmksc@kmksc.com

Julian P. Vasek, Esq.
August 3, 2018
Page 3

Finally, while we appreciate you providing 23 pages of emails from 2015 to early 2017, none of the
selected emails you produced have any relevancy to the claims and defenses at issue in this action.
There is certainly nothing there that would justify your apparent desire to expand the scope of
discovery beyond the parameters ordered by the Court at the June 21 hearing. If, in fact, you have any
communications that you believe are relevant, we would be happy to review them and discuss their
significance.

Very truly yours,

KOHNER, MANN & KAILAS, S.C.

Melinda A. Bialzak

MAB:pal

Cc:     Samuel C. Wisotzkey, Esq. (via email)
        John Johnson, Esq. (via email)

EXHIBIT Q
Page 3 of 3

UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

|  |  |  |
|---|---|---|
| In re: | ) | Chapter 7 |
|  | ) |  |
| WALNUT HILL PHYSICIANS' HOSPITAL, LLC, | ) | Case No. 17-32255-bjh |
|  | ) |  |
| Debtor. | ) |  |
|  | ) |  |
| SCOTT M. SEIDEL, TRUSTEE | ) |  |
|  | ) | Adv. Case No. 18-03033-bjh |
| Plaintiff, | ) |  |
|  | ) |  |
| v. | ) |  |
|  | ) |  |
| ST. JUDE MEDICAL S.C., INC., | ) |  |
|  | ) |  |
| Defendant. | ) |  |

## ST. JUDE MEDICAL S.C., INC.'S RESPONSES TO TRUSTEE'S SECOND SET OF INTERROGATORIES AND FOURTH SET OF REQUESTS FOR PRODUCTION TO ST. JUDE MEDICAL S.C., INC.

TO PLAINTIFF SCOTT M. SEIDEL, TRUSTEE, by and through its attorneys, Munsch Hardt Kopf & Harr, P.C., Attn: Julian P. Vasek, 3800 Lincoln Plaza, 500 N. Akard Street, Dallas, Texas 75201

Defendant St. Jude Medical S.C., Inc. ("St. Jude"), hereby submits responses to Trustee's

Second Set of Interrogatories and Fourth Requests for Production of Documents (the "Requests")

as follows:

## I. SECOND SET OF INTERROGATORIES

### INTERROGATORY NO. 1

Provide the name, department, title, and business address of the St. Jude employee(s) responsible for drafting, implementing, and enforcing St. Jude's document and e-mail retention policies, and provide a description of each individual's role in such endeavor. This interrogatory seeks to discover the identities and roles of both (a) lay employees responsible for drafting, implementing, and enforcing such policies, as well as (b) employees with technical expertise in the field of information technology who actually draft, implement, and/or enforce such policies as network administrators or in any similar capacity.

**RESPONSE:** As set out more fully in its Motion for a Protective Order, St. Jude objects to this Interrogatory on the grounds that it seeks information that is not relevant to any claim or defense remaining in this action. It is unduly burdensome to ask St. Jude to undertake any further investigation with regard to e-mail communications, as St. Jude fully complied with the Court's prior order, St. Jude has withdrawn all claims and defenses which implicate ordinary course concerns to which such communications could be relevant, and St. Jude has filed a motion for summary judgment which shows, based on undisputed facts, that the amount in controversy, if any, is minimal, such that any further discovery is disproportionate that amount. St. Jude further objects to this Interrogatory on the grounds that it seeks confidential and proprietary information.

## II. FOURTH SET OF REQUESTS FOR PRODUCTION OF DOCUMENTS

### REQUEST NO. 1

Produce copies of all written policies and procedures in place during 2015, 2016, and 2017 governing St. Jude's retention (whether by archiving, backing up, or otherwise) of e-mails and

2

other documents. To the extent these policies and procedures are contained in documents with other, irrelevant content, the Trustee does no object to St. Jude redacting such other, irrelevant portions.

**RESPONSE:** As set out more fully in its Motion for a Protective Order, St. Jude objects to this Interrogatory on the grounds that it seeks information that is not relevant to any claim or defense remaining in this action. It is unduly burdensome to ask St. Jude to undertake any further investigation with regard to e-mail communications, as St. Jude fully complied with the Court's prior order, St. Jude has withdrawn all claims and defenses which implicate ordinary course concerns to which such communications could be relevant, and St. Jude has filed a motion for summary judgment which shows, based on undisputed facts, that the amount in controversy, if any, is minimal, such that any further discovery is disproportionate to that amount. St. Jude further objects to this Interrogatory on the grounds that it seeks confidential and proprietary documents.

## REQUEST NO. 2

Produce copies of all employee manuals, employee handbooks, and other similar documents from 2015, 2016, and 2017 that inform and/or instruct St. Jude employees regarding how, when, and/or why to store, delete, archive, back-up, or otherwise manage e-mail communications. The Trustee does not object to St. Jude redacting other, irrelevant portions of such documents.

