Davor Rukavina, Esq.
Texas Bar No. 24030781
Thomas D. Berghman, Esq.
Texas Bar No. 24082683
Julian P. Vasek, Esq.
Texas Bar No. 24070790
MUNSCH HARDT KOPF & HARR, P.C.
500 N. Akard Street, Suite 3800
Dallas, Texas 75201-6659
Telephone: (214) 855-7500
Facsimile: (214) 855-7584

ATTORNEYS FOR SCOTT M. SEIDEL, TRUSTEE

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| In re: | § | |
| | § | Chapter 7 |
| WALNUT HILL PHYSICIANS' | § | |
| HOSPITAL, LLC, | § | Case No. 17-32255-bjh-7 |
| | § | |
| Debtor. | § | |

**TRUSTEE'S SECOND MOTION FOR APPROVAL TO MAKE
INTERIM PAYMENTS TOWARDS ALLOWED ADMINISTRATIVE CLAIMS**

**NO HEARING WILL BE CONDUCTED HEREON, AND THE HEARING SHCEDULED HEREON MAY BE CANCELLED WITHOUT FURTHER NOTICE, UNLESS A WRITTEN RESPONSE IS FILED WITH THE CLERK OF THE UNITED STATES BANKRUPTCY COURT, 1100 COMMERCE STREET, SUITE 1254, DALLAS, TEXAS 75242 BEFORE CLOSE OF BUSINESS ON MARCH 23, 2020, WHICH IS AT LEAST 21 DAYS FROM THE DATE OF SERVICE HEREOF.**

**ANY RESPONSE SHALL BE IN WRITING AND FILED WITH THE CLERK, AND A COPY SHALL BE SERVED UPON COUNSEL FOR THE MOVING PARTY PRIOR TO THE DATE AND TIME SET FORTH HEREIN. IF A RESPONSE IS FILED A HEARING MAY BE HELD WITH NOTICE ONLY TO THE OBJECTING PARTY.**

**IF NO HEARING ON SUCH NOTICE OR MOTION IS TIMELY REQUESTED, THE RELIEF REQUESTED SHALL BE DEEMED TO BE UNOPPOSED, AND THE COURT MAY ENTER AN ORDER GRANTING THE RELIEF SOUGHT OR THE NOTICED ACTION MAY BE TAKEN, AND THE HEARING SCHEDULED ON THIS MOTION MAY BE CANCELLED, WITHOUT FURTHER NOTICE**

TO THE HONORABLE UNITED STATES BANKRUPTCY JUDGE:

COMES NOW Scott M. Seidel (the "Trustee"), the duly appointed chapter 7 trustee of the bankruptcy estate (the "Estate") of Walnut Hill Physicians' Hospital, LLC (the "Debtor"), the debtor in the above styled and numbered bankruptcy case (the "Bankruptcy Case"), and files this his *Second Motion for Approval to Make Interim Payments Towards Allowed Administrative Claims* (the "Motion"), respectfully stating as follows:

## I. SUMMARY

1. By this Motion, the Trustee requests authority to make additional, interim distributions towards allowed administrative priority claims, subject to full disgorgement, in the amount of $1,140,512.71 (the "Proposed Payments"), which will bring the Estate mostly current for all administrative claims (except the Trustee's commission). The proposed payments would be made as follows to the following (the "Administrative Creditors"):

   (i) $128,111.61 to Munsch Hardt Kopf & Harr, P.C.;

   (ii) $300,000.00 to Capital One for HC-7502 Greenville Avenue, LLC;

   (iii) $25,564.05 to Reliant Energy;

   (iv) $2,495.80 to C. R. Bard, Inc.;

   (v) $60,434.80 to Capital One (subordinated diminution administrative claim);

   (vi) $189,242.09 to Atalaya (subordinated diminution administrative claim);

   (vii) $351,664.36 to Hillcrest (subordinated diminution administrative claim);

   (viii) $8,000.00 to Premium Assignment Corporation; and

   (ix) $75,000.00 to the Trustee (partial commission).

## II. PROCEDURAL BACKGROUND

2. The Debtor filed its voluntary petition for relief under Chapter 7 of the United States Bankruptcy Code on June 6, 2017 (the "Petition Date"), thereby initiating this Bankruptcy Case and creating its bankruptcy estate (the "Estate").

3. The Trustee is the duly appointed Chapter 7 trustee of the Estate.

4. The Court has jurisdiction over this Motion under 28 U.S.C. § 1334. Said jurisdiction is core under 28 U.S.C. § 157(b)(2). Venue of the Bankruptcy Case before this Court is proper under 28 U.S.C. §§ 1408 and 1409.