**RESPONSE:** As set out more fully in its Motion for a Protective Order, St. Jude objects to this Interrogatory on the grounds that it seeks information that is not relevant to any claim or defense remaining in this action. It is unduly burdensome to ask St. Jude to undertake any further investigation with regard to e-mail communications, as St. Jude fully complied with the Court's

prior order, St. Jude has withdrawn all claims and defenses which implicate ordinary course concerns to which such communications could be relevant, and St. Jude has filed a motion for summary judgment which shows, based on undisputed facts, that the amount in controversy, if any, is minimal, such that any further discovery is disproportionate to that amount. St. Jude further objects to this Interrogatory on the grounds that it seeks confidential and proprietary documents.

## REQUEST NO. 3

Produce all documents and communications containing, relating to, or providing for a litigation hold regarding Walnut Hill Physicians' Hospital. For purposes of this request, a "litigation hold" includes any document or communication provided to agents or employees related to or instructing them to preserve all forms of relevant information when litigation is reasonably anticipated. It may include, for example, a direction to employees instructing them not to delete, but to preserve, all e-mail communications potentially relevant to anticipated, pending, or actual litigation.

**RESPONSE:** As set out more fully in its Motion for a Protective Order, St. Jude objects to this Interrogatory on the grounds that it seeks information that is not relevant to any claim or defense remaining in this action. It is unduly burdensome to ask St. Jude to undertake any further investigation with regard to e-mail communications, as St. Jude fully complied with the Court's prior order, St. Jude has withdrawn all claims and defenses which implicate ordinary course concerns to which such communications could be relevant, and St. Jude has filed a motion for summary judgment which shows, based on undisputed facts, that the amount in controversy, if any, is minimal, such that any further discovery is disproportionate. St. Jude further objects to this Interrogatory on the grounds that it seeks confidential and proprietary documents.

4

AS TO OBJECTIONS AND RESPONSES TO REQUEST FOR PRODUCTION OF
DOCUMENTS:

KOHNER, MANN & KAILAS, S.C.

Attorneys for St. Jude Medical S.C., Inc.

By:_____

Samuel C. Wisotzkey
Attorney No. 1029537
Melinda A. Bialzik
Attorney No. 1034739

P. O. Office Address:
Barnabas Business Center
4650 North Port Washington Road
Milwaukee, WI 53212-1059
Telephone: (414) 962-5110
Facsimile: (414) 962-8725

5

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that, on this the 24th day of August, 2018, he caused true and correct copies of this document to be served by Email and Federal Express on the following:

Counsel Scott Seidel, Trustee

Julian P. Vasek
Munsch Hardt Kopf & Harr, P.C.,
3800 Lincoln Plaza
500 N. Akard Street
Dallas, Texas 75201

_____
Melinda A. Bialzik

6

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| In re: | § | |
| | § | |
| WALNUT HILL PHYSICIANS' | § | |
| HOSPITAL, LLC, | § | CASE NO. 17-32255-bjh-7 |
| | § | |
| Debtor. | § | |
| | § | |

## DECLARATION OF RICK LEONARD

The undersigned hereby states the following, under oath and under penalty of perjury pursuant to the laws of the United States of America and the State of Texas:

1.    My name is Rick Leonard. I am over 21 years of age, have never been convicted of a felony or crime of moral turpitude, and am otherwise fully qualified to give this Declaration. Everything I say in this Declaration is on my personal knowledge.

2.    Prior to its bankruptcy filing, I was the Director of Facility Operations for Walnut Hill Physicians' Hospital, LLC (the "Hospital"). As part of my duties as such, I was in charge of the Hospital's purchase of medical equipment, goods, and supplies (excluding pharmaceuticals). As such, I was in charge of the Hospital's purchases of medical supplies and goods from St. Jude Medical S.C., Inc. ("St. Jude").

3.    In May, 2017, St. Jude mistakenly double shipped medical goods and supplies to the Hospital. Namely, the Hospital ordered certain goods and supplies, which St. Jude appropriately shipped, but then St. Jude shipped the same goods and supplies again (the "Subject Supplies"), because the St. Jude sales representative, without the knowledge of the hospital, placed a duplicate order of the same supplies to be delivered to the hospital. The Hospital never ordered the Subject Supplies, and had no use or need of them, and they provided no value to the

EXHIBIT S
Page 1 of 8

Hospital. This is because I believed that, in fairness and pursuant to our relationship, the Hospital was bound to return the Subject Supplies.

4.      I initiated the process with St. Jude for the return of the Subject Supplies. For reasons never explained, St. Jude did not process the return goods authorization (RGA) paperwork to allow for the product pickup and return. The intervening bankruptcy filing then ended these discussions.

5.      Believing that the Subject Supplies in good faith belonged to St. Jude, since the Hospital did not order them and since they were shipped in error, I instructed that the Subject Supplies be segregated from the remaining supplies and stored under lock and key, pending their retrieval by St. Jude. As a result, when the Trustee sold the Hospital's medical goods and supplies, the Subject Supplies were not included in the sale. In March, 2018, at the request of the Trustee, I showed Thomas Berghman, counsel for the Trustee, where the Subject Supplies were stored. At that time, it appeared to me that all of the Subject Supplies were still stored there, as I had left them in late May, 2017 or early June, 2017.

6.      To the best of my knowledge and belief, attached to this Declaration as Exhibits 1, 2, and 3 are the three invoices from St. Jude representing the Subject Supplies. These invoices were issued in error, as being for the Subject Supplies which the Hospital did not order and which were shipped in error, and which provided no value to the Hospital for the reasons stated above.