## III. FACTUAL BACKGROUND

### A. MUNSCH HARDT

5. The Court has approved the Trustee's retention of Munsch Hardt Kopf & Harr, P.C. ("Munsch Hardt") as his general counsel.

6. Pursuant to Munsch Hardt's first interim fee application [docket no. 203], the Court allowed interim compensation to Munsch Hardt in the amount of $362,293.75 [docket no. 219], towards which the Trustee paid, on an interim basis, $199,701.50.

7. Pursuant to Munsch Hardt's second interim fee application [docket no. 365], the Court allowed interim compensation to Munsch Hardt in the amount of $479,440.45 [docket no. 391], towards which the Trustee paid, on an interim basis, $345,495.85.

8. Pursuant to Munsch Hardt's third interim fee application [docket no. 510], the Court allowed interim compensation to Munsch Hardt in the amount of $482,183.01 [docket no. 515], towards which the Trustee paid, on an interim basis, $390,579.91.

9. Pursuant to the Court's *Order Approving and Ordering Partial Interim Payments Towards Allowed Administrative Claims* entered on December 20, 2019 [docket no. 532] (the "Interim Payments Order"), the Trustee paid Munsch Hardt an additional $100,000.00.

10. Therefore, and without taking into account current services and expenses for which an interim fee application has yet to be filed, Munsch Hardt is owed $288,139.95 on account of previously approved interim fees and expenses. However, the interim fees included within that amount included fees incurred by Munsch Hardt related to the Trustee's investigation of claims against former directors and officers. After the Trustee retained Munsch Hardt as general counsel, the Trustee entered into a separate contingency fee agreement with Munsch Hardt as special litigation counsel to investigate and prosecute these fees. Pursuant to that agreement, and the Court's *Order Granting Trustee's Application to Retain Munsch Hardt Kopf & Harr, P.C. as D&O Litigation Counsel Under 11 U.S.C. § 328(a)* [docket no. 435], Munsch Hardt agreed to recalculate all past fees incurred for these services at 50%. The Court previously allowed these fees in the amount of $128,681.85, which fees have been moved to Munsch Hardt's separate application for allowance as contingency counsel. Additionally various expenses related to the D&O claims have likewise been moved to that separate application.

11. After moving these fees and expenses and giving credit for prior payments, the amount owed and payable to Munsch Hardt on account of previously allowed interim fees and expenses, excluding the D&O fees and expenses, is $128,111.61.

B. **CAPITAL ONE, N.A.**

12. HC-7502 Greenville Avenue, LLC (the "Landlord") was the former landlord to the Debtor. After the Landlord asserted a large administrative claim for postpetition rent and other charges, and after the Trustee filed an adversary proceeding against the Landlord, this Court approved a settlement between the Trustee, the Landlord, and Capital One, N.A. ("Capital One") [docket no. 428], the secured creditor to the Landlord, whereby the Landlord would be: (i) allowed an administrative claim of $500,000.00; (ii) of which the Trustee would pay (and did pay) $100,000.00 up front, with the balance of $400,000.00 over time; and (iii) which would be paid

directly by the Trustee to Capital One. Thereafter, pursuant to the Interim Payments Order, the Trustee paid an additional $100,000.00 towards this claim.

13. Therefore, as of the present, Capital One is owed $300,000.00 on account of an allowed administrative expense claim, which payment will pay the claim in full.

C. **RELIANT ENERGY SERVICES, LLC**

14. This Court entered an agreed order between the Trustee and Reliant Energy Services, LLC [docket no. 447], pursuant to which Reliant Energy was allowed an administrative expense claim of $51,128.10. Pursuant to the Interim Payments Order, the Trustee paid half of this claim, or $25,564.05, leaving $25,564.05 on account of this administrative claim. Thus, the Trustee requests authority to pay the balance of $25,564.05 in full and final satisfaction of this claim.

D. **C. R. BARD, INC.**

15. This Court entered an agreed order between the Trustee and C. R. Bard, Inc. [docket no. 348], pursuant to which C. R. Bard, Inc. was allowed an administrative expense claim of $4,991.60. The full amount of this claim remains owing. Pursuant to the Interim Payments Order, the Trustee paid half of this claim, or $2,495.80, leaving $2,495.80 on account of this administrative claim. Thus, the Trustee requests authority to pay the balance of $2,495.80 in full and final satisfaction of this claim.