7.      Although I am not an attorney and I am not offering a legal opinion, it was always my understanding that the Debtor purchased many supplies and goods from St. Jude on consignment, as the Debtor did from several other vendors and as would have been standard in the industry. This is because, many times, a hospital needs to have certain goods and supplies on

hand for immediate use or surgery, but which the hospital may actually never use before the goods and supplies exceed their expiration date. In these instances, the hospital will have a stock of goods and supplies available, but will become liable to pay for something (or to replace it with new stock) only when it is actually used.

8.      A heart valve is an example. Heart valves come in different sizes and of different types. Emergency heart surgery may be required, and a hospital may not have enough time to order the correct heart valve. Thus, it would have a stock of heart valves available to it, either on site or with trunk stock, for immediate use. Then, when used, a hospital would either pay for the heart valve or replace its stock for the one used by purchasing a replacement. The Hospital did this as well with various vendors, including St. Jude, both through goods on site and through trunk stock delivered by a salesman.

Executed under penalty of perjury on the ___12th___ day of September, 2018.

RICK LEONARD

# Abbott

Abbott Laboratories Inc
6300 Bee Cave Road Bldg Two, Ste 100
Austin TX 78746

For Inquiries: 1-800-654-6910 (Accounts Receivable)
1-855-478-5833 (Customer Service)
Bill To: 1000200771 / DO NOT USE

WALNUT HILL MEDICAL CENTER
ATTN: ACCOUNTS PAYABLE
7515 GREENVILLE AVE STE 710.
DALLAS TX 75231-3848

## INVOICE
Confidential - **DUPLICATE**

| | |
|---|---|
| Our GLN: | 5414734000017 |
| Payor: | 1000200771 / DO NOT USE |
| Sold To: | 1000188210 / DO NOT USE. |
| | WALNUT HILL MEDICAL CENTER |
| | 7502 GREENVILLE AVE |
| | DALLAS TX 75231-3802 |

Page: 1/3

| | |
|---|---|
| Ship To: | 1000188210 / DO NOT USE |
| | WALNUT HILL MEDICAL CENTER |
| | 7502 GREENVILLE AVE |
| | DALLAS TX 75231-3802 |

Remit To: Abbott Laboratories Inc
22400 Network Place
Chicago IL 60673-1224

Our Remit To GLN: 5414734000123
Our Tax ID: 36-4184946

| INVOICE: | 9006807143 | INV. DATE: | 05/18/2017 | TERMS: | Net 30 DAYS |
|---|---|---|---|---|---|
| SALES ORDER: | 7005948340 | SHIP DATE: | 05/17/2017 | PURCHASE ORDER: 11757 | |
| SHIP TERMS: | standard | SHIP VIA: | FEDEX | BILL OF LADING: | 729384007313 |

| LINE # | MATERIAL/MODEL # | Sales Person | UM | QTY | TAX | PRICE | TOTAL PRICE |
|---|---|---|---|---|---|---|---|
| 10 | 100003331 100003331 | G Campbell/Stamme r/Genovese Team | EA | 10.000 | 862.12 | 1,045.00 | 10,450.00 |
| | Nav X Patch, EnSite Velocity, Large Lot Numbers: 704120 | | | | | | |
| 20 | 100119266 65785 | G Campbell/Stamme r/Genovese Team | EA | 6.000 | 49.50 | 100.00 | 600.00 |
| | DEEP FREE COOL POINT TUBING SET ROHS Lot Numbers: H1105779 | | | | | | |
| 30 | 100135684 407439 | G Campbell/Stamme r/Genovese Team | EA | 4.000 | 66.00 | 200.00 | 800.00 |

**General Invoice Discount/Rebate/Price Reduction/Warranty Disclosure for Buyers**
The prices for items reflected on this invoice may include discounts, credits, warranty credits or other price reductions, and may be
subject to subsequent rebates or other price reductions or adjustments (collectively Reductions in Price). The items reflected in this
invoice may also be part of a bundled sale arrangement, whereby the receipt of goods at a reduced or no charge is conditioned
upon the purchase of other goods reflected in this and/or another invoice or document. Buyer may have an obligation to report, in its
cost reports or claims submitted for reimbursement, and provide to federal or state agencies, information concerning any Reductions
in Price, pursuant to 42 U.S.C. 1320a-7b(b)(3)(A) (the discount exception to the Anti-Kickback Statute (AKS)), 42 C F R
1001.952(h) (the discount safe harbor to the AKS), 42 C.F.R 1001.952(g)(the warranty safe harbor to the AKS), other federal or state
laws and/or agreements with third-party payers. Buyer may contact Abbott Laboratories Inc. to request additional detailed
information which Buyer may need to comply with such obligations. Buyer should retain this invoice and any other documentation
regarding Reductions in Price from Abbott Laboratories Inc. and make such information available to federal or state health care
programs upon request and as required by law or regulation.