E. **SUBORDINATED DIMINUTION ADMINISTRATIVE CLAIMS**

16. The Debtor failed to pay 2016 BPP taxes and allowed, to the Trustee's opinion, a greatly inflated BPP valuation to become final with the taxing authorities. The Debtor also failed to pay 2017 BPP taxes, although the Trustee, using section 505 of the Bankruptcy Code, was able to reach an agreement with the taxing authorities to greatly reduce those taxes. This left the Estate with a large tax bill. Meanwhile, pursuant to orders of the Court, the Trustee sold the property of

various personal properly lessors and the collateral of various secured creditors. Thereafter, pursuant to agreements with the creditors and orders of the Court, the Trustee used some of the proceeds of the collateral to pay the 2016 and 2017 BPP taxes.[1] This left the affected creditors alleging superpriority diminution and other rights. The Trustee, while disagreeing with these alleged rights, recognized that these creditors were disproportionality prejudiced by the Debtor's failures, including of the Debtor's directors and officers, and that they should therefore have greater rights than general unsecured creditors for that portion of their proceeds that the Trustee used to make the 2016 and 2017 BPP taxes.

17. Accordingly, the Trustee negotiated that certain *Stipulation and Agreed Order Regarding Replacement Liens for Payment of Ad Valorem Taxes* [docket no. 258] (the "Settlement Order") with Capital One, Hillcrest Bank, a division of NBH Bank ("Hillcrest"), and Atalaya Administrative, LLC ("Atalaya"), the secured creditors whose collateral was used to make the tax payments, pursuant to which these three creditors would have subordinated administrative claims for diminution of their collateral, in the amount of their collateral actually used to make the 2016 and 2017 BPP tax payments. By order entered March 23, 2018, at docket no. 267, the Court approved this stipulation and made it binding on the Estate.

18. Under this stipulation and order, each of these creditors would be paid their respective claims in proportion to the size of their collateral proceeds over the amount of taxes actually paid. Thus, pursuant to that certain *Order Approving Trustee's Compromise of 2017 Business Personal Property Taxes, Ordering the Payment Thereof, and Ordering the Distribution of Proceeds to Secured Creditors* [docket no. 220], the Court ordered these percentages as follows:

---

[1] The Trustee was not able to use the proceeds of the sale of leased property to pay BPP taxes, as that property and its proceeds were not property of the estate, even though the Trustee negotiated agreed commissions to facilitate the sales on behalf of the lessors and to use these commissions to fund other administrative expenses of the Estate, such as to shut down the hospital.

Capital One at 10.05%, Atalaya at 31.47%, and Hillcrest at 58.48%. Pursuant to that same order, the Trustee paid 2017 BPP taxes from the collateral of these creditors in the amount of $159,844.36. Pursuant to that certain *Order Granting Motion to Pay 2016 Property Taxes*, the Trustee paid $441,496.89 for 2016 BPP taxes from the proceeds of these creditors' collateral.

19. Applying the foregoing, the following is payable to these three creditors under the Settlement Order:

   (i) Capital One: $60,434.80 ($44,370.44 for 2016 BPP taxes and $16,064.36 for 2017 BPP taxes);

   (ii) Atalaya: $189,242.09 ($138,939.07 for 2016 BPP taxes and $50,303.02 for 2017 BPP taxes); and

   (iii) Hillcrest: $351,664.36 ($258,187.38 for 2016 BPP taxes and $93,476.98 for 2017 BPP taxes).

20. While these are subordinated administrative claims, the Trustee is now proposing to pay, and has sufficient funds to pay, non-subordinated administrative claims in full. The Trustee is also holding sufficient funds to pay these claims in full. Therefore, the Trustee requests authority to pay these subordinated administrative claims in full, on an interim basis and subject to disgorgement and, in the case of Capital One, subject to the Trustee's potential setoff rights for amounts that may be owing by Capital One to the Trustee under various orders entered throughout the Bankruptcy Case.

F.  **PREMIUM ASSIGNMENT CORPORATION**

21. The Debtor financed its purchase of various insurance policies through a premium financing agreement with Premium Assignment Corporation ("PAC"), which retained a perfected security interest in any unearned premium. After the Petition Date, the Trustee and PAC reached an agreement whereby PAC would defer its termination of the underlying policies for a period of

time to permit those policies to stay in effect, in exchange for a superpriority administrative claim of $8,000.00. The Court approved this agreement in its *Agreed Amended Order Granting Premium Assignment Corporation Partial Relief from the Automatic Stay* [docket no. 159], pursuant to which said claim would be paid first from any excess refund of premium (*i.e.* in excess of the amounts owing to PAC for financing the same).