DefStJudeMSJAppx.0111

**Abbott**

**INVOICE**
Confidential - **DUPLICATE**

Abbot Laboratories Inc
6300 Bee Cave Road Bldg Two, Ste 100
Austin TX 78746

For Inquiries: 1-800-654-6910 (Accounts Receivable)
1-855-478-5833 (Customer Service)
Bill To: 1000200771 / DO NOT USE

| Our GLN: | 5414734000017 | |
|---|---|---|
| Payer: | 1000200771 / DO NOT USE | Page: 2/3 |
| Sold To: | 1000188210 / DO NOT USE | |
| | WALNUT HILL MEDICAL CENTER | |
| | 7502 GREENVILLE AVE | |
| | DALLAS TX 75231-3802 | |

WALNUT HILL MEDICAL CENTER
ATTN ACCOUNTS PAYABLE
7515 GREENVILLE AVE STE 710
DALLAS TX 75231-3848

Ship To: 1000188210 / DO NOT USE
WALNUT HILL MEDICAL CENTER
7502 GREENVILLE AVE
DALLAS TX 75231-3802

| Remit To: | Abbott Laboratories Inc
22400 Network Place
Chicago IL 60673-1224 | | Our Remit To GLN:
Our Tax ID: | 5414734000123
36-4184946 |
|---|---|---|---|---|

| INVOICE: | 9006807143 | INV. DATE: | 05/18/2017 | TERMS: | Net 30 DAYS | | | |
|---|---|---|---|---|---|---|---|---|
| SALES ORDER: | 7005948340 | SHIP DATE. | 05/17/2017 | PURCHASE ORDER. 11757 | | | | |
| SHIP TERMS: | standard | SHIP VIA: | FEDEX | BILL OF LADING: | 729384007313 | | | |

| LINE # | MATERIAL/MODEL # | | Sales Person | UM | QTY | TAX | PRICE | TOTAL PRICE |
|---|---|---|---|---|---|---|---|---|
| | SWARTZ BRD TRNS INTRO 8F 63CM-SL1
Lot Numbers: 5932503 | | | | | | | |
| 40 | 100010011
402804 | | G
Campbell/Stamme
r/Genovese Team | EA | 6.000 | 742.50 | 1,500.00 | 9,000.00 |
| | R> SP DUODECA 7F 99cm 90/180deg 1/4 G2
Lot Numbers: 5766040,5797201 | | | | | | | |
| 50 | 100132716
PN-004 075 | | G
Campbell/Stamme
r/Genovese Team | EA | 6.000 | 1,460.25 | 2,950.00 | 17,700.00 |
| | Sterile TactiCath 75mm World wide
Lot Numbers: 5778517 | | | | | | | |
| 60 | 100132097
408310 | | G
Campbell/Stamme
r/Genovese Team | EA | 2.000 | 147.68 | 895.00 | 1,790.00 |
| | AGILIS NXT 8.5F 71CM MED CRL,G2
Lot Numbers: 5920743,5895475 | | | | | | | |
| 70 | 100081921
401860 | | G
Campbell/Stamme
r/Genovese Team | EA | 6.000 | 54.45 | 110.00 | 660.00 |
| | FCOD QUAD 5F 120cm CRD2 5/5 G2
Lot Numbers: 5918675 | | | | | | | |

DefStJudeMSJApp'x.0112

SJM-001264
EXHIBIT S
Page 5 of 8


**Abbott**

# INVOICE
Confidential  -  **DUPLICATE**

Abbott Laboratories Inc
6300 Bee Cave Bldg Two, Ste 100
Austin TX 78746

For Inquiries:   1-800-654-6910 (Accounts Receivable)
                 1-855-478-5833 (Customer Service)
Bill To:   1000200771 / DO NOT USE

WALNUT HILL MEDICAL CENTER
AT N: ACCOUNTS PAYABLE
7515 GREENVILLE AVE STE 710
DALLAS TX 75231-3848

| | |
|---|---|
| Our GLN: | 5411734000017 |
| Payer: | 1000200771 / DO NOT USE |
| Sold To: | 1000188210 / DO NOT USE |
| | WALNUT HILL MEDICAL CENTER |
| | 7502 GREENVILLE AVE |
| | DALLAS TX 75231-3802 |

Page: 3/3

| | |
|---|---|
| Ship To: | 1000188210 / DO NOT USE |
| | WALNUT HILL MEDICAL CENTER |
| | 7502 GREENVILLE AVE |
| | DALLAS TX 75231-3802 |

Remit To:   Abbott Laboratories Inc
            22400 Network Place
            Chicago IL  60673-1224

Our Remit To GLN:   5411734000123
Our Tax ID:         36-4184946

| INVOICE: | 9006807143 | INV. DATE: | 05/18/2017 | TERMS: | Net 30 DAYS |
|---|---|---|---|---|---|
| SALES ORDER: | 7005948340 | SHIP DATE: | 05/17/2017 | PURCHASE ORDER: 11757 | |
| SHIP TERMS: | standard | SHIP VIA: | FEDEX | BILL OF LADING: | 729384007313 |