22. The Trustee proposes to pay up to $8,000.00 to PAC towards this claim, but only after PAC first provides the Trustee with an accounting of any unearned premium and its application, and only to the extent that this claim was not otherwise paid from any excess refund of premium. If PAC fails to do so, or if the amount owing is less than $8,000.00 after application of any such excess refund, the Trustee will withdraw this Motion in whole or in part with respect to PAC.

G. THE TRUSTEE

23. To-date, from the proceeds of the Trustee's sales and from the proceeds of the Trustee's litigation, the Trustee has distributed approximately $7 million in Estate funds to various prepetition and postpetition creditors, and will now have an additional $3 million from the D&O litigation for present and future distributions. Under section 326 of the Bankruptcy Code, the Trustee has therefore earned a commission in the approximate amount of $359,037.65.

24. Pursuant to this Court's order approving the Trustee's first interim application for compensation [docket no. 259], the Court allowed interim compensation of $100,000.00, which the Trustee paid on an interim basis

25. Pursuant to this Court's order approving the Trustee's second interim application for compensation [docket no. 463], the Court allowed interim compensation of $75,986.85, which the Trustee paid on an interim basis.

26. Pursuant to the Interim Payments Order, the Trustee paid himself an additional $25,000.00, on an interim basis.

27. Therefore, the Trustee is owed approximately $159,037.65. The Trustee requests an interim payment towards this commission in the amount of $75,000.00.

## IV. DISCUSSION

28. The Bankruptcy Code expressly provides for interim payments on account of professional fees, including a trustee's commission. *See* 11 U.S.C. § 331. With respect to interim payments on account of non-professional administrative claims, such payments are subject to the Trustee's business judgment. *See* 11 U.S.C. § 363(b); *In re ASARCO, LLC*, 650 F.3d 593, 601 (5th Cir. 2011).

29. The Administrative Creditors are the only creditors with allowed and unpaid administrative expense claims as of this Motion. Here, the Trustee submits that the following factors and considerations support his business judgment and support the Court granting this Motion:

- There is little risk of administrative insolvency in this Bankruptcy Case, especially in light of the Trustee's recent receipt of $3 million from the D&O lawsuit he filed.

- All prior interim payments, and the Proposed Payments, would be subject to full disgorgement, and, based on representations made to the Trustee and the Trustee's understanding of who the Administrative Creditors are, the Trustee believes that each would have the financial ability to disgorge their payments, if that were to become necessary.

- All other administrative claims, including all section 503(b)(9) claims, have been disallowed.

- Each of the Administrative Creditors has allowed administrative claims by final and non-appealable order.

- The Court has imposed an administrative claim bar date, which expired long ago, so the risk of any other administrative claim being asserted is not material, given

that there were no postpetition operations and all prepetition creditors were provided notice of the bar date.

- The Trustee is not otherwise aware of any threatened administrative creditor.

- Making additional interim payments will benefit the creditors, who have effectively financed the Bankruptcy Case, and is the right and equitable thing to do *vis a vis* these creditors who have all been reasonable, responsible, and cooperative with the Trustee, and whose claims have led to significant benefits to the Estate, and making the payments will better enable the Trustee to assess potential returns to unsecured creditors.

- The Trustee is holding sufficient funds to make the requested payments and is reasonably comfortable that the funds he will continue to hold after said payments are sufficient for unknown contingencies.

30. Therefore, for these and other reasons, the Trustee believes that making the interim payments is fair and equitable, and in the best interests of the Estate.

## V. **PRAYER**

WHEREFORE, PREMISES CONSIDERED, the Trustee respectfully requests that the Court enter an order granting this Motion and authorizing and directing him to make the Requested Payments, on an interim basis only, subject to full and express disgorgement, and for such other and further relief as may be appropriate.

RESPECTFULLY SUBMITTED this 2d day of March, 2020, 2020.

        **MUNSCH HARDT KOPF & HARR, P.C.**

        By: /s/ Davor Rukavina
        Davor Rukavina, Esq.
        Texas Bar No. 24030781
        Thomas D. Berghman, Esq.
        Texas Bar No. 24082683
        500 N. Akard Street, Suite 3800
        Dallas, Texas 75201-6659
        Telephone: (214) 855-7500
        Facsimile: (214) 855-7584

        **ATTORNEYS FOR SCOTT M. SEIDEL, TRUSTEE**

## CERTIFICATE OF SERVICE

      The undesigned hereby certifies that, on this the 2d day of March, 2020, true and correct copies of this document were electronically served by the Court's ECF system on parties entitled to notice thereof, and that, additionally, on the same date he caused true and correct copies of this document to be served, by U.S. first class mail, postage prepaid, on the parties listed on the attached Service List.

                                              By: /s/ Davor Rukavina
                                                  Davor Rukavina, Esq.