| LINE # | MATERIAL/MODEL # | Sales Person | UM | QTY | TAX | PRICE | TOTAL PRICE |
|---|---|---|---|---|---|---|---|
| 80 | 100100513 D087031 | G Campbell/Stamme r/Genovese Team | EA | 2.000 | 396.00 | 2,400.00 | 4,800.00 |
| | ViewFlex VF04 RoHS Catheter Final ASSY Lot Numbers: 5892382 | | | | | | |
| 90 | 100007704 401932 | G Campbell/Stamme r/Genovese Team | EA | 2.000 | 181.50 | 1,100.00 | 2,200.00 |
| | LWOC DUODECA 7F 95cm SUP LG CURL 2/8 G2 Lot Numbers: 5860255 | | | | | | |
| 100 | 100087334 407551 | M Child | BX | 2.000 | 16.50 | 100.00 | 200.00 |
| | Ultimum EV Intro Set 8F 12cm Lot Numbers: 5930502 | | | | | | |

| | | | | | |
|---|---|---|---|---|---|
| | Currency: | USD | | SubTotal: | 48,200.00 |
| | | | | Total Tax: | 3,976.50 |
| | | | | Invoice Total: | 52,176.50 |

The above amount is due as per the terms of the invoice

DefStJudeMSJAppx.0113

SJM-001265

**ST. JUDE MEDICAL**

# INVOICE
**"D U P L I C A T E"**                                     Confidential

St. Jude Medical S C., INC.
6300 Bee Cave Road Bldg Two, Ste 100
Austin TX 78746
USA

| | |
|---|---|
| SJM GLN: | 5414734000017 |
| Payer: | 1000200771 / DO NOT USE          Page: 1/1 |

For Inquiries:   1-800-654-6910 (Accounts Receivable)
                      1-855-478-5833 (Customer Service)
Bill To:   1000200771 / DO NOT USE

Sold To:   1000188210 / DO NOT USE
                WALNUT HILL MEDICAL CENTER
                7502 GREENVILLE AVE
                DALLAS TX  75231-3802

WALNUT HILL MEDICAL CENTER
ATTN: ACCOUNTS PAYABLE
7515 GREENVILLE AVE STE 710
DALLAS TX 75231-3848

Ship To:   1000188210 / DO NOT USE
                WALNUT HILL MEDICAL CENTER
                7502 GREENVILLE AVE
                DALLAS TX  75231-3802

Remit To:  St Jude Medical
                22400 Network Place
                Chicago IL  60673-1224

SJM Remit To GLN:   5414734000123
SJM Tax ID:           41-1625029

| INVOICE. 9006810803 | INV. DATE: 05/19/2017 | TERMS: Net 30 DAYS |
|---|---|---|
| SALES ORDER   7005948340 | SHIP DATE   05/17/2017 | PURCHASE ORDER: 11757 |
| SHIP TERMS.      standard | SHIP VIA:   FEDEX STD | BILL OF LADING   657992586044 |

| LINE # | MATERIAL/MODEL # | Sales Person | UM | QTY | TAX | PRICE | TOTAL PRICE |
|---|---|---|---|---|---|---|---|
| 110 | 100089120 A701125 | G Campbell/Stammer/Genovese Team | EA | 2.000 | 272.25 | 1,650.00 | 3,300.00 |

Pkg FlexAbility BiD Curve D-FUS
Lot Numbers: 5936948

| | | |
|---|---|---|
| Currency: | USD | SubTotal:   3,300.00 |
| | | Total Tax:   272.25 |
| | | Invoice Total.   3,572.25 |
| | | The above amount is due as per the terms of the invoice |

**General Invoice Discount/Rebate/Price Reduction/Warranty Disclosure for Buyers**

The prices for items reflected on this invoice may include discounts, credits, warranty credits or other price reductions, and may be subject to subsequent rebates or other price reductions or adjustments (collectively Reductions in Price). The items reflected in this invoice may also be part of a bundled sale arrangement, whereby the receipt of goods at a reduced or no charge is conditioned upon the purchase of other goods reflected in this and/or another invoice or document. Buyer may have an obligation to report, in its cost reports or claims submitted for reimbursement, and provide to federal or state agencies, information concerning any Reductions in Price, pursuant to 42 U.S.C. 1320a-7b(b)(3)(A) (the discount exception to the Anti-Kickback Statute (AKS)), 42 C.F.R. 1001.952(h) (the discount safe harbor to the AKS), 42 C.F.R 1001.952(g)(the warranty safe harbor to the AKS), other federalor state laws, and/or agreements with third-party payers. Buyer may contact St. Jude Medical to request additional detailed information which Buyer may need to comply with such obligations. Buyer should retain this invoice and any other documentation regarding Reductions in Price from St. Jude Medical and make such information available to federal or or state health care programs upon request and as required by law or regulation.

DefStJudeMSJApp'x.0116

SJM-000112

ST. JUDE MEDICAL

**INVOICE**
**DUPLICATE**    Confidential

St. Jude Medical S.C., INC.
6300 Bee Cave Road Bldg Two, Ste 100
Austin TX 78746
USA

For Inquiries:    1-800-654-6910 (Accounts Receivable)
1-855-478-5833 (Customer Service)
Bill To:    1000200771 / DO NOT USE

SJM GLN:    5414734000017
Payer:    1000200771 / DO NOT USE    Page: 1/1

Sold To:    1000188210 / DO NOT USE
WALNUT HILL MEDICAL CENTER
7502 GREENVILLE AVE
DALLAS TX 75231-3802

WALNUT HILL MEDICAL CENTER
ATTN: ACCOUNTS PAYABLE
7515 GREENVILLE AVE STE 710
DALLAS TX 75231-3848

Ship To:    1000188210 / DO NOT USE
WALNUT HILL MEDICAL CENTER
7502 GREENVILLE AVE
DALLAS TX 75231-3802

Remit To:    St Jude Medical
22400 Network Place
Chicago IL 60673-1224

SJM Remit To GLN:    5414734000123
SJM Tax ID:    41-1625029

| INVOICE: | 9006820085 | INV. DATE: | 05/23/2017 | TERMS: | Net 30 DAYS | | | |
|---|---|---|---|---|---|---|---|---|
| SALES ORDER: | 7005955623 | SHIP DATE: | 05/23/2017 | PURCHASE ORDER: 11757 | | | | |
| SHIP TERMS | standard | SHIP VIA: | FEDEX | BILL OF LADING: | 646422903615 | | | |
| LINE # | MATERIAL/MODEL # | | Sales Person | UM | QTY | TAX | PRICE | TOTAL PRICE |
| 110 | 100089120 | | G | EA | 2.000 | 272.25 | 1,650.00 | 3,300.00 |
| | A701125 | | Campbell/Stamme | | | | | |
| | | | r/Genovese Team | | | | | |
| Pkg FlexAbility BID Curve D-FUS | | | | | | | | |
| Lot Numbers: 5957350 | | | | | | | | |

Currency:    USD

SubTotal:    3,300.00
Total Tax:    272.25
Invoice Total:    3,572.25

The above amount is due as per the terms of the invoice

**General Invoice Discount/Rebate/Price Reduction/Warranty Disclosure for Buyers**

The prices for items reflected on this invoice may include discounts, credits, warranty credits or other price reductions, and may be subject to subsequent rebates or other price reductions or adjustments (collectively Reductions in Price). The items reflected in this invoice may also be part of a bundled sale arrangement, whereby the receipt of goods at a reduced or no charge is conditioned upon the purchase of other goods reflected in this and/or another invoice or document. Buyer may have an obligation to report, in its cost reports or claims submitted for reimbursement. and provide to federal or state agencies, information concerning any Reductions in Price, pursuant to 42 U.S.C. 1320a-7b(b)(3)(A) (the discount exception to the Anti-Kickback Statute (AKS)), 42 C.F.R. 1001.952(h) (the discount safe harbor to the AKS), 42 C.F.R 1001.952(g)(the warranty safe harbor to the AKS), other federalor state laws, and/or agreements with third-party payers. Buyer may contact St. Jude Medical to request additional detailed information which Buyer may need to comply with such obligations. Buyer should retain this invoice and any other documentation regarding Reductions in Price from St. Jude Medical and make such information available to federal or or state health care programs upon request and as required by law or regulation.

DefStJudeMSJApp'x.0126

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

| | | |
|---|---|---|
| In re: | § | |
| | § | Chapter 7 |
| WALNUT HILL PHYSICIANS' | § | |
| HOSPITAL, LLC, | § | Case No. 17-32255-bjh-7 |
| | § | |
| Debtor. | § | |
| | § | |
| SCOTT M. SEIDEL, TRUSTEE, | § | |
| | § | |
| Plaintiff, | § | |
| | § | Adv. Pro. No. 18-03033-bjh |
| v. | § | |
| | § | |
| ST. JUDE MEDICAL S.C., INC., | § | |
| | § | |
| Defendant. | § | |

### DECLARATION OF JULIAN P. VASEK

I, Julian P. Vasek, hereby declare the following and hereby certify, under penalty of perjury pursuant to the laws of the United States and the State of Texas, that the following is true and correct to the best of my knowledge and belief:

1. My name is Julian Vasek, I am over the age of 18 years, and am competent and otherwise qualified to make this Declaration. I have personal knowledge of the matters stated herein and they are all true and correct to the best of my knowledge.

2. I am counsel for Scott M. Seidel, Trustee (the "Trustee"), the chapter 7 trustee in the above styled and numbered bankruptcy case (the "Bankruptcy Case") of Walnut Hill Physicians' Hospital, LLC (the "Debtor"), and the plaintiff this the above styled and numbered adversary proceeding (the "Adversary Proceeding") filed against St. Jude Medical S.C. Inc. ("St. Jude").

DECLARATION OF JULIAN P. VASEK                                    Page 1

3. I am submitting this Declaration as part of the *Trustee's Appendix In Support of*

*(A) Motion for Contempt, for Sanctions, and to Compel Production of Documents and Answers*

*to Interrogatories, and (B) Response to Motion for Protective Order* (the "Appendix").

4. Following a hearing on June 21, 2018, the Court entered its *Order Granting in*

*Part and Denying in Part Trustee's Motion to Compel Discovery Responses and Production*

(Dkt. No. 23, the "Order"). Among other things, the Order provided as follows:

> ORDERED that St. Jude's objections to First RFP No. 1, First RFP No. 2, First RFP No. 3, First RFP No. 4 (except as to work product as to exhibits St. Jude intends to offer), First RFP No. 5, First RFP No. 6, Second RFP No. 1, Second RFP No. 2, Second RFP No. 3, Second RFP No. 4, Second RFP No. 5, Second RFP No. 6, Second RFP No. 7, and Second RFP No. 8 are OVERRULED; it is further—

* * *

> ORDERED that St. Jude must search for and produce, to the extent they exist: archived emails responsive to First RFP No. 1, First RFP No. 2, First RFP No. 3, First RFP No. 4, First RFP No. 5, First RFP No. 6, Second RFP No. 1, Second RFP No. 2, Second RFP No. 3, Second RFP No. 4, Second RFP No. 5, Second RFP No. 6, Second RFP No. 7, and Second RFP No. 8 ...

A true and correct copy of the Order is included in the Appendix as Exhibit L.

5. The requests for production referenced in these decretal paragraphs seek

production of email communications as follows:

### REQUEST NO. 1

All Documents and Communications between St. Jude and the Debtor which relate to or evidence an agreement between the parties for St. Jude to provide Goods to the Debtor including, specifically, any Document or Communication by which the Debtor agreed to pay for the same.

Exhibit B, p. 9.

### REQUEST NO. 2

All Documents and Communications within the one (1) year period prior to the Petition Date that detail shipments of Goods from St. Jude to the Debtor. Include

the Good shipped, the prices, the date of shipment, and the date the Debtor ordered the Goods.

*Id.*

### REQUEST NO. 3

All Documents and Communications between the Debtor and St. Jude within the one (1) year prior to the Petition Date, including any such Documents and Communications related to or evidencing any payment by the Debtor to St. Jude.

*Id.*

### REQUEST NO. 4

All Documents and Communications related to any assertion in the Motion, including all Documents and Communications that St. Jude will offer into evidence at any hearing on the Motion.

*Id.*

### REQUEST NO. 5

All Documents and Communications between you and any third party related to any demand for payment, claim submitted, or payment received, by St. Jude against or from such third party, related to, for, or on account of the Debtor's failure to pay for any of the Goods the subject of the Motion, including as may be related to any guarantor, insurer, letter of credit issuer, co-obligor, or indemnitor.

*Id.*

### REQUEST NO. 6

All Documents and Communications that support your answers to the Interrogatories not otherwise requested in another Request.

Exhibit B, p. 10.

### REQUEST NO. 3

All Communications and Documents between you, on the one hand, and the "Campbell" referred to on your invoice number 9006810804, on the other hand, related to, referring to, or mentioning the Debtor, including any invoice between you and he/she related to any goods or products sold, provided to, consigned, or otherwise transferred to the Debtor or to any patient of the Debtor's.

Exhibit C, p. 4.

### REQUEST NO. 5

All Communications and Documents between you, on the one hand, and the "Stamme" referred to on your invoice number 9006810804, on the other hand, related to, referring to, or mentioning the Debtor, including any invoice between you and he/she related to any goods or products sold, provided to, consigned, or otherwise transferred to the Debtor or to any patient of the Debtor's.

Exhibit C, p. 5.

### REQUEST NO. 7

All Communications and Documents between you, on the one hand, and the "M Child" referred to on your invoice number 9006810804, on the other hand, related to, referring to, or mentioning the Debtor, including any invoice between you and he/she related to any goods or products sold, provided to, consigned, or otherwise transferred to the Debtor or to any patient of the Debtor's.

*Id.*

6. On July 9, 2018, after the Trustee granted an agreed extension, St. Jude purportedly produced emails responsive to these requests. But much to the Trustee's surprise, St. Jude produced a mere sixteen pages of emails. I conveyed the Trustee's disbelief in a letter to St. Jude dated July 10, 2018. A true and correct copy of the letter is included in the Appendix as Exhibit M. In that letter, the Trustee then asked St. Jude to confirm whether it intended to broaden its search.

7. St. Jude responded in a letter later the same day, a true and correct copy of which is included in the Appendix as Exhibit N. The letter revealed that St. Jude only utilized extremely limited search terms and only searched the emails of a handful of St. Jude employees. In reliance on St. Jude's alleged policy that "St. Jude emails were generally only preserved for 30 days," St. Jude claimed it was "not surprised that there are few responsive emails that we have located to date." Nevertheless, St. Jude asked the Trustee to recommend additional search terms.

8. The Trustee responded by letter dated July 25, 2018, a true and correct copy of which is included in the Appendix as Exhibit O. The letter begins by addressing the Trustee's confusion about St. Jude's alleged document retention policy. For St. Jude to say that emails are

DECLARATION OF JULIAN P. VASEK                                                          Page 4

not "preserved" is not the same thing as to say they are actively deleted forever from anywhere they might be found. The Trustee therefore requested clarification. The Trustee also suggested additional search parameters, as St. Jude requested.

9.    In addition to the letter, the Trustee served his *Second Set of Interrogatories and Fourth Set of Requests for Production to St. Jude Medical S.C., Inc.* at the same time, a true and correct copy of which is included in the Appendix as Exhibit P. These requests and interrogatories seek the following information and documents:

### INTERROGATORY NO. 1
Provide the name, department, title, and business address of the St. Jude employee(s) responsible for drafting, implementing, and enforcing St. Jude's document and e-mail retention policies, and provide a description of each individual's role in such endeavor. This interrogatory seeks to discover the identities and roles of both (a) lay employees responsible for drafting, implementing, and enforcing such policies, as well as (b) employees with technical expertise in the field of information technology who actually draft, implement, and/or enforce such policies as network administrators or in any similar capacity.

Exhibit P, p. 2.

### REQUEST NO 1.
Produce copies of all written policies and procedures in place during 2015, 2016, and 2017 governing St. Jude's retention (whether by archiving, backing up, or otherwise) of emails and other documents. To the extent these policies and procedures are contained in documents with other, irrelevant content, the Trustee does no object to St. Jude redacting such other, irrelevant portions.

*Id.*

### REQUEST NO. 2
Produce copies of all employee manuals, employee handbooks, and other similar documents from 2015, 2016, and 2017 that inform and/or instruct St. Jude employees regarding how, when, and/or why to store, delete, archive, back-up, or otherwise manage e-mail communications. The Trustee does not object to St. Jude redacting other, irrelevant portions of such documents.

Exhibit P, p. 3.

EXHIBIT T
Page 5 of 8

**REQUEST NO. 3**

Produce all documents and communications containing, relating to, or providing for a litigation hold regarding Walnut Hill Physicians' Hospital. For purposes of this request, a "litigation hold" includes any document or communication provided to agents or employees related to or instructing them to preserve all forms of relevant information when litigation is reasonably anticipated. It may include, for example, a direction to employees instructing them not to delete, but to preserve, all e-mail communications potentially relevant to anticipated, pending, or actual litigation.

*Id.*

10. St. Jude responded to the Trustee's letter on August 3, 2018, a true and correct copy of which response is included in the Appendix as Exhibit Q. While St. Jude ostensibly claimed that it is "willing to discuss appropriate additional searches", it is clear that St. Jude does not intend to comply with the Court's Order. The Trustee proposed entirely reasonable search parameters, and St. Jude both refused to utilize them and declined to propose any alternative.

11. Since that time, the Trustee has repeatedly asked St. Jude for a discovery conference. The Trustee's counsel has sought to talk with St. Jude by telephone and in person. After I agreed to the extraordinary condition of St. Jude having a court reporter transcribe the conference, St. Jude finally agreed to have the discovery conference with me on September 4, 2018. Unsurprisingly given St. Jude's repeated failures, nothing came of this 45-minute-long conference.

12. St. Jude's August 3 letter also purported to shed additional light on St. Jude's document retention policy. Exhibit Q, p. 2. This time, instead of saying that emails are not "retained", St. Jude explained that it was acquired by Abbot Laboratories, Inc. ("Abbott") in January 2017. The letter states that Abbot "purges all email located in an employee's Inbox and Sent Items older than 30 days ...." *Id.* Again, this is doublespeak. The fact that an email is purged from an Inbox does not necessarily mean that no copy of it exists anywhere. The Trustee

DECLARATION OF JULIAN P. VASEK

Page 6

still has no idea what exactly St. Jude's email retention policy is, nor whether emails exist to be searched.

13.     Interestingly, St. Jude also stated that all backup tapes of its pre-Abbot emails "no longer exist". But as with every statement St. Jude has made about its document retention policy, this statement is equivocal. It could mean that St. Jude intentionally destroyed the backup tapes, or it could mean that they were lost or accidentally damaged. St. Jude's refusal to state clearly the terms of its document retention policy is suspicious to say the least. If emails are actively destroyed such that no copies exist anywhere after only 30 days, then that raises serious questions about spoliation.

14.     On August 24, 2018, St. Jude responded to the Trustee's *Second Set of Interrogatories and Fourth Set of Requests for Production to St. Jude Medical S.C., Inc.* A true and correct copy of the response is included in the Appendix as Exhibit R. St. Jude made the same objection to each request and refused to provide any documents or information:

> As set out more fully in its Motion for a Protective Order, St. Jude objects to this Interrogatory on the grounds that it seeks information that is not relevant to any claim or defense remaining in this action. It is unduly burdensome to ask St. Jude to undertake any further investigation with regard to e-mail communications, as St. Jude fully complied with the Court's prior order, St. Jude has withdrawn all claims and defenses which implicate ordinary course concerns to which such communications could be relevant, and St. Jude has filed a motion for summary judgment which shows, based on undisputed facts, that the amount in controversy, if any, is minimal, such that any further discovery is disproportionate. St. Jude further objects to this Interrogatory on the grounds that it seeks confidential and proprietary documents.

15.     Despite St. Jude's assertion, communications are relevant to more than ordinary-course concerns. As discussed in the Motion to Compel, the Trustee has a reasonable basis to believe that the relationship between St. Jude and the Debtor was one of consignment. This is based on information from a former Debtor employee (a true and correct copy of the declaration of Rick Leonard is included in the Appendix as Exhibit S), as well as one of the contracts

between the Debtor and St. Jude, which expressly contemplates consignment. The nature of the relationship—whether or not it was consignment—could affect the date new value was provided, and St. Jude's principal defense is based on allegedly providing new value. Indeed, it could negate that affirmative defense if the Trustee is correct that the consignment arrangement granted St. Jude a security interest.

DECLARED under penalty of perjury this 14th day of September, 2018.

Julian P. Vasek